# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETQUEST GROUP, INC., a California corporation d/b/a All-In-One,<br><br>Plaintiff,<br><br>v.<br><br>BIC CORPORATION, a Connecticut corporation, et al.,<br><br>Defendants. | Case No. 11-cv-618 BAS (JLB)<br><br>**ORDER:**<br>(1) **GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [ECFs 214, 215];**<br>(2) **DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF 216];**<br>(3) **DENYING DEFENDANTS' MOTION FOR SANCTIONS [ECF 289]; AND**<br>(4) **TERMINATING PENDING MOTIONS**<br><br>**[ECFs 199, 205, 214, 215, 216, 217, 218, 219, 289]** |

Before the Court are Defendants Norwood Promotional Products, LLC ("Norwood") and BIC USA, Inc.'s ("BIC") motions for summary judgment. ECFs 214, 215. Plaintiff Marketquest Group, Inc. ("Marketquest") has sued them for infringing its trademarks "All-In-One" and "The Write Choice" (respectively), and Defendants have moved for summary judgment on all claims on the basis that any infringement is protected by fair use. For the following reasons, the Court **GRANTS** Defendants' motions.

## BACKGROUND

Plaintiff Marketquest Group Inc. is a California corporation that produces and sells various promotional products. FAC ¶¶ 10–12. Marketquest has registered trademarks for "ALL-IN-ONE" and "THE WRITE CHOICE."[1]

BIC included the phrase "The Write Pen Choice" in online advertising and displays for writing instruments, including its pens, in October 2010. FAC ¶¶ 21–25. This campaign, designed to celebrate BIC's thirty-year anniversary producing its ROUND STIC pens in the United States, included BIC ® and ROUND STIC ® at the top of the page, followed by "The WRITE Pen Choice for 30 years!", unaccompanied by either TM or ®. BIC and ROUND STIC, along with BIC's logo, are included in other portions of the advertisement and are always prominently followed by ®. FAC, Ex. G. This advertisement could allegedly be found on various internet sites and at BIC's promotional displays. FAC ¶ 23. This promotion is no longer active.

Norwood, a subsidiary of BIC, sells promotional products and included the phrase "All in ONE" on its 2011 product catalogue. FAC ¶ 24. This catalogue

---

[1] Marketquest lists five separate registered trademarks (four for the "ALL-IN-ONE" mark, and one for "THE WRITE CHOICE" mark; collectively, "the Infringing Marks"):
1. The mark "ALL-IN-ONE," registered in connection with its sale of products including "writing instruments, namely pens, pencils, markers, highlighting markers." Registration No. 2,422,967 (registered Jan. 23, 2001). (FAC ¶ 13, Ex. A.)
2. The mark "ALL-IN-ONE-LINE," registered in connection with its sale of products including "writing instruments, namely pens, pencils, markers." Registration No. 2,426,417 (registered Feb. 6, 2001). (FAC ¶ 14, Ex. B.)
3. The mark "ALL-IN-ONE stylized design," registered in connection with its sale of products and services including "writing instruments, namely pens, pencils, markers, highlighting markers" and "dissemination of advertising matter." Registration No. 3,153,089 (registered Oct. 10, 2006). (FAC ¶ 15, Ex. C.)
4. The mark "THE WRITE CHOICE," registered in connection with its sale of products including "writing instruments, namely pens, pencils, markers, highlighting markers." Registration No. 3,164,707 (registered Oct. 31, 2006). (FAC ¶ 16, Ex. D.)
5. The mark "ALL-IN-ONE stylized design," registered in connection with its sale of services including "customized imprinting of equipment, merchandise and accessories for business promotion." Registration No. 3,718,333 (registered Dec. 1, 2009). (FAC ¶ 17, Ex. E.)

1 included many of Norwood's hard goods products in one catalogue and is no
2 longer available. "Norwood ®" was printed in a larger font on the cover of the
3 catalogue, and "All in ONE" appeared below and to the right of it.

