**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARKETQUEST GROUP, INC.,<br><br>                     Plaintiff,<br><br>   v.<br><br>BIC CORPORATION, *et al.*,<br><br>                  Defendants. | Case No. 11-cv-618-BAS (JLB)<br><br>**ORDER DENYING DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE OPINIONS OF JOHN J. BURNETT, PH.D.**<br><br>**[ECF No. 217]** |
| AND RELATED COUNTERCLAIMS. | |

On March 28, 2001, Plaintiff Marketquest Group, Inc. ("Marketquest") filed this action for trademark infringement and unfair competition against Defendants BIC Corp., BIC USA, and Norwood Promotional Products ("BIC"). (ECF No. 1.) On May 5, 2011, Marketquest filed the operative First Amended Complaint ("FAC"). (FAC, ECF No. 14.) On May 13, 2011, BIC filed its Answer and Counterclaims. (ECF No. 17.)

Presently before the Court is BIC's Motion to Exclude the Opinions of John J.

Burnett, Ph.D., arguing Dr. Burnett's opinions are not rooted in generally-accepted science and improperly opine on the ultimate issue based upon a dearth of evidence. (BIC's Mot., ECF No. 217.) Marketquest opposes. (Opp'n, ECF No. 260.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** BIC's motion.

# I. BACKGROUND

Plaintiff Marketquest is a California "supplier" that produces, advertises, and sells customizable promotional products using the registered trademarks "ALL-IN-ONE" and "The Write Choice." (FAC ¶¶ 10-12.) Defendant BIC represents one of the largest suppliers in the promotional products industry. (Marketquest's Mot. Partial Summ. J. 1:12-2:7, ECF No. 205.) The promotional products industry supports the manufacture and distribution of promotional products to companies ("end consumers") who want to brand themselves with customers. (Marketquest's Mot. 1:16-18.) When a company wants to brand itself with its customers it approaches a promotional products "distributor." (*Id.* 1:19-21.) The distributor then approaches a supplier (such as Marketquest or BIC) who either manufactures or imports a promotional product on which the end consumer's brand is imprinted. (*Id.* 1:21-23.) According to Marketquest, such segregation of suppliers, distributors, and end consumers is an integral part of the industry and never bypassed. (*Id.* 2:1-3.)

Marketquest alleges BIC began advertising and selling products using marks similar to Marketquest's. (FAC ¶¶ 21-25.) Specifically, Marketquest claims BIC used the phrase "The Write Pen Choice" in an online advertising campaign for writing instruments beginning in October 2010. (*Id.* ¶ 23.) Around the same time, Norwood Promotional Products, LLC, a subsidiary of BIC USA, printed a 2011 catalog entitled the "NORWOOD All in ONE" catalog. (*Id.* ¶ 24.) Alleging a form of reverse confusion, Marketquest argues that BIC's use of its marks to compete with it in selling the same products—to the same customers in the same advertising channels—

in combination with BIC's reputation as a brand aggregator, caused confusion amongst customers. (Marketquest's Mot. Partial Summ. J. 4:14-18.)

BIC retained Hal Poret as an expert witness to conduct a survey to determine the extent to which the use of the phrase "All in ONE" on the cover of the 2011 Norwood Catalog is likely to have caused confusion with respect to Marketquest's ALL-IN-ONE mark. (Poret Report, ECF No. 256-3, Ex. 1.) Mr. Poret conducted a Sequential Lineup Survey wherein end consumers were called on the phone and asked to look at materials on their computer screen while they were being interviewed. (*Id.* 3.) Respondents were first shown the Marketquest website, then parts of four catalogs offering customizable promotional products, one of which was the 2011 Norwood Catalog. (*Id.*) They were then asked if they connected any of the catalogs to the Marketquest website and, if so, why. (*Id.* 4.) The results of the survey indicate a rate of 4.7% potential trademark confusion, a rate typically considered de minimis. (*Id.* 21.) Based on the survey results, Mr. Poret is of the opinion that there is no likelihood of confusion caused by the use of the words "All in ONE" on the 2011 Norwood Catalog. (*Id.*)

To rebut Mr. Poret's testimony, as well as analyze whether the use of "All in ONE" and "The Write Choice" by BIC is likely to confuse customers, Marketquest retained Dr. Burnett as an expert witness. (Burnett Report, ECF No. 217-2, Ex. A; Burnett Rebuttal Report, ECF No. 258-55, Ex. BZ.) In his rebuttal to Mr. Poret's report, Dr. Burnett contends Mr. Poret's survey results stem from an invalid design, an unrepresentative sample universe, a misleading questionnaire, and deficient implementation and analysis. (Burnett Rebuttal Report 10.) In his primary report, Dr. Burnett uses his experience in marketing and branding to analyze both marks by way of the eight *Sleekcraft* factors. (Burnett Report 13.) *See also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (providing factors for determining likelihood of confusion). He does so through the prisms of reverse confusion and the business-to-business (rather than consumer) sector. (*Id.* 13-14.) Dr. Burnett concludes: (1)

