# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETQUEST GROUP, INC.,<br><br>                   Plaintiff,<br><br>   v.<br><br>BIC CORPORATION, *et al.*,<br><br>                  Defendants. | Case No. 11-cv-618-BAS-JLB<br><br>**ORDER DENYING DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE OPINIONS OF NON-RETAINED EXPERTS**<br><br>[ECF No. 219] |

     Presently before the Court is BIC's Motion to Exclude the Opinions of six non-retained experts. (ECF No. 219). BIC argues that these opinions: (1) improperly opine on an ultimate issue in the case; (2) have no reliable factual basis or standard analysis methodology; and (3) are offered by experts without producing expert witness reports. (ECF No. 219). Marketquest opposes. (Opp'n, ECF No. 262.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* FED. R. CIV. P. 78(b); S.D. CAL. CIV. L.R. 7.1(d)(1). For the following reasons, the Court DENIES BIC's motion.

**I.    BACKGROUND**

     On March 28, 2001, Plaintiff Marketquest Group, Inc. ("Marketquest") filed

this action for trademark infringement and unfair competition against Defendants BIC Corp., BIC USA, and Norwood Promotional Products ("BIC"). (ECF No. 1.) On May 5, 2011, Marketquest filed the operative First Amended Complaint ("FAC") (ECF No. 14.) On May 13, 2011, BIC filed its Answer and Counterclaims. (ECF No. 17.)

Marketquest is a California "supplier" that produces, advertises and sells customizable promotional products using the registered trademarks "ALL-IN-ONE" and "The Write Choice." (FAC ¶¶10–12.) BIC is one of the largest suppliers in the promotional products industry. (Marketquest's Mot. Partial Summ. J. 1:12-2:7, ECF No. 205.) The promotional products industry supports the manufacture and distribution of promotional products to companies ("end consumers") who want to brand themselves with customers. (Marketquest's Mot. 1:16–18.) When a company wants to brand itself with its customers, it approaches a promotional products "distributor." (*Id.* 1:19–21.) The distributor then approaches a supplier (such as Marketquest or BIC) who either manufactures or imports a promotional product on which the end consumer's brand is imprinted. (*Id.* 1:21–23.) According to Marketquest, such segregation of suppliers, distributors and end consumers is an integral part of the industry and never bypassed. (*Id.* 2:1–3.)

Marketquest alleges BIC began advertising and selling products using marks similar to Marketquest's. (FAC ¶¶21–25.) Specifically, Marketquest claims BIC used the phrase "The Write Pen Choice" in an online advertising campaign for writing instruments beginning in October 2010. (*Id.* ¶23.) Around the same time, Norwood Promotional Products, LLC, a subsidiary of BIC USA, printed a 2011 catalog entitled the "NORWOOD All in ONE" catalog. (*Id.* ¶24.) Alleging a form of reverse confusion, Marketquest argues that BIC's use of its marks to compete with it in selling the same products—to the same customers in the same advertising channels—in combination with BIC's reputation as a brand aggregator, caused confusion among customers. (Marketquest's Mot. Partial Summ J. 4:14–18.)

Marketquest lists six non-retained witnesses in three categories to testify to various opinions at trial: Marketquest principals Harris Cohen (President) and Karen Cohen (Executive Vice President); executives of distributor customers shared by the parties Marvin Mittleman of Pro Specialties and Linda Neumann of Brilliant Marketing Ideas; and executives of two promotional product trade organizations Matthew Cohn (Vice Chairman of Advertising Specialty Institute ("ASI") and Paul Bellantone of Promotional Products Association International ("PPAI"). The six non-retained witnesses are proffered to testify about the makeup of the promotional products industry, the characteristics of suppliers and distributors, and the use and importance of catalogues in the promotional products industry.

Specifically, BIC objects to their opinions that: (1) Marketquest's name, trademarks and brands are well-recognized in the promotional products industry; (2) a company's name and brand are critical to success in the industry; (3) BIC's use of "Norwood All in One" and "The Write Pen Choice" was confusing in the industry; (4) most distributors in the industry are unsophisticated; (5) BIC's use of "Norwood All in One" and "The Write Pen Choice" created confusion that Norwood Promotional Products had acquired or was affiliated with Marketquest, which was damaging to a small company like Marketquest; and (6) the promotional products industry experienced growth in 2006–08, decline in 2008–09 and began to recover in 2011. (ECF No. 219).

## II. DISCUSSION

BIC seeks exclusion of the opinions of the non-retained experts on the grounds that the opinions: (1) improperly opine on an ultimate issue in the case; (2) have no reliable factual basis or standard analysis methodology; and (3) are offered by experts without producing expert witness reports. (ECF No. 219). Marketquest opposed. (Opp'n, ECF No. 269.) Without addressing whether having all six witnesses testify to the same opinions might be cumulative, the Court finds none of these arguments has merit.

### A. Ultimate Issue

BIC claims the testimony about the likelihood of confusion is an attempt to tell the jury what decision to reach and embrace legal conclusions that are inadmissible. "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. Rather, opinions should be admitted when they are helpful to the trier of fact. *See* FED. R. EVID. 704, Adv. Comm. Note. Experts may not, however, offer opinions embodying legal conclusions. *See id*. (clarifying Rule 704 as not permitting "the admission of opinions which would merely tell the jury what result to reach").