## LEGAL STANDARD

Federal courts sitting in diversity "apply state substantive law and federal procedural law." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; see also *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson,* 477 U.S. at 248).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party without the ultimate burden of persuasion at trial can satisfy this burden in two ways: (1) by producing "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(c)(1). Evidence may be offered "to support or dispute a fact" on

summary judgment only if it "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003); see also Fed. R. Civ. P. 56(c)(2). However, at the summary judgment stage, the focus is not on the admissibility of the evidence's form, but on the admissibility of its contents. *Id.* If the moving party meets it burden, the burden then shifts to the non-moving party to produce admissible evidence showing a genuine issue of material fact. *Nissan Fire*, 210 F.3d at 1102-03; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"[I]n granting summary judgment a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment[.]" *Anderson*, 477 U.S. at 255.

## DISCUSSION

Two provisions of The Lanham Act, 15 U.S.C. §§ 1124–25, protects trademarks from infringement. In particular, former Section 43 (now 15 U.S.C. § 1125) prohibits false designations of origin or dilution of a trademark under a "likelihood of confusion" standard. If the false designation is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" the trademark holder may sue the infringer. Previously in this case, the court determined that BIC and Norwood's use of Marketquest's trademark had some likelihood of confusion. See Order Den. Prelim. Inj. 20:17–20, ECF 41. While some of the evidence presented at the summary judgment stage changes the calculus of some *Sleekcraft* factors, the Court is satisfied that there is some

1  likelihood of confusion and therefore the potential for trademark infringement
2  liability. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).
3  Further analysis of those factors is unnecessary, however, because BIC and
4  Norwood's uses of Marketquest's trademarks are completely protected by fair use.
5
6        Fair use is an affirmative defense to trademark infringement. In trademark
7  law, fair use is a defense if "the use of the ... term, or device charged to be an
8  infringement is a use, otherwise than as a mark, ... of a term or device which is
9  descriptive of and used fairly and in good faith only to describe the [defendant's]
10 goods or services[.]" 15 U.S.C. § 1115(b)(4). Here, Defendants allege "classic fair
11 use" defenses because they used Marketquest's marks only to describe their own
12 products, which applies when defendants "ha[ve] used the plaintiff's mark *only* to
13 describe [their] own product, and not at all to describe the plaintiff's product."
14 *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 809 (9th Cir.2003)
15 (emphasis deleted) (internal quotations omitted). Under fair use doctrine, " '[a]
16 junior user is always entitled to use a descriptive term in good faith in its primary,
17 descriptive sense other than as a trademark.' " *Cairns v. Franklin Mint Co.*, 292
18 F.3d 1139, 1150–51 (9th Cir.2002) (quoting 2 *McCarthy on Trademark and Unfair*
19 *Competition* § 11.45 (4th ed.2001)). This doctrine "forbids a trademark registrant
20 to appropriate a descriptive term for his exclusive use and so prevent others from
21 accurately describing a characteristic of their goods." *See New Kids on the Block v.*
22 *News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir.1992) (internal quotation
23 omitted)). To invoke the fair use defense, defendants must show they are (1) not
24 using the term as a trademark, (2) use the term only to describe their own goods
25 and services, and (3) use the term fairly and in good faith. *Cairns,* 292 F.3d at
26 1151.
27       According to the Supreme Court, "the defendant has no independent burden
28 to negate the likelihood of any confusion in raising the affirmative defense" of fair

use. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 124, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004). Therefore, "some possibility of consumer confusion must be compatible with fair use[.]" *Id.* at 121, 125 S.Ct. 542; *Century 21 Real Estate Corp. v. Lendingtree, Inc.,* 425 F.3d 211, 217 (3d Cir.2005). The fair use defense recognizes "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make–Up,* 543 U.S. at 122, 125 S.Ct. 542. The Ninth Circuit has clarified that although some consumer confusion will not negate fair use, the degree of consumer confusion remains a factor. *KP Permanent Make-Up Inc. v. Lasting Impression I*, 408 F.3d 596, 609 (9th Cir. 2005). Relevant factors include "the degree of likely confusion, the strength of the trademark, the descriptive nature of the term for the product or service being offered by [the plaintiff] and the availability of alternate descriptive terms, the extent of the use of the term prior to the registration of the trademark, and any differences among the times and contexts in which [the plaintiff] has used the term." *Id.*