Marketquest's trademarks are strong; (2) Marketquest and BIC market very similar products to similar targets; (3) the marks are similar in color, sound, position, and format; (4) BIC's continued use of the marks, despite being aware of the potential confusion that could result, shows intent or willful blindness; (5) the parties "share marketing and marketing communication [advertising] channels"; (6) BIC's use of the marks "may lead to initial interest confusion among the target audiences, largely because the campaign is directed at the same potential and current customers for these products, as verified by the media mix employed"; and (7) the degree of purchaser care is inconsistent because both parties serve a variety of customers with respect to care of evaluations. (*Id.* 36.)

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 establishes several requirements for admissibility of expert opinion evidence: (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge must "assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (3) the testimony must be "based on sufficient facts and data"; (4) the testimony must be "the product of reliable principles and methods"; and (5) the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under *Daubert* and its progeny, the trial court is tasked with assuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted). Shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and careful instruction on the burden of proof, not exclusion. *Daubert*, 509 U.S. at 596.

The judge is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In its role as gatekeeper, the trial court "is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

The tests for admissibility in general, and reliability in particular, are flexible. *Primiano*, 598 F.3d at 564. The Supreme Court has provided several factors to determine reliability: (1) whether a theory or technique is testable; (2) whether it has been published in peer reviewed literature; (3) the error rate of the theory or technique; and (4) whether it has been generally accepted in the relevant scientific community. *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) (summarizing *Daubert*, 509 U.S. at 592-94), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014). These factors are meant to be "helpful, not definitive." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). The court "has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted). "[T]he test under *Daubert* is not the correctness of [experts'] conclusions but the soundness of [their] methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). Once the threshold established by Rule 702 is met, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 565.

After admissibility is established to the court's satisfaction, attacks aimed at the weight of the evidence are the province of the fact finder, not the judge. *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014). The court should not make credibility determinations that are reserved for the jury. *Id.*

## III.   DISCUSSION

BIC argues Dr. Burnett's opinions are inadmissible because they (i) improperly opine on the ultimate issue, (ii) are not rooted in generally-accepted science, and (iii) are predicated on a dearth of reliable evidence. (BIC's Mot. 3:21-4:6.) The Court finds each of these arguments unavailing for the purposes of exclusion.

### A.   Legal Conclusions

BIC argues that Mr. Burnett's testimony improperly opines on the ultimate issue in the case. In particular, BIC claims Dr. Burnett's opinions regarding the likelihood of confusion represent an attempt to tell the jury what decision to reach and as such are legal conclusions and inadmissible. (BIC's Mot. 4:7-5:2.) Although the Court will not allow Dr. Burnett to testify as to the ultimate conclusion of likelihood of confusion, Dr. Burnett's expert opinions on the state of affairs regarding the individual *Sleekcraft* factors are admissible.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Rather, the basic approach to opinions is to admit them when helpful to the trier of fact. Fed. R. Evid. 704 advisory committee's note. Experts may not, however, offer opinions embodying legal conclusions. *See id.* (clarifying Rule 704 as not permitting "the admission of opinions which would merely tell the jury what result to reach").

In analyzing whether there is likelihood of confusion, a jury must first consider the *Sleekcraft* factors and then, based thereon, decide whether a likelihood of confusion exists. *See Alpha Indus. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir. 1980). "With the analysis so structured, the determination of what is the state of affairs regarding each factor (a 'foundational fact') is a finding of fact . . . but the further determination of likelihood of confusion based on those factors is a legal conclusion." *Id.* (citing *J. B. Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191-92 (9th Cir. 1975); *Sleekcraft Boats*, 599 F.2d at 348-54). Thus, courts

distinguish between permissible expert opinions on the individual *Sleekcraft* factors from impermissible testimony amounting to legal conclusions on whether there is or is not a likelihood of confusion. *See Playboy Enters. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1082 (S.D. Cal. 1999); *see also YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1203 (C.D. Cal. 2002) (holding "the Court will not consider Anson's legal conclusions, although his opinions on the individual foundational facts, i.e. the individual *Sleekcraft* factors are admissible and will be considered"). Provided a proper foundation is laid and the expert has the requisite experience, "[e]xpert testimony on the factors that go into the ultimate finding on the confusion issue is generally quite proper and helpful to both judge and jury." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:2.75 (5th ed. 2018).