In analyzing whether there is a likelihood of confusion, a jury must first consider the *Sleekcraft* factors and, based thereon, decide whether a likelihood of confusion exists. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003); *see also Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir. 1980). "With the analysis so structured, . . . the determination of what is the state of affairs regarding each factor (a 'foundational fact') is a finding of fact . . . but the further determination of likelihood of confusion based on those factors is a legal conclusion. *Alpha Indus., Inc.*, 616 F.2d at 443–44 (citing *J. B. Williams Co. Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191–92 (9th Cir. 1975), *cert. denied* 424 U.S. 913 (1976); *Sleekcraft Boats*, 599 F.2d at 348). Thus, courts distinguish between permissible expert opinions on the individual *Sleekcraft* factors from impermissible testimony amounting to legal conclusions on whether there is or is not a likelihood of confusion. *See Playboy Enters. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1082 (S.D. Cal. 1999), *aff'd in part, rev'd in part on other grounds* 279 F.3d 796 (9th Cir. 2002); *see also YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1203 (C.D. Cal. 2002) ("[T]he Court will not consider Anson's legal conclusions, although his opinions on the individual foundational facts, *i.e*. the individual *Sleekcraft* factors are admissible and will be considered"). Provided a proper foundation is laid and the expert has the requisite

experience, "[e]xpert testimony on the factors that go into the ultimate finding on the confusion issue is generally quite proper and helpful to both judge and jury." 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §23:2.75 (5th ed. 2018).

In this case, Marketquest offers executives familiar with the promotional products industry to testify about the strength of Marketquest's name, trademark and brand; the marketing channels used by both Marketquest and BIC; the degree of care likely to be exercised by the distributors who purchase products from suppliers like Marketquest and BIC; and evidence that there was actual confusion in this area caused by BIC's use of the words trademarked by Marketquest. Testimony about these *Sleekcraft* factors is absolutely proper. Although the witnesses may not testify that these factors caused a legal "likelihood of confusion," they may testify that the use of the similar marks was actually confusing and created confusion.

### B. Reliable Factual Basis of Standard Analysis Methodology

BIC argues that the testimony by the non-retained experts is not based on sufficient facts or data. (Mot. at 10.) However, the non-retained witnesses at issue are testifying based on their knowledge and experience in the promotional products industry rather than any methodology or theory behind the testimony. In such cases, "*Daubert* factors for determining the admissibility of expert testimony, such as peer review, publication, and potential error rate are not applicable . . ." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("[A]n expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training or education.' FED. R. EVID. 702." (emphasis in original)). In this case, the non-retained experts will be offering testimony based on their personal experience in the industry, and the testimony meets the minimum standards of admissibility. Concerns with reliability are more appropriately considered with

respect to the weight given to the testimony. *See Thermolife Int'l LLC v. Myogenix Corp.*, No. 13-cv-651 JLS (MDD), 2016 WL 3952128, at *3 (S.D. Cal. July 22, 2016); *Metavante*, 619 F.3d at 762 ("[d]eterminations on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination.") (quotations omitted).

### C. Lack of Expert Witness Reports

Rule 26(a)(2)(B) requires disclosure of an expert witness report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). BIC argues that all six of the non-retained expert witnesses should be excluded for failure to submit an expert report in keeping with this subsection.

"Every witness offering [expert] testimony . . . is not 'retained or specially employed to provide expert testimony.'" *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). The issue arises most frequently in the context of a treating physician. To the extent such a physician "testified only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer [expert] opinion testimony." *Id*. "However, when the physician's proposed opinion testimony extends beyond the facts made known to him [or her] during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, [that witness] becomes subject to the provisions of Fed. R. Civ. P. 26(a)(2)(B)." *Id.* "The determinative issue is the scope of the proposed testimony. For example, a treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained notwithstanding that he [or she] also happens to be the treating physician." *Id.*

Applying those rules to the witnesses proffered in this case, the Court turns

first to the President and Vice President of Marketquest. There is no information that these employees are ones whose duties regularly require them to give expert testimony. They may testify as to the Marketquest name, trademarks and brands in the promotional products industry and their belief that this name and brand are critical to the success of their company. They may also testify about how the promotional products industry is structured and the use and importance of catalogues in the promotional products industry. This testimony is simply information they have learned as an employee of Marketquest and not in preparation for litigation in this case. Thus, reports are not necessary.

With respect to the two customers of Marketquest and Norwood, these individuals would similarly be testifying based on their experience in the industry. They may testify about Marketquest brands, structure of the industry, importance of catalogues and any confusion they suffered or witnessed from use of the All-in-One and Write Choice marks. They may also testify about their experience with respect to the characteristics, specifically the relative sophistication, of suppliers and distributors in the industry. None of this requires work that was specially prepared for this case.

Additionally, the executives of two promotional product trade organizations may testify about similar issues. None of these witnesses was asked to do research or review records to testify. Any records they reviewed were ones done in conjunction with their employment.

Finally, the non-retained experts may testify about their experience with the promotional products industry and its growth and decline during the 2006–2011 period. This is information they learned in their employment and did not gather in preparation for litigation in this case. Hence, no expert witness report is required under Rule 26(a)(2)(B).

### III. CONCLUSION & ORDER

For the foregoing reasons, Defendant's Motion to Exclude the Opinions of

Non-Retained Experts (ECF No. 219) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  April 12, 2018**

Hon. Cynthia Bashant
United States District Judge