### A. Norwood's 2011 Catalog

The Court first turns to the mark itself, "all-in-one," to determine both its meaning in common parlance and the extent of its use prior to Marketquest's registration. According to the Oxford English Dictionary, "all-in-one" (used to describe "an entity or object which combines all the required or *appropriate* elements, items, or functions in one") dates to the April 1841 issue of Chicago's *The Dial* magazine. *All-in-one Definition*, OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/314403 (Mar. 2015) (last visited Apr. 14, 2015) ("OED Def.") (italics added) ("Pantheism ... rejects the doctrine of the Trinity, not like Unitarianism, by denying it, but by making an omni-unity,—not a three-in-one, but an all-in-one."). In 1882, *Harper's Magazine* used the term to describe a Zuni religious dance combining "all the various dances of the Zuñi[.]" *id.* (Jun.). In sum, "all-in-one" has been used in general, mainstream publications for over 130

years.

Additionally, in the context of "all-in-one," "all" does not imply absolute consolidation. For example, all-in-one garments are a "[f]oundation garment or corselet consisting of girdle and brassière, made *with or without* a pantie[.]"*All-in-one Definition*, MARY BROOKS PICKEN, THE LANGUAGE OF FASHION: A DICTIONARY AND DIGEST OF FABRIC, SEWING, AND DRESS (1939) (italics added)) (quoted in OED Def.); *See also* OED Def., "all-in-one tool-chest" (*Pop. Sci. Monthly*, Nov. 1923). As is obvious from the definition, only the "appropriate" elements need to be included in the entity or object. OED Def.

Marketquest challenges the accuracy of Norwood's use of "all-in-one" because Norwood "produced other catalogs in addition to their 'all in ONE' Catalog that year which featured their housemarks and sub-brands." Pl.'s Opp. 12:20–24, ECF 258. This argument lacks merit. No reasonable English speaker could torturously construe an "all-in-one pocketknife" as including all gadgets ever conceived. Similarly, Norwood is not forced to include all products ever produced in its All in ONE Catalog or even all of the products Norwood itself sells. Instead, "all-in-one" means what it is plainly understood to mean: "Appropriately consolidated." Trademark fair use is designed to protect uses of the plain meanings of common words, and semantic contortions cannot render Norwood's meaning or use uncommon.

Concomitant with trademarking a descriptive phrase is the risk that such trademarks are weak. "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *KP Permanent*, 408 F.3d at 122. Here, as discussed, "all-in-one" is a common phrase used to describe consolidated products. Therefore while Norwood is prohibited from using "all-in-one" in its trademarked, secondary meaning, Marketquest has no claim to the phrase's generic, common meaning. This is precisely the protection fair use affords.

1    Because Norwood used "all-in-one" for its descriptive, common meaning, it
2    is used other than as a trademark. As stated in *Cairns*, junior users are "always
3    entitled" to such use, if it is in good faith. 292 F.3d at 1150–51. Therefore the
4    Court will now analyze evidence of Norwood's good or bad faith.

5    Primarily, Marketquest argues that showing Defendants' knowledge of the
6    trademarks alone is sufficient to establish bad faith. They opine that unless the
7    Court imputes bad faith to any larger organization that commits "knowing acts of
8    infringement[,]" this Court would "wash away" reverse confusion doctrine. Pl.'s
9    Opp. 19:1–5. While it is true that a larger corporation may not roll over a small
10   corporation's mark, any organization that imbues secondary meaning to common
11   phrases assumes the risk that another organization in the same business sphere will
12   use that phrase for its common meaning. Marketquest was on notice that its ALL-
13   IN-ONE marks were, by their very nature, susceptible to such confusion. Therefore
14   simple knowledge of the senior user's trademark cannot create an inference of bad
15   faith.