Dr. Burnett has over forty years of experience in consumer behavior, branding, and advertising in the business-to-business context, including the promotional products industry. (Burnett Report 2.) It is entirely proper and relevant for him to employ his knowledge of marketing communication and buyer behavior to assist the jury in understanding the *Sleekcraft* factors in the business-to-business promotional products context. Contrary to the contentions of BIC, such opinions are not legal conclusions and will help lay jurors to understand the unique facts and industry setting of this case.

Dr. Burnett does not opine on the ultimate question of whether there is or is not a likelihood of confusion in his report, and his testimony at trial should correspond. Additionally, Dr. Burnett should continue to forgo any statements rendering opinions regarding whether BIC's use of the contested terms is a "descriptive" or "fair use," as they would constitute impermissible legal conclusions. Any lingering doubts as to the negative impact of Dr. Burnett's testimony can be managed by instructing the jurors to follow only the judge's instructions as to what the law is and to disregard any testimony that is inconsistent with those instructions. *See e.g.*, *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365,

1371 (10th Cir. 1977) (upholding admission of expert testimony on general principles of trademark law because the "court specifically cautioned the jury before the expert testified and again in its instructions that the jury was to disregard any of the expert's testimony that was inconsistent with the court's instructions").

**B.    Generally-Accepted Science**

BIC argues Dr. Burnett does not have sufficient experience to rebut the opinions of Mr. Poret nor should he be allowed to offer opinions regarding consumer confusion studies "because what knowledge he does have in this area is objectively and materially flawed." (BIC's Mot. 14:3-9.) The Court is unpersuaded.

Dr. Burnett is a Professor Emeritus of Marketing at the University of Denver with forty years of marketing experience and substantial experience in statistics and using surveys. (Opp'n 13:19-22.) He has conducted three surveys in trademark confusion cases, taught undergraduate and graduate marketing research courses, and published over sixty articles where survey research was the primary methodology. (*Id.* 13:24-14:13.) In the Court's estimation, Dr. Burnett's testimony regarding consumer confusion surveys is both relevant and reliable in that "the knowledge underlying it has a valid connection to the pertinent inquiry" and "a reliable basis in the knowledge and experience of the relevant discipline." *See Primiano*, 598 F.3d at 565.

Likewise, Dr. Burnett's discussion of a hypothetical preference for a side-by-side comparison rather than a sequential showing does not mean his "opinions should be excluded wholesale." (BIC's Mot. 14:3-9.) In his deposition, Dr. Burnett referenced what Professor McCarthy describes as "a more subtle form of '*Squirt*' survey . . . in which the respondent is shown an array of branded products, including the contesting brands, and is asked questions about the relation between the companies that sell the products with the contesting marks." McCarthy, *supra*, § 32:177. McCarthy goes on to explain that "[s]ome courts will admit such a survey only if it reflects a significant number of real world situations in which both marks

are likely to be seen in the marketplace sequentially or side-by-side." *Id.* BIC has not offered any evidence to suggest that the competing marks are likely to be seen in the marketplace sequentially, rather than side-by-side. Indeed, there is some evidence that seems to suggest the opposite. (*See* Opp'n 15:13-18.) Regardless, as the Court emphasizes in its order denying the exclusion of Mr. Poret's survey and testimony, surveys are by necessity imperfect and are to be viewed with an understanding of the challenges faced in their development and implementation. Just as any technical defects of Mr. Poret's actual survey go to weight, so too do any technical defects in Dr. Burnett's critique.

### C.    Sufficient Facts and Data

Lastly, BIC argues Dr. Burnett's report and testimony should be excluded because the sixteen instances of actual confusion he relies on are self-serving and de minimis. (BIC's Mot. 21:19-22.) Such an argument is equally unavailing as the previous two.

Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of." Fed. R. Evid. 703. Indeed, interpreting and analyzing factual evidence is a primary role of expert witnesses. *See United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997). It is wholly appropriate for Dr. Burnett to use his knowledge and experience to analyze and interpret factual evidence to reach an opinion. That Dr. Burnett relies on only sixteen instances of actual confusion provided to him by Marketquest does not render his opinions inadmissible. Actual confusion is not essential to a finding of trademark infringement because it is almost impossible to obtain evidence of actual confusion. *See Sleekcraft Boats*, 599 F.2d at 353 ("Because of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive.").

Based on the foregoing, the Court finds Dr. Burnett's reports are helpful to the trier of fact and based on generally accepted science and sufficient facts for the

1    purposes of Rule 702.

2    **IV.    CONCLUSION & ORDER**

3         The Court **DENIES** Defendants' *Daubert* Motion to Exclude Opinions of John

4    J. Burnett, Ph.D. (ECF No. 217.) The reports and testimony are relevant and offered

5    with sufficient foundation by one qualified to give it.

6         **IT IS SO ORDERED.**

7    **DATED:  April 12, 2018**

8

9                                        Hon. Cynthia Bashant
                                         **United States District Judge**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28