16   Beyond simple knowledge, Marketquest claims Defendants' adoption of
17   "both of AIO's Marks in the same year they targeted AIO's niche" somehow
18   demonstrates bad faith. Pl.'s Opp. 21:5–7. However, Defendants' use of two
19   common descriptive phrases in their wide-ranging marketing materials is
20   insufficient to show bad faith.

21   Additionally, Norwood largely mitigated the risk of confusion. Norwood
22   prominently printed its "Norwood ®" in every location including the phrase. Ex. 3
23   to Norwood's Mot. Summ. J., ECF 214-3. Spatially, there is no implied association
24   between the Norwood mark and the All in ONE descriptor. All in ONE is printed
25   in a standard font, and it is followed by a list of generic types of items included in
26   the catalog. While previous catalogs had been formatted with lists of brands, the
27   2011 Catalog clearly includes only Norwood branding. Further, several places in
28   the catalog explained the phrase's context, including: "Our primary product

1    resource, featuring all product lines in ONE catalog." *Id.* In sum, Norwood did
2    everything possible, short of an explicit disclaimer, to mitigate the risk of
3    confusion.²

4    Norwood used "all-in-one" other than as a mark and in good faith.
5    Accordingly, the Court **GRANTS** Norwood's motion for summary judgment. ECF
6    214.

7    *B. BIC's 30th Anniversary Promotion*

8    BIC must similarly show that its use of "the write pen choice" was other
9    than as a mark and that the degree of consumer confusion does not outweigh the
10   fair use defense. *See KP Permanent*, 408 F.3d at 609. The Court finds that there is
11   no evidence of actual or potential confusion. Marketquest cites to Ninth Circuit's
12   confusion analysis in a footnote, but then fails to point to evidence that any of
13   these factors are disputed or weigh in favor of Marketquest against fair use of "the
14   write choice." Pl.'s Opp. 5 fn. 3. Marketquest instead argues that BIC's use is
15   "suggestive" and therefore not entitled to fair use because "[t]here are many more
16   ways of suggesting than describing[.]" *See* Pl.'s Opp. 13:13–14:8 (quoting
17   *Fortune*, 618 F.3d at 1043 (internal quotations omitted)). However, *Fortune*'s
18   junior user, Victoria's Secret, provided promotional t-shirts with "Delicious"
19   across the chest, finding that such a "playful self-descriptor" was used like a
20   trademark and in a suggestive manner. In contrast, here the "write choice" is a trite
21   pun, notable only for its obviousness. "Delicious," used to describe wearers of
22   Victoria's Secret t-shirts, is far more "suggestive." Similarly, "MovieBuff" reads
23   as a brand name and was used as such by the junior user in *Brookfield Commc'ns,*
24   *Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999). The difference
25   between "Movie Buff" and "MovieBuff" is "pivotal" because consumers are

---

² No court has held that using common phrases requires a disclaimer to distinguish between the junior and senior use. *See e.g. Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010), *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), *Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249 (S.D. Cal. 2008).

1   conditioned to see such combinations as brands. *Id.* The "write choice" phrase here
2   includes no such combination or a fanciful spelling that would denote a trademark
3   use.

4       Advertisers use puns in 10 to 40% of advertisements, and they are designed
5   to establish rapport and present the consumer with an easily solved riddle.[3] Solving
6   a riddle is a pleasurable experience, and therefore this may lead to a "positive
7   attitude towards the product" advertised. *Id.* This simplistic pun is directly related
8   to BIC's pen product, and "write" is far more descriptive of a pen than of
9   Marketquest's general promotional products business. To preclude BIC from
10  making this pun would effectively eliminate this avenue of commercial speech.

11      Marketquest consolidates its attacks on BIC and Norwood's good faith into
12  one section. The arguments and conclusions are no less applicable to BIC than to
13  Norwood. BIC took similar measures to reduce the likelihood of confusion,
14  including modifying its promotion from "The WRITE choice for over 30 years!" to
15  "The WRITE Pen Choice for 30 Years!". Ex. 1 to BIC USA's Summ. J. Mot., ECF
16  215.[4] It is arguable that only a small minority of the challenged slogan's uses were
17  infringing at all. Moreover, BIC also rigorously labeled its BIC, ROUND STIC,
18  BIC logo, and BIC mascot with ® or TM, as well as any other trademarks in the
19  displays. BIC and ROUND STIC were prominently placed on the displays, with
20  the "write choice" slogan in the context of a complete sentence or with "choice"
21  omitted completely. Additionally, Marketquest does not allege that BIC coopted

---

[3] Margot van Mulken et al., *Puns, Relevance and Appreciation in Advertisements*, 37 J. of Pragmatics 707–721 (2005). For example: Lea & Perrins, "the Worcester Saucerer"; Weight Watchers: "Taste. Not waist."; British Steel: "British Steel: British Mettle". Timothy R. V. Foster, *The Art and Science of the Advertising Slogan* (last visited Apr. 16, 2015), http://www.adslogans.co.uk/ans/creslo01.html; *see also* Margot van Mulken et al., *Puns, Relevance and Appreciation in Advertisements*, 37 J. of Pragmatics 707–21 (2005).

[4] BIC also phrased it as "The WRITE Hotel & Lodging pen for 30 years!". The shortened "WRITE choice" slogan comes from a character-limited tweet from January 19, 2011, while the other, non-infringing versions more commonly appeared on promotional materials without extreme space limitations. Ex. 1 to BIC USA's Summ. J. Mot., ECF 215.

their font or styling of the phrase, instead using BIC's house font. While Marketquest often uses a nondescript cursive font for "the write choice" logo, its failure to make a more distinctive mark is again an assumed risk. In sum, the undisputed evidence shows that "the write choice" advertising campaign was undertaken in good faith.

For all Marketquest's attacks, they do not suggest a viable alternative.[5] It selected a trademark that was suggestive and based on a common descriptive phrase. BIC incorporated the phrase and similar phrases into an advertising campaign, using it in good faith for its primary meaning. Marketquest cannot now attempt to enjoin others from such protected uses. Accordingly, the Court **GRANTS** BIC USA Inc.'s motion for summary judgment. ECF 215.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Norwood and BIC USA Inc.'s motions for summary judgment. ECF 214, 215. Accordingly, the Court **DISMISSES** Marketquest's First Amended Complaint. ECF 14.

At oral argument, Defendants' counsel represented that if the Court were to rule in Defendants' favor on fair use, they would concede their counterclaims. Summ. J. Hr'g Tr. 12:18–21, ECF 324.[6] Accordingly, the Court **DENIES** BIC Corp.'s motion for summary judgment on its counterclaims and **DISMISSES** Defendants' counterclaims. ECFs 17, 216.

The Court **DENIES** Defendants' motion for sanctions (ECF 289) and declines to issue an order to show cause why Defendants should not be sanctioned (as urged in Marketquest's Opposition to the motion, ECF 315).

The Court **TERMINATES AS MOOT** all other pending motions in this

---

[5] They suggest "The Right Choice," (Pl.'s Opp. 14:1) which eliminates any pun and begs readers to ask: "Why not use the obvious pun here?"

[6] THE COURT: Sure. Let me ask you this: If I were to rule in the defendants' favor on the fair use issue, do I even have to reach the abandonment or fraud invalidity argument?
MR. SYBERT: You do not.


1  matter. ECFs 199, 205, 217, 218, 219.

2  **IT IS SO ORDERED.**

3  Dated:  April 17, 2015

Hon. Cynthia Bashant
United States District Judge