1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 MARKETQUEST GROUP, INC.,

Case No. 11-cv-618-BAS-JLB

Plaintiff,

12 **ORDER:**

13 v.

**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF MARKETQUEST'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

14 BIC CORPORATION;
BIC USA INC.;
15 NORWOOD PROMOTIONAL PRODUCTS, LLC,

16 Defendants.

**[ECF No. 205];**

17

**(2) DENYING DEFENDANT BIC CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

18

19

20 **[ECF No. 216];**

21 **AND**

22 **(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS BIC USA AND NORWOOD'S MOTIONS FOR SUMMARY JUDGMENT AS TO DAMAGES**

23

24

25 **[ECF Nos. 214, 215]**

26

27      This case is on remand from the Ninth Circuit's reversal of this Court's

28 previous order granting summary judgment to Defendants on their fair use defense

and corresponding dismissal of Plaintiff Marketquest Group, Inc.'s ("Marketquest") claims that Defendants infringed its All in One and THE WRITE CHOICE marks. *See Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-618-BAS-JLB, 2015 WL 1757766 (S.D. Cal April 17, 2015), *rev'd by*, *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927 (9th Cir. 2017). The Court has reinstated Marketquest and BIC Corp.'s cross-motions for summary judgment filed in 2014, the merits of which the Court has not previously reached. Marketquest seeks partial summary judgment on all of Defendants' thirteen counterclaims and twelve of Defendants' twenty-two affirmative defenses. (ECF No. 205.) BIC Corp. has opposed the motion. (ECF No. 254.) BIC Corp. has cross-moved for partial summary judgment on five counterclaims, which Marketquest has opposed. (ECF Nos. 216-1, 259.) The Court has also reinstated Defendants BIC USA, Inc. ("BIC USA") and Norwood Promotional Products LLC's ("Norwood") motions for summary judgment as to Plaintiff's damages, which Marketquest has opposed. (ECF Nos. 214, 215, 258.) The reinstated motions and opposing papers, the record submitted, and the parties' evidentiary objections number several thousand pages.[1]

For the reasons herein, the Court: (1) grants in part and denies in part Marketquest's motion; (2) denies BIC Corp.'s motion in full; and (3) grants in part and denies in part BIC USA and Norwood's motions.

# I. BACKGROUND

## A. Factual Background

### 1. The Parties and the Promotional Products Industry

The acts of alleged trademark infringement in this case arise in the context of the promotional products industry. A promotional product is a product used by a

---

[1] Throughout this litigation, each side has effectively sought to "memorize another Golgatha," W. Shakespeare, *Macbeth*, act I, scene 2, line 40 (1606). The extent of the counterclaims and affirmative defenses as well as the scope of the four motions for summary judgment reflect the contentious nature of the parties' dispute.

company to brand itself with its customers. (ECF No. 205-8 Decl. of Harris Cohen ("Cohen Decl.") ¶16.) The industry supports the manufacture, imprinting, and distribution of promotional products to companies seeking to brand themselves. (*Id.*) In this context, a distributor approaches a supplier which either manufactures or imports a promotional product and then imprints the company's brand and messaging on the product. The end company then gives the product away as part of a promotion. (*Id.* ¶17, Ex. I.3.)

Marketquest, doing business as "All in One," is a San Diego, California-based local supplier of promotional products, including pens, writing instruments and magnets. (*Id.* ¶¶5–12.) At issue in this case are Plaintiff's federally registered All in One and THE WRITE CHOICE trademarks. Marketquest's All in One marks, primarily for "writing instruments, namely pens," include: (1) the word mark "ALL-IN-ONE", Registration No. 2,422,976 (Jan. 23, 2001) ('976 Registration); (2) the word mark "ALL-IN-ONE LINE," Registration No. 2,426,417 (Feb. 6, 2001) ('417 Registration); (3) the design mark "ALL IN ONE," Registration No. 3,153,089 (Oct. 10, 2006) ('089 Registration)[2] (a registration which also covers services of "dissemination of advertising matter"); and (4) the design service mark "ALL IN ONE," Registration No. 3,718,333 (Dec. 1, 2009) ('333 Registration)[3], specifically for services including "customized printing of equipment, merchandise and accessories for business promotion." (ECF No. 205-2, Request for Judicial Notice ("RFJN") ¶¶1–3, 5, Exs. A–C, E.) Plaintiff also sues for alleged infringement of the

---

[2] The registered All in One '089 mark appears as (ECF No. 205-5 Ex. C):



[3] The registered All in One '333 mark appears as (ECF No. 205-7 Ex. E):



word mark for goods "THE WRITE CHOICE," Registration No. 3,164,707 (Oct. 31, 2006) ('707 Registration). (*Id.* ¶4, Ex. D).

According to Plaintiff, Defendant Norwood is one of the largest non-apparel promotional products suppliers in the industry. (ECF No. 205-22, Decl. of Michael Lane ("Lane Decl.") ¶¶12–13, Exs. J, K.) Plaintiff claims that Norwood has reached this size by acquiring and aggregating smaller suppliers, like Plaintiff, and retaining their trademarks. (*Id.* ¶¶14–15, Exs. F.2, I.2.) BIC Corp. and BIC USA acquired Norwood in 2009 at a bankruptcy auction. (ECF No. 214-2, Decl. of Lori Bauer ("Bauer Decl.") ¶3.)

## 2. Defendants' Alleged Infringement of the Marks

Plaintiff alleges Defendants used its "All in One" marks in their 2011 catalogue. (ECF No. 227-5, Lane Decl. ¶32, Exs. Y, Z.) Plaintiff claims Defendants placed the mark on the cover of the catalog in the same location where Norwood placed its "sub brands" on the cover of its 2010 catalog, which Plaintiff contends implied that Defendants had acquired Plaintiff. (*Id.* ¶¶20–23, Exs. S, N, O, P, Q.) Defendants contend that the phrase "All in One catalogue" signified that Defendants had merged multiple catalogues into one. (ECF No. 214-2, Bauer Decl. ¶6.) Defendants also distributed promotional materials that featured an image of this 2011 catalogue, and directed customers to look for products or information in the "2011 Norwood All in One catalogue." (ECF No. 227-5, Lane Decl. ¶¶34–38, Exs. X, Y, Y.2, AC, AD, AE, AF.) Plaintiff also alleges that Defendants distributed an on-line advertisement that said "Put Your Drinkware Needs . . . in a Norwood All in One basket," which included a photo of a basket containing several types of drinkware. (Lane Decl. ¶12, Ex. C.2.)[4]

---

[4] There is no express reference to this factual allegation in the First Amended Complaint, nor in any of Plaintiff's summary judgment briefing. This Court was made aware of this allegation from the Ninth Circuit's opinion, which devoted a paragraph to the basket. *See Marketquest Grp., Inc*., 862 F.3d at 935. A review of Marketquest's briefing before the Ninth Circuit indicates that Marketquest expressly

Plaintiff further alleges Defendants used "the Write Pen Choice" to promote the 30th anniversary of the BIC Round Stic pen. (First Amended Complaint ("FAC") ¶23; ECF No. 227-5, Lane Decl. ¶43, Ex. K.3.) Plaintiff claims that this infringed the "THE WRITE CHOICE" mark. (*Id.*)

## B.   Procedural Posture

### 1.   Pre-Appeal

On March 28, 2011, Marketquest brought suit against BIC Corp., BIC USA, and Norwood, alleging that (1) Defendants infringed the All in One marks in violation of 15 U.S.C. §1114; (2) Defendants' conduct with respect to the All in One marks constituted unfair competition in violation of 15 U.S.C. §1125(a); (3) Defendants infringed THE WRITE CHOICE mark in violation of 15 U.S.C. §1114; (4) Defendants' conduct with respect to THE WRITE CHOICE mark constituted unfair competition in violation of 15 U.S.C. §1125(a); (5) Defendants' conduct violated the California Unfair Competition Law, CAL. BUS. & PROF. CODE §17200, *et seq.*; and (6) Defendants were unjustly enriched. (ECF No. 1.) Plaintiff filed the FAC on May 5, 2011, alleging these same claims. (ECF No. 14.) On May 13, 2011, Defendants filed their Answer, raising thirteen counterclaims, broadly grouped into fraud, abandonment, and mere descriptiveness and ornamentality. (ECF No. 17.) Defendants also asserted some twenty-two affirmative defenses, including fair use, defenses related to the counterclaims, and multiple equitable defenses. (*Id.*)

---

raised the issue of Norwood's basket in the Court of Appeals to show triable issues remain for trial, preventing summary judgment on the fair use defense for the All in One marks. *See Marketquest Grp., Inc. v. BIC Corp.*, No. 15-55755, ECF No. 17-2 at 39, 83 (9th Cir. Nov. 16, 2015). The Court located the relevant exhibit after scouring the record submitted to the Ninth Circuit from the proceedings before this Court and its corresponding reference to the docket in this case. The Court should not have to "search for truffles" in the evidentiary record submitted with the parties' motions to discover the facts supporting Plaintiff's claims. *See All Cities Realty, Inc. v. CF Real Estate Loans, Inc.*, No. SA CV 05-615 AHS (MLGx), 2008 WL 10594412, at *7 (C.D. Cal. Mar. 14, 2008) (quoting *Rogers v. Penland*, 232 F.R.D. 581, 582 (E.D. Tex. 2005)).

In August 2011, Marketquest moved for a preliminary injunction to enjoin Defendants from continuing their alleged infringement of the marks. (ECF No. 27.) Judge Sammartino, then presiding over this case, denied Plaintiff's motion on November 7, 2011. (ECF No. 41.) Judge Sammartino determined that Plaintiff was likely to show it has valid, protectable All In One marks, and rejected Defendants' defenses of fraud and abandonment.[5] (*Id*. at 6–9.) Although Judge Sammartino determined that there was "some likelihood of confusion" based on the eight likelihood of confusion factors elaborated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), she also determined that Defendants were likely to succeed on a fair use defense. (*Id*. at 9–23.) Marketquest did not appeal the denial of the preliminary injunction motion.

Roughly three years later, after numerous discovery disputes among the parties requiring Court intervention on eighteen occasions (ECF No. 175), the case entered the summary judgment stage on October 27, 2014 when Marketquest filed its motion for partial summary judgment on Defendants' counterclaims and certain affirmative defenses. (ECF No. 205). BIC Corp. filed its motion for partial summary judgment on Defendants' fraud and abandonment counterclaims. (ECF No. 216-1.) BIC USA and Norwood each filed motions for summary judgment on the fair use defense and Marketquest's damages. (ECF Nos. 214, 215.) After submission of extensive briefing and a swelling record, the Court held oral argument on the parties' motions on February 9, 2015. (ECF No. 323, 324.)

On April 17, 2015, the Court granted Defendants Norwood and BIC USA's motions on fair use. (ECF No. 327.)[6] As a result of that decision, the Court denied

---

[5] Judge Sammartino deemed waived Plaintiff's preliminary injunction request insofar as it concerned THE WRITE CHOICE mark because Plaintiff directed its preliminary injunction motion and supporting evidence solely to the All In One marks. (ECF No. 41 at 5 n.5.) The order focused solely on the All in One marks.

[6] This Court's summary judgment order characterized a response from

Defendant BIC Corp.'s cross-motion (ECF No. 216-1) and dismissed Defendants' counter-claims (ECF No. 17). The Court terminated as moot Plaintiff's motion for partial summary judgment (ECF No. 205), Defendants' motion for sanctions (ECF No. 289) and several motions seeking to exclude testimony of experts and certain witnesses. (ECF Nos. 199, 217, 218, 219). Judgment was entered in favor of Defendants and the FAC was dismissed. (ECF No. 328.)

### 2. Appeal and Post-Remand

Plaintiff appealed this Court's summary judgment decision in favor of Defendants on May 15, 2015. (ECF No. 339.) Over two years later, the Ninth Circuit issued its mandate (the "Mandate") reversing this Court's order. (ECF No. 377.) With respect to the All in One marks, the Ninth Circuit determined that genuine issues of fact exist as to all elements of the fair use defense. (*Id.* at 13–17.) The Ninth Circuit, however, left open to this Court to determine on remand the relevance of the degree of consumer confusion in this case. (*Id.* at 19.) As to THE WRITE CHOICE mark, the Ninth Circuit determined that this Court erred by applying the fair use analysis to Defendants' use when it had also found that "there was no evidence of actual or potential confusion." (*Id.*) The Ninth Circuit observed that "'[t]he fair use defense only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely.'" (*Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608–09 (9th Cir. 2005).) The Ninth Circuit remanded for this Court "to consider Marketquest's trademark infringement claim regarding Defendants' use of the 'The

---

Defendants' counsel at the hearing to mean that if the Court ruled in Defendants' favor on the fair use defense, Defendants would concede their counterclaims. (ECF No. 327 at 11 & n.6.) The Court hereby clarifies that the particular response provided by counsel was that the Court would not have to reach the counterclaims, rather than an express concession to dismissal of the counterclaims. (*Id.*)

Write Choice.'" (*Id.* at 20.)[7]

In view of the Mandate and after requesting the parties' positions regarding how the case should proceed (ECF Nos. 383, 386, 388, 390, 391), the Court reinstated the FAC, Defendants' counterclaims, and the motions at issue in this Order. (ECF No. 400.)[8]

### 3. The Issues for Resolution Here

With the procedural posture of the case set, the Court briefly outlines the issues for resolution in this Order. Marketquest and BIC Corp. both seek partial summary judgment with respect to Defendants' (1) Affirmative Defense 15 and Counterclaims 4, 8, 10, and 12 regarding fraudulent procurement of the marks, and (2) Affirmative Defense 16 and Counterclaims 3, 7, 9, and 11 regarding abandonment of the marks. Marketquest further seeks partial summary judgment on (1) Counts 1 and 3 (trademark infringement claims) of the FAC with respect to whether Marketquest has valid and protectable marks; (2) Affirmative Defense 21 and Counterclaims 1, 2, 5, 6 and 13 regarding mere descriptiveness and ornamentality of certain marks; and (3) Affirmative Defenses 2 (acquiescence), 6 (laches), 7 (waiver), 8 (estoppel), 9 (unclean hands), 10 (statute of limitations), 11 (general invalidity defense), 17 (trademark misuse), and 20 (nominative fair use). BIC USA and Norwood seek

---

[7] Defendants filed a petition for writ of certiorari to seek Supreme Court review of the Ninth Circuit's decision, which the Supreme Court denied on May 14, 2018. *BIC Corp., et al. v. Marketquest Grp., Inc.*, No. 17-979,—S.Ct.—,2018 WL 2186233, at *1 (May 14, 2018).

[8] The Court expressly overruled Plaintiff's objection (ECF No. 390) to reinstatement of Defendants' counterclaims and BIC Corp.'s cross-motion for partial summary judgment. (ECF No. 400.) It bears noting that Plaintiff contended that its motion for partial summary judgment would be properly before this Court on remand, but not BIC Corp.'s motion (ECF No. 390 at 1, 4), despite the fact that BIC Corp. cross-moved on the *same* issues as Plaintiff. Plaintiff also contended that this Court could not consider likelihood of confusion regarding THE WRITE CHOICE mark, despite the *express* language of the Mandate to do so to determine whether the fair use defense even applies to the alleged infringement of that mark. (*Id.* at 5–7.)

summary judgment on Plaintiff's damages.[9]  In addition to these issues, the Court addresses the issue of likelihood of confusion regarding THE WRITE CHOICE mark, as instructed by the Mandate.

## II.    EVIDENTIARY ISSUES

### A.    Plaintiff's Requests for Judicial Notice

Marketquest submits two requests for judicial notice.  The first request seeks judicial notice of a certified copy of each mark's registration with the United States Patent and Trademark Office ("PTO").  (ECF No. 205-2 Exs. A–E.)  The second request seeks judicial notice of a certified copy of each registration file wrapper for the marks, which includes information regarding the initial application for the marks, correspondence with the PTO, and related registration documents.  (ECF No. 258-1 Exs. F–J.)

Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  Administrative agency records are subject to judicial notice.  *Interstate Nat. Gas Co. v. S. Cal. Gas Co*., 209 F.2d 380, 385 (9th Cir. 1953); *see also United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008).  Courts routinely take judicial notice of PTO records in trademark litigation.  *See, e.g*., *Bennett v. Forbes*, No. 17-cv-464-MMA-KSC, 2017 WL 4557215, at *2 (S.D. Cal. Oct. 12, 2017) (taking judicial notice of trademark application obtained from PTO electronic search system); *Clearly Food & Beverage Co. v. Top Shelf Bevs., Inc*., 102 F. Supp. 3d 1154,

---

[9] As the Court has already noted, BIC USA and Norwood moved for summary judgment on the fair use defense in these motions.  (ECF Nos. 214, 215.)  The Court has not reinstated the motions as to that defense, which remains an issue for trial in light of the Mandate.  The Court's analysis herein of the likelihood of confusion for THE WRITE CHOICE mark, however, draws from the parties' fair use defense briefing.

1161 (W.D. Wash. 2015) (taking judicial notice of trademark application, notice of publication of mark, registration certificate, combined declaration of use and/or excusable nonuse/application for renewal); *Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681, at *8 n.4 (C.D. Cal. April 24, 2012) (taking judicial notice of trademark assignment filed on PTO-published website). Accordingly, the Court grants Marketquest's requests.[10]

## B. Evidentiary Objections

Each party has lodged numerous evidentiary objections to many exhibits submitted in connection with the summary judgment briefing. These objections are largely unwarranted and the Court generally overrules them.

"[A] party does not necessarily have to produce evidence in a form that would be admissible at trial" to survive summary judgment. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Rather, "Rule 56[(c)] requires only that evidence 'would be admissible', not that it presently be admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). Thus, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (same).

The vast majority of the objections offered by Marketquest (ECF Nos. 268, 282) are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Stonefire Grill, Inc. v. FGF*

---

[10] In taking judicial notice of these documents, the Court overrules each of Marketquest's objections to documents submitted by Defendants. The documents submitted by Defendants are identical to those for which Plaintiff has sought judicial notice and would be independently subject to judicial notice under Rule 201(b). *See, e.g., Peruta v. Cty. of San Diego*, 678 F. Supp. 2d 1046, 1054 n.8 (S.D. Cal. 2010) (courts may properly take judicial notice of documents appearing on governmental websites); *see also Bennett*, 2017 WL 4557215, at *2.

*Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (quoting *Doe v. Starbucks, Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)). As such, they do little to convince the Court that a meritorious objection hides among the haystack of evidentiary rules cited. While Defendants' objections appear tailored in form—adding analysis, rather than simply citing a slew of evidentiary rules—the consistency of the same objections raised to nearly every statement in Marketquest's declarations and the underlying exhibits evidences the boilerplate spirit that guides them. (ECF Nos. 291, 310-6.) As to all boilerplate objections from the parties regarding foundation, relevance, hearsay, the best evidence rule, and prejudice, "the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact." *Stonefire Grill, Inc.*, 987 F. Supp. 2d at 1033. "To the extent that the Court relied on objected-to evidence, it relied only on admissible evidence and, therefore, the objections are overruled." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (quotation omitted).

Both sides object to certain exhibits on the ground that they are irrelevant, speculative, and/or argumentative, or constitute an improper legal conclusion. These objections are unnecessary. The "parties should simply *argue* that the facts are not material," rather than drown the Court in objections which "are all duplicative of the summary judgment standard itself." *Burch*, 433 F. Supp. 2d at 1119 (emphasis in original). Both sides also object to statements in the declarations submitted by the other's counsel as improperly characterizing the contents of documents, being argumentative, or making improper legal conclusions. These objections are "simply superfluous" in the summary judgment context because "statements in declarations or improper legal conclusions, or argumentative statements, are not fact and . . . will not be considered on a motion for summary judgment." *Id.*; *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008) (declining to rule on objections to statements in declarations submitted with a summary judgment motion). The Court overrules all such objections.

Both sides lodge various authentication challenges to documents submitted by the other, even when the document has been provided by the other side as well. To give a document foundation, the proponent need only make a showing of authenticity sufficient to allow a reasonable juror to find that the matter in question is what its proponent claims. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (citing FED. R. EVID. 901(a)). The Court is generally satisfied that the parties' exhibits meet this standard and overrules these objections.

Marketquest does offer a more particularized authentication challenge by objecting to various excerpts of deposition testimony submitted by Defendants, which generally lack a reporter's certification. A deposition or an extract therefrom is properly authenticated in a motion for summary judgment when it identifies the name of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. *See* FED. R. EVID. 901(b); FED. R. CIV. P. 56(e), 30(f)(1); *see also Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002). Although Defendant's excerpts do not satisfy this rule when taken alone, Marketquest has offered and properly authenticated excerpts from the depositions of the same individuals. As such, the excerpts on which Defendants rely from the same deponents are authenticated. *See Orr*, 285 F.3d at 776 ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all other parties . . ."); *Kesey, LLC v. Francis*, CV-06-540-AC, 2009 WL 909530, at *4 (D. Or. April 3, 2009) (finding that plaintiff's proper authentication of deposition excerpts from same deponent rendered admissible defendant's excerpts from same deponents). The Court thus overrules Marketquest's objections. With the parties' evidentiary objections addressed, the Court finally turns to the merits of the motions for summary judgment.

## III.   LEGAL STANDARD

Summary judgment is proper on "each claim or defense" "or the part of each claim or defense" on which summary judgment is sought when "there is no genuine

dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The district court may limit its review to documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.,* 55 F.3d 247, 251 (7th Cir. 1995)). When resolving a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court does not make credibility determinations or weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. The court's role at summary judgment "is to isolate and dispose of factually unsupported claims" so that they are "prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy its burden in two ways: (1) by presenting evidence that

negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60 (1970).

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *Celotex Corp.*, 477 U.S. at 324. The party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. A "scintilla of evidence" in support of the nonmoving party's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (same). Nor can "a party . . . manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (citations omitted).

"[S]ummary judgment is generally disfavored in the trademark arena" because of "the intensely factual nature of trademark disputes." *Marketquest Grp., Inc.*, 862 F.3d at 932 (citing *KP Permanent Make-Up, Inc.*, 408 F.3d at 602); *Interstellar Starship Servs. Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999). However, "this is not invariably so." *Sidco Indus. v. Wimar Tahoe Corp.*, 795 F. Supp. 343, 345 (D. Or. 1992) (quoting *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir. 1989)).[11] Claims or affirmative defenses in a trademark infringement action that

---

[11] While Marketquest relies on the general disfavor to summary judgment in the trademark arena to resist Defendants' motions for summary judgment, it does so

lack a sufficient evidentiary basis under the applicable standard of proof, or for which there are only questions of law for the court to resolve, are appropriate for summary resolution. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) ("In ruling on a motion for summary judgment, our inquiry 'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.'") (quoting *Anderson*, 477 U.S. at 252); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1108 (N.D. Cal. 2008) ("[S]ummary judgment is still appropriate in trademark suits when no dispute remains as to genuine issues of material fact.") (citing *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102 (9th Cir. 2006)); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956 (C.D. Cal. 1997).

## IV. DISCUSSION

### A. Validity and Protectability of the Marks

Marketquest moves for summary judgment on two sets of issues that present the same question: whether the All in One and THE WRITE CHOICE marks are valid and protectable. Marketquest moves for partial summary judgment on its trademark infringement claims of the All in One marks (Count 1) and THE WRITE CHOICE mark (Count 3) on the ground that there are no triable issues regarding whether it has valid and protectable marks. (ECF No. 205-1 at 8–9.) Marketquest also moves for summary judgment on Defendants' Affirmative Defense 21 and

---

only as a shield against those motions. (ECF No. 259 at 3.) Drawing on the exception as a sword, Marketquest "concedes" that summary judgment is proper so long as the Court rules in its favor on its motion. (*Id.* at 3 n.4.) Defendants in turn resist Marketquest's motion for summary judgment by contending that genuine issues of material fact remain, yet claim that no genuine issues of fact remain and the law clearly favors their position in their cross-motion. (ECF Nos. 216, 254.) The Court is left to question whether the parties' inflexible positions as to the propriety of summary judgment when it might be unfavorable to them are mere "sound and fury, signifying nothing." W. Shakespeare, *Macbeth*, act. V, scene 5 lines 27–28 (1606).

Counterclaims 1, 2, 5, 6, and 13.[12]  (*Id.* at 13–20.)  Defendants assert that certain marks are invalid because they are "merely descriptive" and/or "merely ornamental." (ECF No. 17.)  Defendants' counterclaims thus intersect with the fundamental question of the protectability of Marketquest's marks.  Because the claims and counterclaims intersect in this manner, the Court will consider them together.

The fundamental starting point of whether Plaintiff has valid and protectable marks is the nature of a trademark.  The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. §1127.  To claim infringement, a plaintiff must have a "valid, protectable trademark."  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).  "The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness."  *Calista Enters. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1115 (D. Or. 2014) (citing 15 U.S.C. §1052).

Courts have identified five categories of distinctiveness which impact whether a mark is protectable: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Suggestive, arbitrary, and fanciful marks are deemed "inherently distinctive" and automatically entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product."  *Zobmondo Entm't, LLC*, 602 F.3d

---

[12] The counterclaims as to particular registrations are: Counterclaim 1–mere descriptiveness (THE WRITE CHOICE mark '707 registration); Counterclaim 2–mere ornamentality (THE WRITE CHOICE mark '707 registration); Counterclaim 5–mere descriptiveness as to goods and services (All in One mark '089 registration); Counterclaim 6–mere ornamentality as to goods (All in One mark '089 registration); and Counterclaim 13–mere descriptiveness as to services (All in One mark '333 registration).

at 1113; *see also Two Pesos, Inc.*, 505 U.S. at 768–69. "Generic" marks, or "common descriptive" names for what a product is, are the weakest category and receive no trademark protection. *Zobmondo Entm't, LLC*, 602 F.3d at 1113; *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), *rev'd on other grounds by*, 469 U.S. 198 (1985). A "descriptive" mark may be entitled to protection *only* if it has acquired distinctiveness through secondary meaning. *Zobmondo Entm't, LLC*, 602 F.3d at 1113; *Two Pesos*, 505 U.S. at 769. Trademark validity and the category to which a mark belongs are deemed to be "an intensely factual issue" with "the plaintiff bear[ing] the ultimate burden of proof" to show that its trademark is valid and protectable. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *KP Permanent Make-Up, Inc.*, 408 F.3d at 605.

As all of Marketquest's marks in this case are registered on the Principal Register of the PTO, the registrations are "prima facie evidence of the validity of the registered marks." 15 U.S.C. §1057(b); 15 U.S.C. §1115(a). "[F]ederal registration . . . entitles the plaintiff to a strong presumption that the mark is a protectable mark." *Zobmondo Entm't, LLC*, 602 F.3d at 1113 (internal quotations omitted); *see also Brookfield Commc'ns., Inc.*, 174 F.3d at 1047. If the plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable. *Zobmondo Entm't, LLC*, 602 F.3d at 1114; *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775–76 (9th Cir. 1981). A defendant may rebut the presumption of validity when the federally registered trademark is contestable. *Vuitton et Fils S.A.*, 644 F.2d at 775. Defendants' burden at trial with their counterclaims is thus to show that, notwithstanding the presumption of protectability arising from the marks' registrations, the marks are descriptive and lack secondary meaning. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005), *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014

(9th Cir. 1979).  As the non-movants here, however, Defendants need only show that a triable issue of fact precludes summary judgment in Marketquest's favor.[13]

### 1. The All in One Service Marks ('089 and '333 Registrations)

The Court first considers Marketquest's motion as it applies to the All in One marks in the '089 and '333 registrations for services, both of which are contestable. The Court finds that genuine issues of material fact preclude summary judgment in Plaintiff's favor on both Count 1 of its trademark infringement claim and Counterclaims 5 and 13 of Defendants' mere descriptiveness counterclaims as to its contestable registrations for services.

### a. There Exists a Genuine Dispute About Whether the All in One Marks Are Descriptive of Services

As an initial matter, the nature of the marks in the '089 and '333 registrations bears upon how the Court should assess the issues the parties raise.  The PTO registered both marks without requiring proof of secondary meaning.  When "the PTO issues a mark registration without requiring proof of secondary meaning, the registrant . . . enjoys 'a presumption that the purchasing public perceives the . . . mark to be inherently distinctive.'"  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)); *see also Zobmondo Entm't, LLC*, 602 F.3d at 1113–14.  Marketquest understandably grasps onto this presumption in its motion for summary judgment, requesting that the Court "decline Defendants' invitation" to find

---

[13] When a defendant affirmatively moves for summary judgment, "the burden on the defendant necessary to overcome that presumption [from the mark's registration] at summary judgment is a heavy one."  *Zobmondo Entm't, LLC*, 602 F.3d at 1113 (citing *Americana Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992) (reversing a district court's grant of summary judgment because the district court "gave insufficient weight to the presumptive effect of [the plaintiff's] federal registration.").  Here, as the parties opposing summary judgment on the particular claims, Defendants need only show that a triable issue of material fact exists.

that the marks are not inherently distinctive. (ECF No. 205-1 at 15.) "However, 'while the registration adds something on the scales, we must come to grips with an assessment of the mark itself.'" *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011) (quoting *Zobmondo Entm't, LLC*, 602 F.3d at 1149). Thus, the fact that both the contestable '089 and '333 registrations did not require proof of secondary meaning does not foreclose this Court from determining that a genuine dispute of material fact exists as to whether the marks are descriptive without secondary meaning.[14]

"Deciding whether a mark is distinctive or merely descriptive 'is far from an exact science' and is 'a tricky business at best.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009) (quoting *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988)). Suggestive marks require "a consumer [to] use imagination or any type of multistage reasoning to understand the mark's significance." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) (providing as examples "Air Care" for a service that maintains medical equipment used for administering oxygen and "Anti-Washboard" for a soap that makes scrubbing unnecessary when washing clothes). Descriptive marks, however, "define qualities or characteristics of a product in a straightforward way." *Id.* (examples include "Honey Baked Ham" for a ham that has been baked with honey and "Honey Roast" for nuts that have been roasted with honey); *see also Park 'n Fly, Inc.*, 469 U.S. at 194 (stating that a descriptive mark "describes the qualities or characteristics of a good or service"). "Whether a mark suggests or

_____

[14] Marketquest suggests that a merely descriptive challenge is not available for the All in One marks in connection with services by pointing to the incontestable All in One mark registrations for goods. (ECF No. 205-1 at 15 & n. 13.) The Court rejects this suggestion without hesitation. Plaintiff cannot latch onto the incontestable registrations for goods to insulate the mark from review as applied to services. *See In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 1568 (Fed. Cir. 1987) ("[t]he only thing that becomes incontestable is the right of the registrant to use the mark for the goods or services for which it is registered.").

– 19 –

describes the goods or services of the trademark holder depends, of course, upon what those goods or services are." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (internal quotations and citations omitted). As noted, the question of which classification applies to a particular mark is a factual determination. *Lahoti*, 586 F.3d at 1195.

Two tests are used to differentiate descriptive marks requiring proof of secondary meaning from suggestive marks that do not. The first and "primary criterion" is the "imagination test," which asks whether "imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." *Rudolph Int'l, Inc. v. Realys, Inc*., 482 F.3d 1195, 1198 (9th Cir. 2007) (quotation marks omitted). A routinely used example of a mark that fails the imagination test is "ENTREPENEUR," which is descriptive as applied to a magazine because "an entirely unimaginative, literal-minded person would understand the significance of the reference." *Entrepreneur Media, Inc.*, 279 F.3d at 1142. The second test is known as the "competitor needs" test, which "focuses on the extent to which a mark is actually needed by competitors to identify their goods or services." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). The needs test asks whether "the suggestion made by the mark is so remote and subtle that it is really not likely to be needed by competitive sellers to describe their goods." *Zobmondo Entm't, LLC*, 602 F.3d at 1116 (quotations omitted). These two tests are complementary rather than independent inquiries as "the more imagination that is required to associate a mark with a product or service, the less likely the words used will be needed by competitors to describe their products or services." *Zobmondo Entm't, LLC*, 602 F.3d at 1117 (quotations and citations omitted).

Marketquest argues that the issue of whether the All in One mark is descriptive or suggestive has already been decided, directing the Court to the preliminary injunction order. (ECF No. 205-1 at 15.) At the preliminary injunction stage, Judge Sammartino "agree[d] with Marketquest that ALL-IN-ONE is at least a suggestive

mark because it requires a mental leap from the mark to the product, and as a registered trademark it is inherently distinctive." (ECF No. 41 at 11 (internal quotations omitted).) In reaching this conclusion, however, the decision first determined that the needs aspect was "plainly quite low" because the phrase is not needed to describe a company that sells customizable business promotion merchandise. (*Id.*) The decision determined that "[c]orrespondingly, the mark's imagination aspect is high." (*Id.*) While recognizing that "the phrase 'all in one' comes closest to describing the 'one-stop source' aspect of Marketquest's service," the decision reasoned that "it does not explain how the phrase in any way describes customizable business promotion merchandise, which is in essence the heart of Marketquest's service." (*Id.* at 12.)

Marketquest contends that a different determination by this Court now would "reverse" the preliminary injunction ruling. (ECF No. 275 at 17.) The Court rejects Marketquest's argument for two postural reasons. First, a preliminary injunction ruling is premised on an inherently limited record. *See, e.g., FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1235 (9th Cir. 1999). A court's summary judgment analysis necessarily "may differ from its findings at the preliminary injunction stage" due to a fuller evidentiary record. *Zepeda v. INS*, 753 F.2d 719, 723–24 (9th Cir. 1983). Defendants raise arguments and evidence here that were not presented during the preliminary injunction stage. Second, Marketquest's argument "misperceives the purpose of a preliminary injunction" assessment, which "is not a preliminary adjudication on the ultimate merits," but rather an assessment of whether the equities point toward "preserving rights pending final resolution of the dispute." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Importantly, "decisions on preliminary injunctions do not constitute law of the case and parties are free to litigate the merits." *Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830, 832 n.3 (9th Cir. 1985) (internal quotation omitted); *Anaheim v. Duncan*, 658 F.2d 1326, 1328 n.2 (9th Cir. 1981). Thus, the preliminary injunction

order is not binding here.

In addition to these postural reasons, the Court respectfully departs from the reasoning in the preliminary injunction order because relevant distinctions have come into play at this stage of the proceedings in which the ultimate merits are very much at issue. The preliminary injunction order treated Marketquest's All in One marks for goods and services together, blurring the line between the specific products named in the All in One mark registrations for goods with those for services. But as the Court has noted, a mark is assessed with particular "reference to *the goods or services* that it identifies," *Entrepreneur Media, Inc.*, 279 F.3d at 1142 (emphasis added). A mark may be descriptive as to one but not as to the other, a point Marketquest expressly recognizes by arguing against descriptiveness of the All in One marks for goods *separately* from that for services. (*Contrast* ECF No. 205-1 at 13–14 (goods) *with id.* 14–17 (services).) Whereas the Court agrees that the phrase "all in one" is not descriptive as applied to goods classes, the Court cannot say the same with respect to Marketquest's service marks.

Turning to the imagination test here, Defendants argue that the All in One mark merely describes an aspect of Marketquest's services. Defendants need only present sufficient evidence to show that there is a triable issue that the primary significance of the mark to the purchasing public is descriptive. *Quiksilver, Inc*, 466 F.3d at 760–61 (quoting *Lane Capital Mgmt., Inc*., 192 F.3d at 345). Defendants provide a dictionary definition of "all in one." "A suitable starting place for attempting to draw the line between a suggestive and a descriptive mark is the dictionary." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1033 (9th Cir. 2010) (internal quotations omitted); *see also Surgicenters of Am., Inc.*, 601 F.2d at 1015 n.11 ("While not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public . . ."). The Oxford Dictionary definition proffered by Defendants defines "all in one" to mean "[c]ombining two or more items or functions in a single unit." (ECF No.

– 22 –

11cv618

254-3 Ex. 19.) Defendants argue that one does not have to take a mental leap from the mark to Marketquest's services.

Given the absence of a comprehensive consumer survey in the record, the Court cannot say as a matter of law that the relevant purchasing public of Marketquest's services—distributors who engage on behalf of end companies— would or would not find that All in One "describes *some aspect* of the" service. *Fortune Dynamic, Inc*., 618 F.3d at 1034 (emphasis added); *Zobmondo Entm't, LLC*, 602 F.3d at 1116 (absence of survey precluded court from deciding how consumers would understand the mark "Would you rather . . .?"). In addition to enumerated goods classes, the '089 registration includes "dissemination of advertising matter," as a service for which the All in One mark is registered. (ECF No. 205-5 RFJN Ex. C.) The '333 registration applies to "customized imprinting of equipment, merchandise and accessories for business promotion." (205-7 RFJN Ex. E.) A reasonable jury focusing on the items aspect of the dictionary definition might conclude that Marketquest's services are descriptive because the services combine multiple items, such as pens, magnets, key chains, and the like.

In moving for summary judgment, Marketquest argues that the imagination aspects are "high" because "nothing in the phrase ALL IN ONE immediately conveys knowledge to a consumer that [Marketquest] offers customized imprinting services on the business promotion products it sells to distributors." (ECF No. 205-1 at 16.) The Court cannot agree that the imagination test requires such a high level of specificity when a mark need only describe "some aspect" to be deemed descriptive. *See Fortune Dynamic, Inc*., 618 F.3d at 1034; *Zobmondo Entm't, LLC*, 602 F.3d at 1116; *see also Sunmark, Inc. v. Ocean Spray Cranberries, Inc*., 64 F.3d 1055, 1059 (7th Cir. 1995) ("For a word or mark to be considered descriptive it merely needs to refer to a characteristic of the product."); *Sec. Ctr., Ltd. v. First Nat'l. Sec. Ctrs.*, 750 F.2d 1295, 1299 (5th Cir. 1985) ("To be descriptive, a term need only describe the essence of a business, rather than to spell out comprehensively all its adjunct

services.") (holding that "Security Center" constituted a descriptive term when used by businesses "provid[ing] secured storage facilities"). A reasonable jury might focus on the function aspect of the dictionary definition. Doing so, a jury might determine that Marketquest's services have a singular function, *i.e.*, customizable business promotion, and do not combine multiple functions in one.

Defendants also submit evidence disputing competitor need to use the phrase "all in one." On this, Defendants submit evidence that the phrase "all in one" is the name of several businesses specifically in the promotional products field. (ECF No. 310 at 17; ECF No. 254-4 Ex. 24, 24a.) On this point, Defendants' expert, Wingfield Hughes, states that sales representatives in the promotional products industry use the phrase to describe the assortment of their products. (ECF No. 310-4 Ex. 23 at 4.) Another defense expert, Bruce Silverman opines that the phrase "all in one" is a very popular brand name for many businesses across industries. (ECF No. 310-4 Ex. 25 at 10.) Based on this evidence, a reasonable jury might conclude that all in one is descriptive based on third party use. *See Miss World (U.K.) Ltd. v. Mrs. Am. Pageants Inc*., 856 F.2d 1445, 1449 (9th Cir. 1988) ("[A] mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive.' It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."); *cf. Halo Mgmt., LLC v. Interland, Inc*., 308 F. Supp. 2d 1019, 1034 (N.D. Cal. 2003) (noting that the term "halo" is a popular one in "[i]n the trademark world," thus rendering marks incorporating the term "relatively weak").

Ever "mindful that summary judgment is generally disfavored in the trademark arena," *Marketquest Grp., Inc*., 862 F.3d at 932, the Court finds that Defendants have sufficiently raised a genuine dispute of material fact. *See, e.g., Fortune Dynamic, Inc*., 618 F.3d at 1034 (determining that a genuine issue of material fact existed for whether the term "DELICIOUS" was descriptive as applied to footwear given several different dictionary meanings, any one of which a jury could rely on). Accordingly,

the Court finds that summary judgment in Marketquest's favor is inappropriate both on Count 1 as to whether it has valid and protectable All in One marks for services and as to Defendants' descriptive counterclaims against the contestable '089 and '333 registrations as to services.

**b.    A Dispute About Whether the Mark Has Secondary Meaning for Marketquest's Services Remains**

Assuming that the All in One marks are descriptive as to Marketquest's services, there is a genuine dispute about whether the marks in the '089 and '333 registrations for services have acquired secondary meaning entitling them to trademark protection.

To determine whether a descriptive mark has acquired secondary meaning, courts consider: "'(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive.'" *Yellow Cab Co. of Sacramento*., 419 F.3d at 930 (quoting *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)). "The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed towards the consumer's attitude about the mark in question: does it denote to him a single thing coming from a single source?" *Carter-Wallace, Inc. v. Procter & Gamble Co*., 434 F.2d 794, 802 (9th Cir. 1970) (internal quotation marks omitted). Generally, an expert survey of purchasers can provide the most persuasive evidence of secondary meaning. *Vision Sports, Inc. v. Melville Corp*., 888 F.2d 609, 615 (9th Cir. 1989); *Levi Strauss & Co.*, 778 F.2d at 1358.

Here, neither party has submitted survey evidence regarding secondary meaning. In the absence of such evidence and assuming a jury concludes All in One is descriptive as to services, the competing evidence the parties present may permit a reasonable jury to find that the All in One mark does or does not have secondary

meaning.[15]

Plaintiff has submitted testimony from a few distributor-customers, two trade organization executives, and Marketquest's president, Harris Cohen, to argue that All in One has acquired secondary meaning. (ECF No. 205-22 Lane Decl. Exs. A–I, I.4, N, O, AN.2, AR–AZ, BR.) At the summary judgment stage, declarations from associates of a company or its president are minimally persuasive in showing that consumers generally have formed a similar mental impression regarding the company's mark. *Japan Telecom, Inc. v. Japan Telecom Am., Inc*., 287 F.3d 866, 874 (9th Cir. 2002); *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc*., 198 F.3d 1143, 1152 (9th Cir. 1999) ("Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark."). In contrast, Defendants provide the deposition testimony of their expert, Wingfield Hughes, whose company was a customer of Marketquest but who could not recall Marketquest when referred to as "All in One." In his role as an expert, Hughes further opines that suppliers and distributors within the promotional products industry would think of "all in one" as

---

[15] Some courts have stated that the evidentiary burden upon a smaller, senior user to establish the existence of secondary meaning is deemed to be "somewhat lower" in the context of a reverse confusion case. *Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc*., 214 F.3d 432, 444 (3d Cir. 2000) (citing *Elizabeth Taylor Cosmetics Company, Inc. v. Annick Goutal*, 673 F. Supp. 1238, 1248 (S.D.N.Y. 1987)). The notion underlying this lower burden is that otherwise, "a larger company could with impunity infringe the senior mark of a smaller one." *Banff, Ltd. v. Federated Dep't Stores, Inc*., 841 F.2d 486, 491 (2d Cir. 1988). This Court finds such treatment, without limitation, unpersuasive. That a smaller, senior user claims reverse confusion should not, without more, countenance a relaxation of basic requirements to show that a mark is entitled to trademark protection. The Court finds a lower evidentiary burden would be more appropriate if there is direct or circumstantial evidence showing an intent by a junior, larger user to use the known mark of the smaller, senior user. Marketquest contends such is the case here. Should a jury agree, Marketquest may be entitled to a lower burden to show secondary meaning.

a descriptive expression.  (ECF No. 310-4 Ex. 23 at 4.)  This evidence thus controverts deposition testimony Marketquest offers from other distributor-customers.  Drawing all inferences in favor of Defendants, the Court cannot say that a reasonable jury could not find for Defendants.

Plaintiff also argues that its "extensive and exclusive use" of the mark shows secondary meaning.  (ECF No. 205-1 at 17.)  Yet, "secondary meaning requires more than extensive use alone." *Art Attacks Ink, LLC v. MGA Entm't Inc*., 581 F.3d 1138, 1146 (9th Cir. 2009).  Even on this issue, Defendants' expert Silverman opines that the phrase "all in one" is used "so broadly and generically" that it is unlikely consumers will identify it with one company.  (ECF No. 254-4 Ex. 25 at ¶25.)  He opines that "too many other businesses use the phrase for it to qualify as a mark" and provides numerous examples.  (*Id*. ¶¶25–26.)  Defendants provide evidence of their own distributor-customers in the promotional products industry who use the phrase "all in one" in their company names and who order promotional products from Norwood or BIC USA.  (ECF No. 254-4 Ex. 24 Bauer Decl. ¶14, Ex. 24a.)  Such evidence thus controverts Marketquest's claim of exclusive use.

Lastly, Defendants also question Marketquest's advertising expenditures.  A party asserting secondary meaning must demonstrate that its advertising "was 'of a nature and extent such as to create an association of the term with the user's goods.'" *Dep't of Parks & Recreation v. Bazaar del Mundo Inc*., 448 F.3d 1118, 1128 (9th Cir. 2006) (quoting *Malcolm Nicol & Co. v. Witco Corp*., 881 F.2d 1063, 1065 (Fed. Cir. 1989)).  Silverman characterizes Marketquest's yearly advertising of some $340,000 to be a "relative pittance" for a national advertiser.  Although the Marketquest's expenditures may be explained because it is merely a local supplier, drawing all inferences in favor of Defendants, the Court cannot say that a reasonable jury would not think otherwise.

Accordingly, the Court finds that summary judgment in Marketquest's favor is inappropriate on Count 1 and Defendants' descriptive counterclaims

(Counterclaims 5 and 13) against the '089 and '333 registrations for services.  If a jury finds that the All in One marks for services are descriptive, the jury would need to resolve this additional genuine factual dispute regarding whether the mark has secondary meaning.

### 2.    The All in One Marks for Goods

Although the Court has determined that genuine issues of fact remain regarding whether the All in One marks in the '089 and '333 registrations are protectable as to services, the Court finds that Marketquest is entitled to partial summary judgment on Count 1 insofar as it concerns the validity and protectability of the All in One marks for goods.  These marks include the incontestable '967 and '417 registrations and the '089 registration, which the Court finds to be functionally incontestable solely as to goods classes.  In addition, Marketquest is entitled to summary judgment on Counterclaims 5 and 6 regarding mere descriptiveness and ornamentality of the '089 registration with respect to goods classes.

### a.    Incontestable '967 and '417 Registrations for Goods

It is undisputed that Marketquest's All in One mark '967 and '417 registrations for goods are incontestable.  (ECF No. 205-1 at 2; ECF No. 254 at 11, 13; ECF No. 205-3 Ex. A ('417 registration); ECF No. 205-4 Ex. B ('967 registration).)

Under the Lanham Act, a mark may become incontestable if it is not challenged within five years of its registration.  *See* 15 U.S.C. §1065(3).  To become incontestable, Section 1065(3) requires that the registered mark be continuously used in commerce for "five consecutive years" subsequent to the date of registration and still be in use in commerce.  *Id*.  The registration of an incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark."  15 U.S.C. §1115(b).  "Once incontestability is established, only [the] . . . defenses enumerated in §1115(b) can be interposed in an action for trademark infringement."  *Sovereign Order of Saint John of Jerusalem,*

*Inc. v. Grady*, 119 F.3d 1236, 1240 (6th Cir. 1997).

Incontestable registrations may not be challenged on the ground that they are merely descriptive. *See Park 'n Fly, Inc.*, 469 U.S. at 205 ("[T]he holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive."); *Clearly Food & Beverage Co.*, 102 F. Supp. 3d at 1173 n.7 (citing *Entrepreneur Media, Inc.*, 279 F.3d at 1142 & n.3); *see also* 15 U.S.C. §1115(b) (omitting mere descriptiveness or mere ornamentality from list of permissible defenses to incontestable registrations). The absence of mere descriptive and ornamentality counterclaims to the All in One mark '967 and '417 registrations ostensibly reflects Defendants' awareness that they cannot challenge the registrations on those grounds. Defendants raise no other grounds for finding that these marks are invalid or not protectable.[16]

As a result of their incontestable nature here, the marks in the '967 and '417 registrations are "presumed to be at least descriptive with secondary meaning," regardless of whether the mark would otherwise be descriptive and regardless of its strength or weakness as a mark. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010); *see also KP Permanent Make-Up, Inc.*, 408 F.3d at 602 ("A descriptive mark that has become incontestable is conclusively presumed to have acquired secondary meaning") (citing *Entrepreneur Media, LLC*, 279 F.3d at 1142 n.3). Because no triable issues remain as to the '967 and '417 registrations for goods, the Court finds that Marketquest is entitled to partial summary judgment on Count 1 that it has valid and protectable marks with respect to these registrations.

---

[16] Although Defendants' expert, Silverman, characterizes "all in one" as used "generically" (ECF No. 254-4 Ex. 25 at ¶25), the Court will not rely on a comment in an expert report to find that a theory not pleaded anywhere in the counterclaims and not argued by Defendants provides a basis for withholding summary judgment on the incontestable registrations.

### b. The '089 Registration's Goods Classes Are Functionally Incontestable

Marketquest's All in One mark '089 registration is not itself incontestable. In Counterclaim 5, Defendants allege that the registration is invalid because it is merely descriptive, in part, as to goods, and in Counterclaim 6, Defendants allege it is merely ornamental as to goods. (ECF No. 17 at 15–16.) Marketquest moves for summary judgment on these counterclaims on the ground that the mark is "functionally incontestable" as to goods in view of the incontestable All in One '967 and '417 registrations for goods. (ECF No. 205-1 at 13–14 & n.12.) The Court agrees.

It is an "idle" act to cancel a contestable registration when the party holding it has an incontestable registration which protects "the most salient feature" of the contestable registration. *See Park 'n Fly, Inc.*, 718 F.2d at 331 n.3 (rejecting argument that a contestable service mark registration should be cancelled because its most salient feature—the words "park 'n fly"—were protected in an incontestable service mark registered earlier). Courts have extended protection against descriptiveness challenges to a mark in an incontestable registration to a contestable registration if the marks are iterations of the same mark and for the same goods or services. *See, e.g., Cottonwood Fin. Ltd. v. Cash Store Fin. Servs.*, 778 F. Supp. 2d 726, 744 n.21 (N.D. Tex. 2011) (considering "marks that lack[ed] incontestable status as functionally incontestable" when the plaintiff had "obtained incontestable status for various iterations of the mark" "Cash Store"); *Serv. Merch. Co. v. Serv. Jewelry Stores*, 737 F. Supp. 983, 999 (S.D. Tex. 1990) (noting that "[i]t would be illogical to allow Defendants to claim that the phrase SERVICE MERCHANDISE is merely descriptive with respect to the non-incontestable marks while the law conclusively presumes that the same phrase is not merely descriptive with respect to the incontestable mark.") (citing *In re American Sail Training Ass'n*, 230 U.S.P.Q. (BNA) 879 (T.T.A.B. 1986)).

Defendants oppose treating the All in One design mark ('089 registration) as

functionally incontestable. First, Defendants contend that such treatment is unavailable when the marks were never properly used in commerce. (ECF No. 254 at 13–14.) As set forth in the Court's analysis of Defendants' abandonment counterclaims herein, Defendants' argument that Marketquest has never properly used the marks in commerce fails as a matter of law. Thus, this reason carries no weight here.

Defendants further contend that the PTO does not permit an applicant to "bootstrap" incontestability from a prior registration when seeking an additional registration, pointing to a several regulations which they contend say nothing about "such bootstrapping." (*Id*. at 14.) In support of this argument, Defendants point to *In re Merrill Lynch*, *Pierce, Fenner & Smith, Inc*., 828 F.2d 1567, 1568 (Fed. Cir. 1987), in which the Federal Circuit determined that a prior incontestable registration did not entitle a registrant to seek registration of the same mark for services broader than those covered by the incontestable registration. Defendants' argument confuses the issue here, which is not about what requirements a registrant must satisfy to register a given mark with the PTO, but about whether it makes any practical sense to challenge a mark on "merely descriptive" grounds when other iterations of the *same* salient feature of the marks for the *same* goods cannot be so challenged. Here, the Court finds that doing so would be nothing more than an "idle" act.

The most salient feature of the '967, '417, and '089 registrations is the "All in One" phrase. A review of the certificates for the All in One '967 and '417 registrations shows that these incontestable registrations cover the same goods set forth in the goods classes of the '089 registration. (ECF No. 205 RFJN Exs. A–C.) Accordingly, the Court grants summary judgment to Marketquest on Counterclaim 5 as it pertains to goods classes in the '089 registration and on Counterclaim 6 in full.[17]

_____

[17] Defendants state in their opposition to Plaintiff's motion for partial summary judgment that they have "withdrawn" Counterclaim 6. (ECF No. 254 at 17 n.7.) Because Defendants have never amended their counterclaims to remove this

Further, the Court grants partial summary judgment to Marketquest on Count 1 of the FAC as it pertains to the validity and protectability of the All in One mark '089 registration as to goods classes.

### 3. The Write Choice Mark ('707 Registration)

In Affirmative Defense 21 and Counterclaims 1 and 2, Defendants allege that THE WRITE CHOICE mark is merely descriptive with no secondary meaning and its use is merely ornamental. (ECF No. 17 at 10–11.) Marketquest moves for summary judgment on the ground that Defendants have no evidence that the mark is merely descriptive or merely ornamental and that it lacks secondary meaning. (ECF No. 205-1 at 17–18.) The Court finds that a triable issue remains regarding whether the mark has acquired secondary meaning.

THE WRITE CHOICE mark is subject to a particular type of presumption given that the PTO required Marketquest to show that it acquired distinctiveness. (ECF No. 258-5 Supp. RFJN Ex. I (file wrapper for '707 registration).) When the PTO determines that a mark is descriptive, Section 1052(f) of the Lanham Act permits a party to register the mark if it has acquired distinctiveness through five years of continuous and exclusive. 15 U.S.C. §1052(f). When a mark is registered under this provision, there are two implications relevant to the Court's analysis here. First, such a registration "assumes that the mark has been shown or conceded to be merely descriptive." *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1577 (Fed. Cir. 1988); *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 393 (2d Cir. 1995). Second, such a registration creates a rebuttable presumption that the mark has secondary meaning. *See Zobmondo Entm't, LLC*, 602 F.3d at 1114 n.7 (citing *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990)); *Arrow Fastener Co., Inc.*, 59 F.3d at 393; *Church & Dwight Co. v. Mayer Laboratories,*

---

counterclaim, the Court construes Defendants' statement as a concession to summary judgment on this claim and an independent ground for granting summary judgment to Plaintiff on it.

*Inc.*, No. C-10-4429 EMC, 2012 WL 1745592, at *1 (N.D. Cal. May 16, 2012).

In view of the nature of this presumption, a party challenging the validity and protectability of a mark registered under Section 1052(f) must prove by a preponderance of the evidence that the mark has not acquired distinctiveness. *Cold War Museum, Inc. v. Cold War Air Museum, Inc*., 586 F.3d 1352, 1358 (Fed. Cir. 2009). Here, Defendants need only show that a triable issue remains.

### a.      THE WRITE CHOICE Mark is Descriptive

Both parties opine on whether THE WRITE CHOICE is "merely laudatory" or something more. (ECF No. 205-1 at 18–19; ECF No. 254 at 23.) The PTO's registration of THE WRITE CHOICE mark based on proof of secondary meaning should have rendered a "nonissue" the question whether the mark is merely descriptive. *See Yamaha Int'l Corp*., 840 F.2d at 1577. The PTO's determination that a mark is descriptive, necessitating proof of secondary meaning to be protectable, is entitled to deference. *See Zobmondo Entm't, LLC*, 602 F.3d at 1115 ("[T]he federal officials who register a mark are perceived to have some expertise in assessing if it is entitled to registration."); *Arrow Fastener Co., Inc.*, 59 F.3d at 392–93. The Court acknowledges, however, that while the PTO's determination is entitled to some consideration, it is not binding on this Court. *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc*., 57 F. Supp. 3d 1203, 1218–19 (C.D. Cal. 2014) (citing *Lahoti v. Vericheck, Inc*., 636 F.3d 501, 506 n.1 (9th Cir. 2011)); *Calmese v. McNamer*, No. 3:13-CV-01042-HU, 2014 WL 1796680, at *2 n.3 (D. Or. May 6, 2014) ("Generally, decisions of the PTO are not binding on the Court, but are entitled to consideration by the Court.") (quotations and citation omitted). The Court may thus consider whether the mark is inherently distinctive.

Marketquest contends that THE WRITE CHOICE is a "coined" phrase that should be treated as a fanciful mark, which would entitle it to greater trademark protection. (ECF No. 205-1 at 19.) The Court is not persuaded. "Fanciful marks consist of coined phrases that also have no commonly known connection with the

product at hand." *See Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 631–32 (9th Cir. 2005). Coined phrases may be considered a fanciful mark entitled to the highest degree of trademark protection, but "the mere fact that a mark consists of a coined term does not automatically render that mark fanciful." *Id.* at 632; *Interstellar Starship Servs. Ltd.*, 184 F.3d at 1111 (determining that the coined phrase "EPIX" for electronic pictures should not automatically be considered an arbitrary or fanciful mark). Here, even if the Court accepts that Marketquest coined "THE WRITE CHOICE," the Court finds that that Marketquest has not overcome the presumption that it is descriptive. Marketquest recognizes that the phrase has a "descriptive primary meaning." (ECF No. 205-1 at 19.) Indeed, the phrase, as it appears in written form, is descriptive in view of its association with "writing instruments, namely pens." (ECF No. 205-6 RFJN Ex. D.) The use of the word "write" is immediately descriptive of the mark's association with writing instruments.

In turn, Defendants' argument that the phrase is laudatory is persuasive when the phrase is taken in its auditory form. A self-laudatory term that "extol[s] some feature of attribute of the goods or services" "fall[s] into the descriptive category." 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §11:17 (5th ed. 2018). Trademark law treats laudatory marks as descriptive because "they simply describe the characteristics or quality of the goods in a condensed form." *In re Nett Designs*, *Inc*., 236 F.3d 1339, 1341 (Fed. Cir. 2001). Examples of laudatory terms include "such terms as SPEEDY, FRIENDLY, DEPENDABLE, PREFERRED, DELUXE, GOLD MEDAL, BLUE RIBBON, SUPER BUY and the like." *Rexel, Inc. v. Rexel Int'l Trading Corp*., 540 F. Supp. 2d 1154, 1165 (C.D. Cal. 2007) (citation omitted). Here, THE WRITE CHOICE sounds like "The Right Choice" in its auditory form. Evidence submitted by Plaintiff's deponents recognizes this "playoff" on the term "write." (ECF No. 205-27 Ex. C at 119:16–17.) Although Marketquest has altered how the mark appears in writing, its auditory meaning is necessarily of a laudatory nature.

That THE WRITE CHOICE is descriptive, however, does not end the issue of whether it is protectable. Even if the mark is laudatory, "laudation does not *per se* prevent a mark from being registrable" and capable of trademark protection. *In re Boston Beer Co.*, 198 F.3d 1370, 1373 (Fed. Cir. 1999) (citing *In re Bush Brothers & Co.*, 884 F.2d 569, 572 (Fed. Cir. 1989)). A descriptive mark may acquire the secondary meaning necessary to render it protectable under trademark law, which the authorities on which Defendants rely make clear. *See, e.g.*, *In re Boston Beer Co.*, 198 F.3d at 1373; *Reed v. Amoco Oil Co.*, 611 F. Supp. 9, 13 (M.D. Tenn. 1984) ("Being descriptive, the phrase must have developed a secondary meaning within the relevant market in order to be a protectable mark."). The Court turns to that issue.

### b. Whether the Mark Has Secondary Meaning Is An Issue For Trial

Neither party has submitted survey evidence regarding secondary meaning of THE WRITE CHOICE mark. In the absence of such evidence, the competing evidence the parties present may permit a reasonable jury to find that THE WRITE CHOICE mark does or does not have secondary meaning

Wisely not limiting their opposition to Marketquest's motion for partial summary judgment based on their contentions underlying their fraud counterclaim for THE WRITE CHOICE mark,[18] Defendants direct the Court to evidence regarding the mark's lack of secondary meaning.[19] Defendants' expert, Bruce Silverman,

---

[18] Defendants argue that they have rebutted the presumption that THE WRITE CHOICE mark possesses secondary meaning—or, at the very least, a triable issue of fact exists—based on the same assertions underlying their fraud counterclaim for mark's registration. (ECF No. 254 at 22.) The Court rejects this argument for the reasons set forth in the Court's conclusion herein that Marketquest is entitled to summary judgment on Defendants' fraudulent procurement counterclaim as to the '707 registration.

[19] Marketquest objects to the admissibility of two trademark search reports on which Defendants seek to rely to show third party use of THE WRITE CHOICE. (ECF No. 254-5 Exs. 28, 29 (reports).) "[I]t is well settled that a trademark search

opines that the phrase is not useful as a differentiator and may be easily forgotten by consumers. (ECF No. 254-4 Ex. 25 ¶¶47–49.) In contrast, Plaintiff submits testimony from Linda Neumann, Marvin Mittleman, and distributor-customers of Marketquest who testified that they associate the phrase "THE WRITE CHOICE" with Marketquest.[20] (ECF No. 205-23 Ex. A; ECF No. 205-27 Ex. C.) Marketquest also submits the testimony of Harris Cohen, but, as the Court has noted, such testimony is of little probative value at the summary judgment stage. *Japan Telecom, Inc.*, 287 F.3d at 874; *Filipino Yellow Pages, Inc.*, 198 F.3d at 1152.

On remand, Marketquest offers that "Plaintiff is . . . entitled to a jury determination on whether it has established secondary meaning" for THE WRITE CHOICE. (ECF No. 390 at 7 n.7.) Taking Marketquest's concession at face value along with the parties' competing evidence, the Court denies Plaintiff's motion for summary judgment as it pertains to (1) the issue of whether THE WRITE CHOICE is a valid and protectable mark in Count 3 of the FAC and (2) Affirmative Defense 21 and Counterclaims 1 and 2 concerning whether THE WRITE CHOICE is merely descriptive and/or merely ornamental without acquired distinctiveness.

––––––––––––––––––––––––

report does not constitute evidence of either the existence of the registration or the use of a mark." *See Icon Enters. Int'l v. Am. Prods. Co.*, CV 04-1240 SVW (PLAx), 2004 WL 5644805, at *31 (C.D. Cal. Oct. 7, 2004) (quoting 2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION §11:88 (4th ed. 2001).) Accordingly, the Court agrees that the trademark search reports are inadmissible as evidence to show third party use and, therefore, does not consider them here. The Court overrules all other objections to the evidence here because Marketquest raises improper challenges to the weight of the evidence, not its admissibility. (ECF No. 258 at 24–25.)

[20] Marketquest also seeks to rely on the testimony of Karen Cohen and Stephanie Mills. (ECF No. 205-1 at 18; ECF No. 227-50 Ex. AU; ECF No. 227-51 Ex. AV; ECF No. 227-53 Ex. AU.) However, this testimony discusses the reputation of Marketquest in the industry as a general matter; it does not address THE WRITE CHOICE mark. In any event, it is of little probative value at the summary judgment stage given the relationship of these two individuals with Marketquest. *Japan Telecom, Inc.*, 287 F.3d at 874; *Filipino Yellow Pages, Inc.*, 198 F.3d at 1152.

**B.      Likelihood of Confusion Regarding THE WRITE CHOICE**

The Ninth Circuit's Mandate calls on this Court to assess Marketquest's claim of trademark infringement and, consequently, whether a fair use defense is applicable in this case.  The decision expressly states that "we remand this case for *the district court* to consider Marketquest's trademark infringement claim regarding Defendants' use of 'The Write Choice.'"  *Marketquest Grp., Inc.*, 862 F.3d at 939 (emphasis added).  The Ninth Circuit determined that this Court erred by undertaking a fair use analysis after both finding that "no evidence of actual or potential confusion" existed regarding Defendants' use of THE WRITE CHOICE and failing to conduct a *Sleekcraft* likelihood of confusion assessment.  The Ninth Circuit clarified that the fair use defense "only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely." *Id.* [21]  "This is because if there is no likelihood of consumer confusion, then there is no trademark infringement, making an affirmative defense to trademark infringement irrelevant." *Id.* at 937–38 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004)).  Because this Court has never conducted a likelihood of confusion analysis regarding THE WRITE CHOICE, the Court conducts such an analysis now in view of the express language of the Mandate.

---

[21] The language from this Court's fair use summary judgment order could be read narrowly to refer solely to one factor of the *Sleekcraft* analysis, *i.e.*, actual confusion, which the record supports.  BIC USA moved for partial summary judgment as to that factor.  (ECF No. 215 at 20 ("BIC requests partial summary judgment on the element of actual confusion of Marketquest's infringement and unfair competition claims.")  Marketquest in turn "concede[d] that it has no documented evidence of distributors contacting [Marketquest] because of Defendants' use of THE WRITE CHOICE . . ." (ECF No. 258 at 35.)  A broader reading of the Court's language, however, equates it with the overarching issue of likelihood of confusion at issue in every trademark infringement case.  The Ninth Circuit appears to have adopted the broader reading in its Mandate and it is that reading which guides this Court on remand.

### 1.    Application of the *Sleekcraft* Factors

In the Ninth Circuit, the test for likelihood of confusion turns on the eight *Sleekcraft* factors: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) likelihood of expansion. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The factors are not rigidly weighed, but rather guide the court in assessing likelihood of confusion. *Id.*; *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (1992). "[T]he presence or absence of a particular factor does not necessarily drive the determination of confusion." *E. & J. Gallo Winery*, 967 F.2d at 1290.

Neither party expressly briefed the issue of likelihood of confusion in the 2014 summary judgment briefing. However, certain arguments and evidence presented with the briefing permits the Court to undertake the *Sleekcraft* analysis now. The Court is additionally aided by certain analysis in the preliminary injunction order's *Sleekcraft* analysis of the All in One marks, which would apply equally to THE WRITE CHOICE mark. In addition, Marketquest has briefed the *Sleekcraft* factors in the joint status report submitted by the parties on remand. (ECF No. 388 at 6–7.) That briefing concedes that "the jury must decide whether a likelihood of confusion exists at to 'THE WRITE CHOICE.'" (*Id.* at 8.) With Marketquest's concession in mind, the Court agrees that the *Sleekcraft* factors, when applied to the evidence in the record, show that there are triable factual issues regarding the likelihood of confusion concerning THE WRITE CHOICE mark. Because triable issues remain, Defendants are not precluded from raising the fair use defense.

### a.    Strength of the Mark

A mark's strength is a key factor in the likelihood of confusion analysis because it determines the scope of protection to which the mark is entitled. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017);

*Entrepreneur Media*, 279 F.3d at 1141. Strength is evaluated in terms of its conceptual strength and commercial strength. *See Stone Creek, Inc.*, 875 F.3d at 432–33; *GoTo.com*, 202 F.3d at 1207.

The conceptual strength analysis places the mark on the spectrum of distinctiveness, *i.e.* whether it is: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *See Entrepreneur Media*, 279 F.3d at 1141; *E. & J. Gallo*, 967 F.2d at 1291 ("The strength of a mark is determined by its placement on a continuum of marks."). The strongest marks are those that are arbitrary or fanciful, whereas the weakest marks are generic. *See Entrepreneur Media*, 279 F.3d at 1141. As between suggestive and descriptive marks, suggestive marks have the greater strength. *Id.* "The more distinctive a mark, the greater its conceptual strength." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). Here, the Court has already determined that THE WRITE CHOICE is descriptive, particularly in light of the PTO's requirement that Marketquest submit proof of secondary meaning and the Court's own analysis of the mark. The conceptual strength of THE WRITE CHOICE mark thus turns on whether it has attained secondary meaning. *See Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1047; *Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. CIV. S-01-1771 LKK/PAN, 2002 WL 570681, at *7 (E.D. Cal. Mar. 20, 2002). Because the Court has determined that triable issues of fact remain regarding whether THE WRITE CHOICE mark has acquired secondary meaning, there are in turn triable issues as to this *Sleekcraft* factor.[22]

### b. Proximity or Relatedness of the Goods

"[T]he use of similar marks to offer similar products weighs heavily in favor

---

[22] As to commercial strength, commercial strength may be demonstrated by commercial success, extensive advertising, length of exclusive use, and public recognition. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081 (9th Cir. 2005); *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1303 (D. Or. 2009). The Court declines to address this aspect of the strength inquiry given that triable issues remain as to the conceptual strength of THE WRITE CHOICE.

of likelihood of confusion." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1056. When goods are related, "the danger present is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. Here, the relevant goods for Marketquest's THE WRITE CHOICE mark are "writing instruments, namely pens." (ECF No. 205-6 RFJN Ex. D.) It is undisputed that Defendants' alleged infringing uses are associated with pens. (*See, e.g.*, ECF No. 216-4 Ex. 1; ECF No. 258 at 8–9.) Because the parties' goods are identical, this factor weighs in favor of Marketquest.

### c.      Similarity of Sight, Sound and Meaning

The degree of the similarity of the marks is the "critical" question in the likelihood of confusion analysis. *See GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Id*. at 1206. Marks must be considered in their entirety in terms of appearance, sound and meaning. *Id*.; *Entrepreneur Media, Inc.*, 279 F.3d at 1144. It is the 'combination of features as a whole rather than a difference in some of the details . . . [which] determine whether the competing product is likely to cause confusion in the minds of the public.'" *Perfect Fit Indus., Inc. v. Acme Quilting Co*., 618 F.2d 950, 954 (2d Cir. 1980) (citations omitted). "[S]imilarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features." *Exxon Corp. v. Texas Motor Exch., Inc*., 628 F.2d 500, 505 (5th Cir. 1980); *Playmakers, LLC v. ESPN, Inc*., 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd by*, 376 F.3d 894 (9th Cir. 2004) (same). "Similarities weigh more heavily than differences." *See GoTo.com, Inc.*, 202 F.3d at 1206. Yet, "[d]ifferent packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 997 (C.D. Cal. 2002). The Court finds that triable issues of fact remain regarding this factor.

To frame the Court's analysis of this factor, examples of Marketquest's uses of THE WRITE CHOICE include:

 

(ECF No. 205-14 Ex. C.4 (left); ECF No. 258-77 Ex. CV (right).)

The record reveals variations of the following use by Defendants (ECF No. 215-4 Ex. 1):



In its motion for summary judgment on the fair use defense, BIC USA highlights certain elements of its use, including that its advertisements featured the registered word mark "BIC," the BIC design mark, ROUND STIC®, and the "BIC boy" design along with the phrase. (ECF No. 215 at 9.) BIC USA also highlights

– 41 –

11cv618

the absence of a trademark designation near the "The Write Pen Choice" phrase. A likelihood of confusion may be mitigated when "the name of the company invariably accompanied the [trademarked] slogan." *Cohn v. Petsmart, Inc*., 281 F.3d 837, 842 (9th Cir. 2002) (quoting *Norm Thompson Outfitters, Inc. v. General Motors Corp*., 448 F.2d 1293, 1298 (9th Cir. 1971)). These several visual differences which BIC USA identifies may be ones on which a reasonable jury could rely to find that Defendants' use of the "The Write Pen Choice" is dissimilar from Marketquest's THE WRITE CHOICE. The weight to be accorded to these differences is best left to a jury. *See Americana Trading Inc. v. Russ Berrie & Co*., 966 F.2d 1284, 1288 (9th Cir. 1992) (the role of prominence of house trademark in confusion determination is a jury question).

In contrast, Marketquest avers that Defendants' advertisements, despite some differences, highlight the most salient feature of THE WRITE CHOICE mark, thus making the uses confusingly similar. Marketquest points out that "The WRITE Pen Choice" appears near the top of the page and is sometimes larger and featured more prominently than "BIC." (ECF No. 258-1 at 8.) Marketquest underscores that the term "write" typically appears in all caps in the same font as "Round Stic" and the phrase "Write Pen Choice" is normally in bold "BIC yellow" font, with the phrase "for 30 years!" in a lighter or different color, thus emphasizing the beginning portion of the phrase. (*Id*.) Marketquest thus contends that "The WRITE Pen Choice" is the salient feature intended to draw the attention of the distributors to whom the promotions were directed. (*Id.* at 9.)

The lack of virtually identical uses does not preclude a finding of similarity and likelihood of confusion. *See, e.g., Adidas Am., Inc. v. Payless Shoesource, Inc*., 546 F. Supp. 2d 1029, 1053 (D. Or. 2008) (alleged infringer of adidas mark could not avoid liability by adding or subtracting identical, paralegal strip to adidas' Three-Stripe mark); *Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J. 1940) (noting that "few would be stupid enough to make exact copies of another's mark or

– 42 –

symbol."). The fact that Defendants used the phrase "The WRITE Pen Choice" rather than "THE WRITE CHOICE" would not itself preclude a finding of similarity. A transposition or reorganization of the elements of a mark does not create sufficient dissimilarity to preclude confusion. *See e.g., Perfumebay.com, Inc. v. eBay Inc*., 506 F. 3d 1165, 1174 (9th Cir. 2007) (finding "Perfumebay.com" and "eBay.com" to be similar); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 234 (5th Cir. 2009) (finding a similarity between the marks EXTEND YOUR BEAUTY and XTENDED BEAUTY); *In Re Wine Soc'y of Am. Inc*., 12 U.S.P.Q. 2d (BNA) 1139 (T.T.A.B. 1989) ("American Wine Society 1967" and "The Wine Society of America" confusingly similar). A reasonable jury could agree with Marketquest that despite the differences between Marketquest's and Defendants' uses, the overall impression created is confusingly similar. *See, e.g., GoTo.com, Inc*., 202 F.3d at 1206 (finding actionable similarity despite use of different colors in logo); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (actionable similarity between "Century Investments & Realty" and "Century 21"); *Saks & Co. v. Hill*, 843 F. Supp. 620, 622 (S.D. Cal. 1993) ("Saks Thrift Avenue" likely to be confused with "Saks Fifth Avenue"); *Nabisco Brands, Inc. v. Kaye*, 760 F. Supp. 25, 27 (D. Conn. 1991) ("A2" steak sauce likely to be confused with "A1" steak sauce). Based on the foregoing, the Court concludes that a triable issue remains regarding the similarity of the marks factor.

### d.     Evidence of Actual Confusion

While evidence of actual confusion provides strong support for a finding of a likelihood of confusion, actual confusion is not necessary to show a likelihood of confusion. *Am. Int'l Grp., Inc., v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991); *Century 21 Real Estate Corp.*, 846 F.2d at 1178; *Sleekcraft*, 599 F.2d at 353. Moreover, the lack of evidence of actual confusion "neither helps nor hurts" when the alleged infringer's product has been on the market for a relatively short time. *Hasbro Inc. v. Lanard Toys, Inc*., 858 F.2d 70, 78 (2d Cir. 1988). In its now reversed

summary judgment order, the Court found that there is no evidence of actual confusion. *See Marketquest Grp., Inc.*, 2015 WL 1757766, at *5. Although the Court stands by that prior determination, it is not noteworthy in the *Sleekcraft* analysis here. *See Calista Enters.*, 43 F. Supp. 3d at 1127 (stating that "[g]iven the difficulty in proving actual confusion, the absence of such evidence is not noteworthy"). Accordingly, the Court finds that this factor is neutral.

### e.   Marketing Channels

"A consideration of how and to whom the respective goods of the parties are sold is relevant to the issue of likelihood of confusion." *Adidas Am., Inc.*, 546 F. Supp. 2d at 1055. "Convergent marketing channels increase the likelihood of confusion." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993); *see also Network Automation, Inc.*, 638 F.3d at 1151. However, "this factor becomes less important when the marketing channel is less obscure." *Network Automation, Inc.*, 638 F.3d at 1151. For example, "the shared use of a ubiquitous marketing channel," such as the internet, "does not shed much light on the likelihood of consumer confusion." *Id.*; *Playboy Enters. v. Netscape Commc'ns. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight."). The preliminary injunction order found that this factor favors Marketquest because the parties utilize similar marketing channels, including the Internet, printed catalogs, and trade shows. (ECF No. 41 at 17.) The Court finds no reason to depart from that conclusion here, which is supported by the summary judgment record.

### f.   Intent

A party claiming trademark infringement need not prove intent to deceive because intent is not a necessary element of trademark infringement. *Official Airline Guides, Inc.*, 6 F.3d 1394 (citing *Rodeo Collection, Ltd.*, 812 F.2d at 1219). Accordingly, the Ninth Circuit has "emphasized the minimal importance of the intent factor" in the likelihood of confusion analysis. *GoTo.com, Inc.*, 202 F.3d at 1208

(declining to consider this factor). However, the intent factor may be "relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059 (citing *Sleekcraft*, 599 F.2d at 348 n.10). "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059; *see also Stone Creek, Inc.*, 875 F.3d at 434 ("[C]hoosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive."); *Network Automation, Inc.*, 638 F.3d at 1153.

Marketquest and Defendants dispute Defendants' intent to infringe THE WRITE CHOICE mark. Defendants assert that they had no intention to induce confusion by using the phrase "The WRITE Pen Choice for 30 years!" (ECF No. 215-2 ¶9.) Defendants contend that because BIC is one of most well-known suppliers in the promotional products industry, they had no need to associate themselves with Plaintiff. (*Id.*; *see also* ECF No. 215-6 Ex. 3 (showing Norwood as number 3 supplier in 2007 and 2008.) In contrast, Marketquest asserts that Defendants intended to adopt Marketquest's marks because they were aware of the mark's existence, yet still chose to use both marks at the same time. (ECF No. 258-1 at 3–4.) Marketquest has never pointed to any particularized evidence regarding Defendants' knowledge of THE WRITE CHOICE mark. Marketquest instead bootstraps its allegations regarding THE WRITE CHOICE mark based on its evidence concerning Defendants' purported knowledge of the All in One marks. (ECF No. 205-53 Ex. N; ECF No. 205-54 Ex. O; ECF No. 205-57 Ex. P; ECF No. 205-61 Ex. Q.)

The Court cannot agree that Marketquest may simply rely on evidence concerning knowledge of a different mark to show Defendants' knowledge of THE WRITE CHOICE. However, the Court finds instructive the Ninth Circuit's Mandate that the issue of intent is one best left to a jury. Although the Ninth Circuit

acknowledged Marketquest's and Defendants' competing visions of what evidence is relevant to intent, it also stated that "no one type of evidence is required to establish intent," even in a reverse confusion case. *Marketquest Grp., Inc.*, 862 F.3d at 934–35. Although the intent factor is of little importance in the *Sleekcraft* analysis when it does not bear upon likelihood of confusion, *see Brookfield Commc'ns, Inc.*, 174 F.3d at 1059, the Court cannot say that no reasonable jury could find the competing evidence presented by the parties a relevant consideration in assessing Defendants' alleged conduct.

### g.     Type of Goods and Purchaser Care

"Low consumer care . . . increases the likelihood of confusion." *Playboy Enters.*, 354 F.3d at 1028. The degree of care likely to be exercised by purchasers of the products at issue is based on the standard of a "reasonably prudent consumer." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059 (citing *Dreamwerks Production Grp.*, 142 F.3d at 1129). The degree of consumer care can be proven by survey evidence, expert testimony, or inference. *See, e.g., Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 387–88 (2d Cir. 2005).

Courts focus on the cost of the goods and the sophistication of the purchaser to determine degree of care, both of which may be related. "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Sleekcraft*, 599 F.2d at 353 (citations omitted); *see also Official Airline Guides, Inc.*, 6 F.3d at 1393; *Accuride Int'l Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989). In contrast, confusion is more likely when the goods at issue are relatively inexpensive products to which the consumer does not devote a great deal of care when purchasing. *See E.J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457, 465 (N.D. Cal. 1991). Less sophisticated consumers are considered more likely to be confused by similarities among products, notwithstanding any differences

among the products. *See Consolidated Cigar Corp. v. Monte Christi de Tabacos*, 58 F. Supp. 2d 188, 199 (S.D.N.Y. 1999).

Here, while the relevant products appear to be inexpensive individually, the records shows that they are purchased in bulk. Plaintiff's retained expert, John Burnett, noted that the parties have "relatively inexpensive, non-technical products," (ECF No. 312-19 Ex. BV at 35.) Inexpensive products, even when purchased in bulk, may not call upon a consumer to exercise much care. *See ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 448 (8th Cir. 2018). This would point to a lower degree of care.

However, the record also reveals that the degree of sophistication of the relevant consumers, *i.e.* promotional products distributors, is an open issue. Based on evidence submitted by Defendants and without any evidence from Marketquest, the preliminary injunction order determined that "the average customer is highly sophisticated" and that the factor weighed "slightly in favor of BIC." (ECF No. 41 at 19.) With evidence from Marketquest, the summary judgment record now shows that the pool of distributors consists of some 75% to 80% of "mom-and-pop distributors," *i.e.* small entrepreneurs who own their companies and act as sales persons for their companies. (ECF No. 311-14 Ex. F.4 at 36:4–37:18.) The remainder consists of larger, institutional distributors. (*Id.*) Plaintiff's non-retained expert, Linda Neumann, testified that the majority of distributors in the promotional products industry are unsophisticated. (ECF No. 311-9 Ex. B.4 at 142:5–144:18.) Plaintiff's retained expert, John Burnett, opined that while the "degree of care may be quite uneven" amongst the pool of distributors, "the smaller the size of the distributor, the less care given when reviewing marketing materials and making a decision." (ECF No. 312-19 Ex. BV at 35.) While Plaintiff's evidence suggests that a segment of distributors exercise a lower degree of care, the evidence is not conclusive on this.

The Court finds that triable issues of fact remain regarding the degree of care exercised by distributors in light of the evidence regarding costs and purchaser

sophistication.  A reasonable factfinder might or might not find this factor weighs in favor of Marketquest.

### h. Likelihood of Expansion of Products

While Defendants contend that BIC has steadily expanded over the years (ECF No. 215-2 Bauer Decl. ¶2), neither party offers clear evidence on this factor.  This factor, however, is "irrelevant" when the parties' goods "are already related." *Playboy Enters., Inc*., 354 F.3d at 1029; *Brookfield Commc'ns, Inc*., 174 F.3d at 1060.  Because that is the case here, the Court finds the factor to be neutral and affords it little weight.

### 2. Result of *Sleekcraft* Analysis

Based on the foregoing, the Court finds that triable issues remain as to the likelihood of confusion resulting from Defendants' alleged use of THE WRITE CHOICE mark with respect to four *Sleekcraft* factors, including the two most critical factors of strength of THE WRITE CHOICE mark and the similarity of the uses.  As such, Defendants are not precluded from raising the fair use defense at trial.

### C. Fraudulent Procurement of the Registrations for the Marks

In Affirmative Defense 15 and Counterclaims 4, 8, 10, and 12[23], Defendants assert the registrations for Marketquest's marks are invalid based on fraudulent procurement.  (ECF No. 17.)  Marketquest seeks summary judgment on each of these and BIC Corp. seeks summary judgment on Counterclaim 4 as to fraud in procuring THE WRITE CHOICE registration.  (ECF No. 205-1 at 9–11; ECF No. 216-1 at 22–24.)  Although BIC Corp. does not separately move for summary judgment on Counterclaim 8, it also opposes Marketquest's motion for summary judgment with reference to it.  (ECF No. 254 at 4–6.)  The Court finds that Marketquest is entitled

---

[23] The counterclaims pertain to the registrations as follows: Counterclaim 4 (THE WRITE CHOICE mark '707 registration); Counterclaim 8 (All in One mark '089 registration); Counterclaim 10 (All in One mark '967 registration); and Counterclaim 12 (All in One mark '417 registration).

to summary judgment.

"A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. §1064[3] by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (citing *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988)). The "burden of proving that a party fraudulently procured a trademark registration is heavy," and "must be shown by clear and convincing evidence."[24] *Robi*, 918 F.2d at 1444; *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 778 F. Supp. 2d 1052, 1061 (C.D. Cal. 2011); *see also Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved *against the charging party*." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (emphasis added). To preclude summary judgment, the nonmoving party "must raise a genuine issue of material fact as to each of the elements" of the claim. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *Moroccanoil, Inc.*, 57 F. Supp. 3d at 1230.

In assessing charges of fraud, courts must recognize that "[m]ost of a user's substantive trademark rights derive from the use of the mark, not registration" of it. *Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*, No. 3:06-CV-232-ECR-RAM, 2009 WL 5066908, at *14 (D. Nev. Dec. 14, 2009) (citing *In re Bose Corp.*, 580 F.3d

---

[24] The heavy burden Defendants face on their fraud counterclaims stems in part from the fact that "a charge of fraud in the procurement of a trademark registration is a disfavored defense." *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1149 & n.12 (C.D. Cal. 2000) (citing *Robi*, 918 F.2d at 1444; MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §31:68; *see also Aveda Corp. v. Evita Marketing, Inc.*, 706 F. Supp. 1419, 1425 (D. Minn. 1989) ("The courts and the trademark board both view charges of fraud in the registration of a trademark as a disfavored defense.").

at 1247); *see also Harod v. Sage Prods.*, 188 F. Supp. 2d 1369, 1375 (S.D. Ga. 2002) (citing *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991)) ("Registration does not actually confer ownership rights in the mark. Instead, trademark ownership accrues with use."). For this reason, "[t]here does not exist in trademark cases the fundamental reason for being on the alert to find fraud on the [PTO] which exists in patent cases" because "the right to exclude others from the use of a trademark results from the fact of use and the common law, independently of registration in the [PTO]." *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 888 (C.C.P.A. 1969); *see also Specialized Seating, Inc. v. Greenwich Indus.*, LP, 6161 F.3d 722, 728 (7th Cir. 2010) ("All a finding of fraud does is knock out the mark's 'incontestable' status, and its registration . . . .[i]t does not affect the mark's validity, because a mark need not be registered to be enforceable.").[25] Thus, "assertions of fraud should be dealt with realistically, comprehending . . . that trademark rights . . . continue notwithstanding cancellation" of a registration. *Morehouse Mfg. Corp.*, 407 F.2d at 888; *Kerzner Int'l Ltd.*, 2009 WL 5066908, at *14. With these principles in mind, the Court turns to the counterclaims' merits.

### 1.  THE WRITE CHOICE Mark ('707 Registration)

#### a.  Allegedly Knowingly False Representations

Defendants charge fraud in the procurement of THE WRITE CHOICE mark registration based on three allegedly false representations by Marketquest: (1) the submission of false specimens showing the mark placed on certain goods in its initial

---

[25] It is for this reason that the pursuit of a charge of fraudulent procurement may be one with little reward. *See eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1148 n.11 (C.D. Cal. 2000); 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §31:60 (5th ed. 2018) ("It is difficult to understand why defendants in many trademark infringement suits expend so much time, effort and money in vigorously pursuing the claim that plaintiff's federal registration was obtained by fraud. It has been held several times that even if defendant succeeds in proving that the plaintiff's registration was fraudulently obtained, plaintiff's common law rights in the mark continue unabated . . .").

March 29, 2005 application; (2) Harris Cohen's declaration submitted with the initial application, which stated that the goods were first used in commerce as early as January 1, 2000; and (3) after the PTO's initial rejection of the mark as "merely ornamental" based on the specimens submitted, Cohen's supplemental declaration that the mark was distinctive based on substantially exclusive and continuous use, in BIC Corp.'s phrasing, "on the applicant's goods" in the five years preceding the application.  (ECF No. 216-1 at 28–29.)

Defendants contend that the specimens, which were expressly referred to as "digitally photographed" in the application submitted to the PTO, "are obviously not genuine to the naked eye."  (ECF No. 216-1 at 23.)  Defendants contend that the specimens and Cohen's declarations are false because Marketquest has never produced in discovery the goods depicted in the specimens.  The problem with both assertions at the summary judgment stage is that it is *Defendants' burden* to provide evidence sufficient to show falsity by clear and convincing evidence, not that of Marketquest to disprove Defendants' allegations of fraud.[26]  *See, e.g., Anhing Corp. v. Thuan Phong Co.*, 215 F. Supp. 919, 938 (C.D. Cal. 2015) ("Although Defendant maintains that Plaintiff has not produced evidence to support or verify Mr. Ly's statements [to the PTO], this argument is unpersuasive, as it is Defendant's burden to produce clear and convincing evidence of fraud."); *Learning Internet v. Learn.com, Inc*., No. CV 07-227-AC, 2009 WL 6059550, at *6 (D. Or. Nov. 25, 2009) (party claiming falsity of acquired distinctiveness declaration must show that the mark had not been in continuous use for five years).  At the summary judgment stage, Defendants cannot rest their charges of falsity on allegations in their Answer or assertions by counsel in legal memoranda and thus their claims of falsity falter.

---

[26] Defendants also contend that the appearance of the mark without any stylization or particular font shows why it is false.  However, the application itself expressly states that "the mark consists of standard characters, *without claim to any particular font, style, size, or color*."  (ECF No. 258-5 at 3, 4 (emphasis added).)

*See S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 690 F.2d at 1238 ("a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda").

Defendants also point to the deposition testimony of Stephanie Mills, Marketquest's Rule 30(b)(6) deponent and Director of Operations who stated that "from the time I've been with the company, I wouldn't allow a sample to go out that only said 'The Write Choice' trademark." (ECF No. 310 at 3–4; ECF No. 310-1 Amato Decl. Ex. 4 at 244:19–248:12.) This testimony, however, has no connection to whether Harris Cohen knowingly made a false representation at the time of the application. "The question is not whether the statement is factually false, but whether *the applicant* subjectively believed it was false at the time he or she made the representation." *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 967 (D. Nev. 2010) (citing *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995)) (emphasis added). Accordingly, Defendants' counterclaim fails on the threshold element of false representations, and the related element of the applicant's knowledge or subjective belief of falsity.

### b. Intent to Deceive

Even if Defendants had provided sufficient evidence of knowingly false representations, they fail to produce evidence of intent to deceive or sufficient evidence from which such an intent may be inferred by a reasonable jury. "'[A]bsent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation.'" *Spin Master, Ltd.*, 778 F. Supp. 2d at 1061 (quoting *In re Bose Corp.,* 580 F.3d at 1244). "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *In re Bose Corp.*, 580 F.3d at 1245; *Anhing Corp.*, 215 F. Supp. 3d 919, 936–37 (C.D. Cal. 2015). "[W]hen drawing an inference of

intent, 'the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive.'" *Spin Master, Ltd.*, 778 F. Supp. 2d at 1061. "[D]eception must be willful," and any "[m]ere negligence is not sufficient to infer fraud or dishonesty." *In re Bose Corp.,* 580 F.3d at 1244; *Spin Master, Ltd.*, 778 F. Supp. 2d at 1061.

Defendants do not produce direct evidence of an intent to defraud the PTO with respect to either the specimens or Cohen's declarations. Defendants rely on Marketquest's alleged failure to produce the goods in the specimens to assert that Cohen knew that Marketquest did not distribute such goods, which purportedly gives rise to an inference of fraudulent intent. As the Court has already determined, Plaintiff's purported production failure does nothing to assist Defendants in meeting *their* clear and convincing burden. Moreover, because falsity is not the same as fraudulent intent, Defendants cannot simply rely on a charge of falsity to prove intent by clear and convincing evidence. *See Spin Master, Ltd.*, 778 F. Supp. 2d at 1061

Defendants fare no better with respect to Cohen's declarations. Because oaths and declarations submitted in connection with a trademark registration are "phrased in terms of a subjective belief," it is "extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief." *Woodstock's Enters., Inc. (Cal.) v. Woodstock's Enters., Inc*. *(Or.)*, 43 U.S.P.Q. 2d (BNA) 1440, 1444 (T.T.A.B. 1997). Although Defendants point to Cohen's February 2012 deposition testimony that he could not recall submitting the declarations (ECF No. 310-1 Amato Decl. Ex. 3 at 149:17), this cannot create a triable issue of fact on whether he intended to defraud the PTO at the time he submitted the declarations in view of the clear and convincing evidentiary standard.

To the extent Defendants claim that fraudulent intent can be inferred simply because Cohen provided a declaration of acquired distinctiveness to the PTO, the Court rejects this notion as a matter of law. When an applicant makes a claim of acquired distinctiveness to the PTO, the PTO may accept "proof of substantially

exclusive and continuous use" of the mark by the applicant "for the five years before the date on which the claim of distinctiveness is made . . . as prima facie evidence that the mark has become distinctive." 15 U.S.C. §1052(f); *Learning Internet*, 2009 WL 6059550, at *6. Such distinctiveness must relate to the goods or services specified in the application. *Learning Internet*, 2009 WL 6059550, at *6 (citing Trademark Manual of Examining Procedure (hereinafter "T.M.E.P.") §1212.05(d)(6)). As Marketquest observes, its response to the PTO's initial rejection of the application for THE WRITE CHOICE was based on the very items the PTO expressly indicated could be used to make a showing sufficient for approval. (ECF No. 258-5 Ex. I at 19.) The Court will not infer fraudulent intent from a registrant's mere filing of a PTO-sanctioned declaration of acquired distinctiveness. Defendants provide no evidence showing, or from which a reasonable inference may be drawn, that Cohen's statements in the supplemental declaration was anything other than a proper response to the PTO's request.

Based on the factual record here, the Court finds that Defendants cannot carry their burden at trial to show by clear and convincing evidence that Marketquest fraudulently procured the '707 registration.[27] Marketquest is entitled to summary judgment on Counterclaim 4.

## 2. The All in One Design Mark ('089 Registration)

Referring to their charges of fraud for THE WRITE CHOICE registration, Defendants contend that "similar suspicious specimens were submitted with the registration application filed with the PTO [on] March 24, 2005" for the All in One design mark in the '089 registration (ECF No. 254 at 4–5.) As with the fraud charge

---

[27] The record also shows that on February 2011, Defendants' counsel filed a petition to cancel THE WRITE CHOICE mark based, *inter alia*, on fraud in the initial March 2005 application, with allegations that Marketquest had not used the mark for goods, but only as a promotional tool for services. (ECF No. 258-52 Ex. M.) Notwithstanding that petition, the PTO renewed the registration for the mark a year later. (ECF No. 258-4 Ex. H.)

against THE WRITE CHOICE registration, Defendants' assertions of falsity are unsupported and fail to show that a genuine dispute remains for trial.

First, Defendants' assertion in their opposing papers of falsity "obvious to the naked eye" of the specimens submitted with the application is devoid of the evidentiary basis necessary to withstand summary judgment. *See S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 690 F.2d at 1238. Even assuming that it is proper for the Court to undertake a "naked eye" test here, the specimens submitted with the '089 registration bear no similarity to those in the '707 registration aside from the fact that they contain similar items (*e.g.*, magnets, key chains, *etc.*). Second, Stephanie Mills' testimony that samples leaving Marketquest at least contain an ASI number or part number cannot be used to show falsity of the specimens because several in fact contain an ASI number. (*Compare* ECF No. 310-1 Amato Decl. ¶6 Ex. 4 at 249:11–250:24 *with* ECF No. 254-1 Amato Decl. ¶6 Ex. 5 at 157–161 ('089 specimens).)

Even assuming Defendants could identify any false representations here, they fail to provide any evidence showing that the representations were intentionally made to deceive the PTO in connection with the All in One '089 registration, nor do they brief these issues. On the factual record here, the Court finds that Defendants cannot carry their burden at trial to show by clear and convincing evidence that Plaintiff fraudulently procured the '089 registration. Marketquest is entitled to summary judgment on Counterclaim 8.

### 3. Remaining Fraud Counterclaims and Affirmative Defense

Defendants' remaining fraudulent procurement counterclaims concern the All in One marks in the '967 and '417 registrations. Defendants fail to oppose Plaintiff's motion on these counterclaims. In the absence of any evidentiary basis beyond Defendants' bare allegations of fraud in the Answer and Defendants' apparent abandonment of such allegations here, Plaintiff's registered marks remain entitled to the presumption of the validity, insofar as the fraud charges are concerned. 15 U.S.C.

§§1057(b); 1115(a).   The Court grants summary judgment to Plaintiff on Counterclaims 10 and 12.  Because Plaintiff is entitled to summary judgment on all of Defendants' fraud counterclaims, Plaintiff is entitled to summary judgment on Affirmative Defense 15.

### D.   Abandonment of the Marks

In Affirmative Defense 16 and Counterclaims 3, 7, 9, and 11[28], Defendants assert that Marketquest's mark registrations are invalid based on abandonment.  Both parties seek summary judgment on abandonment and the bulk of the cross-motions are directed to this issue.  (ECF No. 205-1 at 11–13; ECF No. 216-1 at 1–22.)  BIC Corp. methodically argues that each of Marketquest's identifiable uses of the marks did not constitute use in commerce at the time the registrations were filed, nor for the three-year period preceding its cross-motion for summary judgment.  Dressing its challenge in the label of abandonment, BIC Corp. also asserts that Marketquest's mark registrations for goods are void *ab initio* because the applications for the marks were not supported by specimens showing actual use of the goods in commerce. (ECF No. 216-1 at 3, 7, 21–22.)  Marketquest argues that each use identified by BIC Corp. constitutes a use in commerce under the law and, therefore, it did not abandon the marks and the corresponding registrations are not void *ab initio*.  The Court finds that Marketquest is entitled to summary judgment.

Section 1127 of the Lanham Act deems a mark to be abandoned when: (1) "its use has been discontinued with the intent not to resume such use" or (2) "any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services or in connection with which it is used to otherwise to lose its significance as a mark."  15 U.S.C. §1127.

---

[28] The counterclaims pertain to the registrations as follows: Counterclaim 3 (THE WRITE CHOICE mark '707 registration); Counterclaim 7 (All in One mark '089 registration); Counterclaim 9 (All in One mark '967 registration); and Counterclaim 11 (All in One mark '417 registration).

– 56 –

Defendants assert abandonment by non-use. To prevail, Defendants must show (1) nonuse of the mark and (2) intent not to resume its use. *Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1095 (N.D. Cal. 2004).

Because abandonment of a trademark is "in the nature of forfeiture, [it] must be strictly proved." *FreecycleSunnyvale*, 626 F.3d at 515; *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1983). The Ninth Circuit has yet to determine whether the "strictly proved" standard means "clear and convincing evidence" or "preponderance of the evidence." *See FreecycleSunnyvale*, 626 F.3d at 515 (finding that abandonment theory would fail under either standard); *compare Grocery Outlet Inc. v. Albertson's Inc*., 497 F.3d 949, 952 (9th Cir. 2007) (Wallace, J., concurring) ("In my view, meeting a strict burden requires proof by clear and convincing evidence.") *with id.* at 953–54 (McKeown, J., concurring) ("In my view, the language of 15 U.S.C. §1127 does not support an elevated standard of 'clear and convincing.' The statute does not impose a burden beyond the traditional preponderance of the evidence standard applicable in civil matters."). The Ninth Circuit has avoided deciding the issue. *See FreecycleSunnyvale*, 626 F.3d at 515 (finding no need to decide which standard applies because even applying higher standard of proof, abandonment was shown); *Grocery Outlet, Inc*., 497 F.3d at 951 ("Although the parties disagree as to the standard of proof applicable to the defense of abandonment, Grocery waived its challenge on this point by adopting the clear and convincing standard in its briefing in the district court."); *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc*., 458 F.3d 935 n.2 936 (9th Cir. 2006) ("We do not need to flesh out the contours of the 'strict proof' standard because our resolution of this summary judgment appeal rests on the proper legal construction of §1127 and the determination that factual issues preclude summary judgment in favor of PPI.").

Here, the parties naturally adopt the evidentiary standard that is most favorable to their positions from a hypothetical perspective. Whereas Marketquest contends that the clear and convincing standard applies to charges of abandonment (ECF No.

205-1 at 11; ECF No. 275 at 3), Defendants contend that the preponderance of the evidence standard applies (ECF No. 254 at 1). This Court need not decide which standard applies because Defendants fail under both based on the undisputed facts in the record. *See, e.g.*, *Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL 5245962, at *6 (N.D. Cal. Dec. 17, 2008) (not deciding issue because party's charge of abandonment failed under either standard).

Although the exact parameters of the "strictly proved" standard remain unsettled in the Ninth Circuit, "[i]t is *not* the law that 'the slightest cessation of use causes a trademark to roll free, like a fumbled football, so that it may be pounced on by any alert opponent.'" 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition §17:14 (5th ed. 2018) (citing *Continental Distilling Corp. v. Old Charter Distillery Co.*, 188 F.2d 614, 619 (D.C. Cir. 1950)) (emphasis in original). Rather, "[a]bandonment requires complete cessation or discontinuance of trademark use." *Electro Source*, 458 F.3d at 938. Generally, "[a] trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark." *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV 00-00374-VAP (EEx), 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) (citing *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc*., 892 F.2d 1021, 1025–26 (Fed. Cir. 1989)).

Notwithstanding a certificate of registration for a mark, non-use for three consecutive years constitutes *prima facie* evidence of abandonment under the Lanham Act. *See* 15 U.S.C. §1127; *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc*., 736 F.3d 1239, 1247–48 (9th Cir. 2013). When a *prima facie* case of non-use is shown, there is a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (9th Cir. 2000). Whether the presumption even comes into play is a key issue for even a "single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." *Carter-Wallace, Inc.*, 434

F.2d at 804; *see also Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227, 1232 (D. Nev. 2006) ("When the alleged period of nonuse is less than three years, no presumption attaches . . ."). If a challenger successfully makes a *prima facie* case, the trademark owner must show valid reasons for non-use or a lack of intent to abandon. *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996); *Clearly Food & Beverage Co., Inc.*, 102 F. Supp. 3d at 1162. "The burden of persuasion . . . always remains with the petitioner to prove abandonment . . ." *On-Line Careline, Inc.*, 229 F.3d at 1087 (internal quotation and citations omitted); *Abdul-Jabbar*, 85 F.3d at 411 (the burden of proof does not shift to the trademark owner simply because a *prima facie* case of non-use is made).

### 1.    Abandonment for Lack of Use in Commerce

BIC Corp. contends that each of Marketquest's uses of the marks in the three years preceding its summary judgment papers does not constitute a "use in commerce" and, therefore, Plaintiff has abandoned the marks for goods. (ECF No. 254 at 6–10; ECF No. 216-1 at 7–22.)[29] The undisputed facts show that Marketquest has used the All in One marks and THE WRITE CHOICE marks on its website, in catalogs, and trade show booth displays. (ECF No. 205-8 Cohen Decl. Exs. C, C.2, C.4–C.6, C.8–C.9; ECF No. 216-21 Ex. 19.)   The evidence also shows that

---

[29] BIC Corp.'s framing of the relevant period for the abandonment analysis raises concerns for the Court. While BIC Corp. argues about Marketquest's uses of the marks from 2011 through 2014, it is doubtful that the evidentiary record at the summary judgment stage was drawn from discovery that extended beyond 2012. Not a single exhibit the parties provided in their exhibit lists filed contemporaneously with the summary judgment motions, and which draw from the record submitted with those motions, is a document dated beyond 2012. (ECF Nos. 238; 242.) The summary judgment motions also do not refer to documents beyond 2012. (ECF Nos. 205; 216.) A party may not invoke the presumption of non-use, or strictly prove abandonment for that matter, by asserting non-use for years either not covered in discovery or for which the record submitted by the parties contains no evidence. Because the record here does not extend past 2012, the Court will not measure Marketquest's purported abandonment beyond that year.

Marketquest has used some of the All in One marks in its containers with samples and goods as well as on shipping labels and packing slips. (ECF No. 216-20 Ex. 18; ECF No. 226-26 Ex. 23.) Defendants concede these uses of the marks by Marketquest. Indeed, the entire premise of BIC Corp.'s cross-motion for summary judgment and Defendants' opposition to Plaintiff's motion is to assert that these uses are insufficient use in commerce. Thus, the only issue confronting the Court is whether, as a matter of law, Marketquest's qualify as use in commerce for goods.[30]

"[T]he meaning of 'use' for the purposes of abandonment necessarily signifies 'use in commerce'" under the Lanham Act. *Electro Source, LLC*, 458 F.3d at 936 (citing *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982)). The Ninth Circuit applies a "totality of the circumstances" test to determine if usage of a trademark qualifies as "use in the ordinary course of trade under §1127." *Electro Source, LLC*, 458 F.3d at 940 (internal quotations omitted). A use must be "bona fide" and not made merely to reserve the right in a mark. *Id.* Thus, "[t]he Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1051. "[N]either promotional use of the mark on goods in a different

---

[30] Defendants recognize that the PTO accepted as specimens of use each of these uses at issue here when it granted Marketquest's registrations for the marks. (ECF No. 216 at 11.) Yet Defendants cast doubt on the PTO's determinations by asserting that the PTO "is not required to scrutinize each application" as to all factual matters. (*Id.* (quoting *Sandro Andy, S.A. v. Light Inc*., No. 12 Civ. 2392 (HB), 2012 WL 6709268, at *4 (S.D.N.Y. Dec. 27, 2012).) Even accepting that proposition, it does not undermine the deference due to the PTO's actual decision to register or a renew a trademark based on the specimens provided. *See Zobmondo Entm't*, LLC, 602 F.3d at 1115 ("[T]he federal officials who register a mark are perceived to have some expertise in assessing if it is entitled to registration . . ."); *Lahoti*, 586 F.3d at 1199 (PTO determinations are entitled to deference). As "use in commerce" is a statutory requirement to register a mark, there is a presumption—absent a showing of fraud—that an application satisfied the use in commerce requirement.

course of trade nor mere token use constitute 'use' under the Lanham Act." *Emergency One, Inc. v. Am. FireEagle, Ltd*., 228 F.3d 531, 536 (4th Cir. 2000); *Grocery Outlet Inc., v. Albertsons, Inc*., No. CV 06-2173, 2008 WL 5245962, at *7 (N.D. Cal. Dec. 7, 2008) (signage erected solely on the advice of counsel for the purpose of maintaining an active registration in the mark was not active use in the ordinary course of trade). Evaluating whether a use is in "the ordinary course of trade" is "often an intensely factual undertaking." *Electro Source, LLC*, 458 F.3d at 940. With these principles in mind, the Court turns to Marketquest's various uses of the marks, any of which is sufficient to defeat Defendants' abandonment counterclaims.

### a. Sample Goods and Shipping/Packing Labels

The Court first turns to Marketquest's provision of sample goods to distributor-customers and shipping and packing labels associated with the transport of those goods. In challenging the sufficiency of these uses, Defendants burrow deep into their argument that a mark for goods must specifically appear on the goods Marketquest provides to distributor-customers in order to qualify as a use in commerce. (ECF No. 216-1 at 17.) The Court rejects Defendants' argument.

The Lanham Act's express terms resolve the sufficiency of Marketquest's provision of sample goods to its distributor-customers. Under the Lanham Act, a mark is used in commerce "when it is placed in any manner on . . [the goods'] containers . . . or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." *See* 15 U.S.C. §1127. Under its plain meaning then, the Lanham Act does not require that a mark be affixed to or have a close physical association with the goods in order for the mark to be used in commerce. *See Lands' End, Inc. v. Manbeck*, 797 F. Supp. 511, 513 (E.D. Va. 1992); *In re Marriott*, 459 F.2d 525, 526 (C.C.P.A. 1972) ("The terms of the statute [15 U.S.C. §1127] are met if the mark is placed 'in any manner' on the 'displays associated' with the goods."). The record shows that Marketquest's shipping labels

and packing slips contain its marks and that containers in which the goods, including samples, it ships display All in One marks. (ECF No. 216-20 Ex. 18 (shipping labels and packing slips); ECF No. 205-16 Ex. C.6 (photographs depicting '089 and '333 marks on containers shipped by Marketquest).) The alleged lack of imprinting Marketquest's marks on the samples or goods it provides to distributor-customers does not place Marketquest's uses outside the broad scope of the Lanham Act's use in commerce requirement. *See Elec. Commc'ns., Inc. v. Elec. Components for Indus. Co.*, 443 F.2d 487, 492 (8th Cir. 1971) (rejecting defendants' argument that use of packing slips and labels on the outer of shipping containers did not constitute trademark use because it "flies in the teeth of the plain language of the statute"); *In re A. S. Beck Shoe Corp.*, 161 U.S.P.Q. (BNA) 168, 169 (T.T.A.B. 1969) ("Since the specimens in question are in fact applied to the containers for applicant's goods and the goods are transported in commerce, the use thereon of applicant's mark is clearly a use such as would satisfy the requirements . . . for registration.").

Defendants further argue that the samples do not qualify as use in commerce because they are "mere advertising." (ECF No. 216-1 at 18–20.) Defendants' challenge is nominally premised on the notion that Marketquest's samples do not contain its own marks and are not resold by distributor-customers to end users. Defendants' own factual concessions, however, are at odds with their argument. As to Marketquest's purported failure to place its marks on samples, Defendants concede that Marketquest printed 51,330 promotional product samples in 2010, which in Defendants' words, "likely had some form of a Marketquest mark." (ECF No. 216-1 at 18; ECF No. 216-29 Ex. 26 (record of Marketquest's 2010 samples distribution).) The record corroborates this. (*See, e.g.*, ECF No. 227-58 Ex. BE.) This concession places Marketquest's samples directly in the scope of the Lanham Act's use in commerce requirement. *See* 15 U.S.C. §1127 (a mark is used in commerce "when it is placed in any manner on the goods . . .").

Defendants' challenge regarding who sells the goods and to whom the goods

are sold fares no better because it confuses the focus of the use in commerce analysis here, which is on Marketquest's uses, not those of its distributor-customers. Because Marketquest is a supplier, the relevant focus for the use in commerce requirement is on its sales to distributors, not end users who purchase from those distributors. Defendants treat the number of samples distributed in 2010 as part of Marketquest's overall sales in 2010. (ECF No. 216-1 at 18–20.) Defendants further concede that "Marketquest sells these samples exclusively to distributors of promotional-products . . ." (ECF No. 216-1 at 18; ECF No. 216-24 Ex. 22 at 43:10–11 (Dep. of Harris Cohen).) The record also shows the provision of Marketquest's samples to its distributors. (ECF No. 226-28 Ex. 25.) These undisputed facts place Marketquest's uses directly in the scope of the Lanham Act's use in commerce requirement. *See* 15 U.S.C. §1127 (sale of goods with mark qualifies as use in commerce).

Even if Defendants had not made these concessions, the Lanham Act does not require the actual sale of goods for a mark to be used in commerce. *See* 15 U.S.C. §1127 (use in commerce also requires that the "the goods are sold *or transported in commerce*") (emphasis added). Thus, "[t]he statute is clear that the actual sale of goods is not required to satisfy §1127's 'use in commerce' requirement, provided that the goods are 'transported' in commerce." *Lens.com, Inc. v. 1-800 Contacts, Inc.*, 686 F.3d 1376, 1380 (Fed. Cir. 2012); *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 33, 335 (1st Cir. 2004) ("[S]ales of goods within or from the United States are not necessary to establish trademark ownership; for purposes of the Lanham Act, transportation alone qualifies."). When a user seeks to establish use in commerce based on transportation, a requirement of "public awareness of the use" is imposed. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001); *Brookfield Commc'ns., Inc.*, 174 F.3d 1036, 1052 (9th Cir. 1999); *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (same). "Secret, undisclosed shipments are generally inadequate to support the denomination use." *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975). As the Court has noted,

Marketquest has produced evidence showing that it transports its samples and goods in boxes containing two of its All in One marks. (ECF No. 205-16 Ex. C.6 (photographs depicting '089 and '333 marks on containers shipped by Marketquest); ECF No. 258-7 Cohen Decl. ¶8.) Defendants provide no evidence disputing that such transportation is sufficiently public and the Court finds no basis to conclude otherwise. Given the undisputed facts and in view of the applicable standard, the Court finds that Marketquest's provision of samples and placement of samples in containers with its marks and similar packing and shipping labels are sufficient to defeat Defendants' abandonment counterclaims.

### b.  Trade Show Displays

Defendants concede that Marketquest has used the marks in trade show banners, yet they contend that those uses constitute "mere advertising" insufficient to show use of the marks in commerce for goods. (ECF No. 216-1 at 14–15.) Defendants contend that Marketquest's trade show booth displays do not qualify as acceptable point-of-sale displays of the marks because Marketquest has produced no evidence that sales are actually made at the trade show booths. (ECF No. 216-1 at 15.) The Court rejects this challenge.

Under the Lanham Act, a mark for goods is used in commerce when "it is placed in any manner on the goods . . . *or the displays associated therewith* or on the tags or labels affixed thereto . . ." 15 U.S.C. §1127 (emphasis added). It is settled that mere advertising does not constitute use of a mark in commerce under the Lanham Act. *See Lands' End Inc.*, 797 F. Supp. at 513 ("Specimens are invalid for registration purposes if they constitute mere advertising."); *In re Shipley Co., Inc.*, 230 U.S.P.Q. (BNA) 691, 694 (T.T.A.B. 1986); *Powermatics, Inc. v. Globe Roofing Prods. Co.*, 52 C.C.P.A. 950, 954 (C.C.P.A. 1965) ("[I]t being well settled that mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use."). The principle underlying the exclusion of advertising is that "any material whose function is simply to tell a prospective purchaser about the

goods or to promote the sale of the goods is unacceptable to support trademark use." *In re Mediashare Corp.*, 43 U.S.P.Q. 2d (BNA) 1304, 1307 (T.T.A.B. 1997); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §16:29 (5th ed. 2018).

However, "a clear line of demarcation has been drawn between mere advertising materials . . . and point-of-purchase promotional materials . . ." *In re Anpath Grp., Inc.*, 95 U.S.P.Q. 2d (BNA) 1377, 1830 (T.T.A.B. 2010). A point-of-sale display associated with the goods is "more than mere advertising" if it is "calculated to consummate a sale." *In re Quantum Foods, Inc.*, 94 U.S.P.Q. 2d (BNA) at 1379; *see also In re Bright of America, Inc.*, 205 U.S.P.Q. (BNA) 63, 71 (T.T.A.B. 1979). The line between what constitutes mere advertising versus a display associated with the goods may be difficult to draw in particular cases. But a display is more likely an advertisement when it does not: (1) offer a way to purchase the goods, (2) contain an offer to accept orders for the goods, or (3) provide instructions for placing orders for the goods. *In re Quantum Foods, Inc.*, 94 U.S.P.Q. 2d (BNA) at 1379; *In re Osterberg*, 83 U.S.P.Q. 2d (BNA) 1220, 1224 (T.T.A.B. 2007). Trade show displays are sufficient to constitute a use in commerce when the mark is prominently displayed near the goods and orders for goods may be taken. *See In re Shipley*, 230 U.S.P.Q. (BNA) at 693–94. Even distribution of "an informational flyer or leaflet clearly depicting the mark and presented on the goods at trade show exhibits are acceptable . . ." *In re Ancha Elecs., Inc.*, 1 U.S.P.Q. 2d (BNA) 1318, 1320 (T.T.A.B. 1986)

Defendants' challenge to Marketquest's trade show displays faces two pitfalls. First, Marketquest's declarations of use and/or excusable non-use of marks in commerce submitted to the PTO in connection with THE WRITE CHOICE and All in One marks show the marks associated with the goods for trade show booths as point-of-sale locations. (ECF No. 216-14 Ex. 12 ('089 registration), ECF No. 216-18 Ex. 16 ('707 registration), ECF No. 216-23 Ex. 21 ('707 registration substitute

specimen.)  Each application provides photographs of the booths and declares that the booths are point-of-sale presentations.  (*Id.*)  A registrant's application showing use of the specimens in a trade show booth and declaration explaining the circumstances of that use is sufficient to show that the "applicant's use is a 'display associated' with the goods."  *In re Shipley Co., Inc*., 230 U.S.P.Q. 2d (BNA) at 694. Defendants do not contend that these declarations were fraudulent and there is no basis for this Court to look beyond them now.

Second, Defendants' contention runs counter to their burden to "strictly prove" abandonment.  It is not Marketquest's burden to disprove allegations of abandonment that lack an evidentiary basis.  All Defendants provide this Court to meet their burden is speculation that "it is highly unlikely that any actual sales of products . . . were made from the booths."  (ECF No. 216-1 at 15.)  This speculative assertion, uncorroborated by evidence, cannot meet their burden now or at trial.  In contrast, Marketquest has submitted evidence showing that its sales representatives attend the trade shows and Marketquest conducts sales transactions at the booths.  (ECF No. 205-19 Ex. C.9 (photographs of trade show booths with samples of products for sale); ECF No. 258-7 Cohen Decl. ¶¶5, 7.)  Based on the undisputed evidence, the Court concludes that Marketquest's trade show booth displays, which associate the marks with the relevant goods, constitute point-of-sale displays that qualify as use in commerce.

### c.    Catalog Uses

Defendants challenge Marketquest's use of the marks in its catalogs. Defendants concede that "[a]t various times Marketquest has displayed all five marks in its printed catalogs . . ."  (ECF No. 216-1 at 12.)  Yet Defendants contend these uses are insufficient because the catalogs lack direct order forms.  (ECF No. 279 at 7–8.)  The Court rejects Defendants' challenge.

Catalog uses of a mark can qualify as use in commerce for goods if the catalog includes "a prominent display of the alleged mark with the product" and is "point of

sale [in] nature." *Lands' End, Inc.*, 797 F. Supp. at 514; *see also Menashe v. V Secret Catalogue, Inc*., 409 F. Supp. 2d 412, 424 (S.D.N.Y. 2006). It is not necessary for the catalog to show the mark imprinted on the product. *See Lands' End Inc*., 797 F. Supp. at 511 (the mark "KETCH" for purses was used in a catalog with a picture of the purses with the mark situated below). The PTO has taken the position that catalog use of a mark qualifies as a display associated with the goods so long as the catalog (1) includes a picture of the goods, (2) the trademark is sufficiently near the picture such that the mark is associated with the goods, and (3) information necessary to order the goods is provided. *See* T.M.E.P. §904.03(h) (2013); *see also In re Sones*, 590 F.3d 1282, 1285–86 (Fed. Cir. 2009) (recognizing PTO's elaboration of test for when a catalog constitutes a specimen showing use of a mark in commerce for goods). While the TEMP "is not established law," it is instructive. *See In re Sones*, 590 F.3d at 1288 (citing *In re Pennington Seed, Inc*., 466 F.3d 1053, 1059 (Fed Cir. 2006)).

Here, Marketquest's catalog uses of the marks easily satisfy this standard. In particular, the record shows that All in One and THE WRITE CHOICE marks appear on the same page as the products with which they are associated in the mark registrations. (ECF No. 205-12 Ex. C.2; ECF No. 216-3 Ex. 1; ECF No 254 Ex. 27.) Contrary to Defendants' assertion that a catalog must provide a "direct order" format, all that is required is adequate information for placing orders for the goods. Adequacy is measured based on "whether the purported point-of-sale display provides the potential purchaser with the information normally associated with ordering products of that kind." *In re Anpath Grp., Inc*., 95 U.S.P.Q. 2d (BNA) at 1381. As Defendants recognize (ECF No. 216-1 at 13), the catalogs expressly direct consumers to "contact your distributor" to place an order. (ECF No. 216-3 Ex. 1, ECF No. 216-4 Ex. 2; *see also e.g*., ECF No. 205-12 C.2 at MQ.02615, MQ.02714, MQ.02814; ECF No 254 Ex. 27.) While Defendants fault Marketquest for the absence of an order form with the catalog, Marketquest provides uncontroverted

evidence regarding how promotional products are ordered: the nature of the promotional products industry supply chain in which distributors order from suppliers, like Marketquest, and in turn sell to end purchasers.  (ECF No. 258-7 ¶4; ECF No. 259 at 15 n.15.)  Defendants' own expert, H. Wingfield Hughes, testified as to this relationship between suppliers, distributors, and end-consumers in the industry, expressly observing that "it is not the norm for a supplier to sell directly to an end user."  (ECF No. 205-45 Ex. I.3 at 86:9–18; 89:16–17.)  Given the undisputed facts and in view of the applicable standard, the Court finds that Marketquest's catalog uses are sufficient to defeat Defendants' abandonment counterclaims.

### d.    Website Uses

Defendants concede that "Marketquest uses the 'All-in-One' and 'The Write Choice' marks on its website," but contends that these uses are insufficient because Marketquest "does not offer any 'All-in-One' or 'The Write Choice'-branded products carrying those marks."  (ECF No. 216-1 at 11.)  Defendants' challenge to Marketquest's website uses is fundamentally at odds with the evolution of trademark law to embrace website uses of marks as acceptable displays associated with goods.

A website use of a mark constitutes a use in commerce for goods when the use "in some way evince[s] that the mark is '*associated*' with the goods and serves as an indicator of course."  *In re Sones*, 590 F.3d at 1288 (emphasis added); *In re Dell Inc.*, 71 U.S.P.Q. 2d (BNA) 1725, 1727 (T.T.A.B. 2004) (recognizing that "[i]n today's commercial environment," "[w]eb pages which display goods and their trademarks and provide for the on-line ordering of such goods are, in fact, electronic displays which are associated with the goods."); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §16:32.70 (5th ed. 2018) (same).  Although a website display showing a product branded with the mark is one form of showing association, so is a visual depiction of the mark near the goods.  *In re Sones*, 590 F.3d at 1288; *Lands' End, Inc.*, 797 F. Supp. at 514.  But even on this point, there is no bright line rule that a website must contain a picture of the goods in order to satisfy

the use in commerce requirement. *See In re Sones*, 590 F.3d at 1288–89. Here, Marketquest's website uses of the marks display the All in One marks and THE WRITE CHOICE prominently near the goods for which the marks are registered. (ECF No. 216-21 Ex. 19.) Thus, Marketquest's website uses of the marks satisfy this requirement.

In addition to associating a mark with the goods, a website must provide information necessary to order the goods. *See In re Dell Inc*., 71 U.S.P.Q. 2d (BNA) 1725, 1727 (T.T.A.B. 2004); T.M.E.P. §904.03(i). Defendants argue that Marketquest's website uses fail this requirement because there is no virtual cart to buy the goods offered, as with Amazon. (ECF No. 279 at 7.) But the requirement to provide information necessary to order the goods is not limited to the availability of a virtual shopping cart. The very provision of the T.M.E.P. on which Defendants rely indicates five means by which a website can provide ordering information any one of which may be sufficient to constitute use in commerce. These means include: "[1] a sales order form to place an order, an online process to accept an order, such as 'shopping cart' functionality, or special instructions on how to order; [2] information on minimum quantities; [3] indication of methods of payment; [4] information about shipment of the goods; *and/or* [5] means of contacting the applicant to place an order." T.M.E.P. §904.03(i)(C) (emphasis added); *see also In re Anpath Grp*., 95 U.S.P.Q. 2d (BNA) 1377, 1381 (T.T.A.B. 2010); *In re Quantum Foods, Inc*., 94 U.S.P.Q. 2d (BNA) at 1379. As the very evidence submitted by the Defendants shows, Marketquest's website expressly provides detailed information regarding how to order the goods associated with the marks. (ECF No. 216-21 Ex. 19.) Marketquest also presents evidence showing that its distributors—the immediate consumers of its promotional products—have a secure login necessary to purchase goods from its website. (ECF No. 258-7 Cohen Decl. ¶4.) Given the undisputed facts and in view of the applicable standard, the Court finds that Marketquest's website uses are sufficient to defeat Defendants' abandonment

1  counterclaims

2      Based on the foregoing, the Court finds that Defendants have failed to raise

3  any triable issues of fact regarding whether Marketquest's provision of sample goods,

4  trade show booth displays, catalog uses, and website uses constitute use in commerce

5  under the Lanham Act.

6              **2.    Abandonment Challenges to Particular Registrations**

7      In addition to their general abandonment challenges to Marketquest's uses of

8  the marks, Defendants assert particularized abandonment challenges to the All in One

9  marks in the '417 and '333 registrations.  Both challenges lack merit.

10             **a.    All in One Line '417 Registration**

11     First, Defendants argue that All in One line mark '417 registration has been

12  abandoned because discovery has produced no evidence of any type of use of the

13  mark in the three years preceding their cross-motion.  (ECF No. 216-1 at 4.)  They

14  argue that the mark has only been used in Marketquest's domain name,

15  www.allinoneline.com, which does not qualify as trademark use.  (ECF No. 216-1 at

16  4–6.)   Plaintiff argues that to establish abandonment of the '417 registration,

17  Defendants must show that Marketquest has abandoned each form of its All in One

18  marks.  (ECF No. 259 at 6.)  Plaintiff's argument prevails as a matter of law.

19     It is true that "the use of a website address containing a trademark is not the

20  same as use of the mark," particularly because it is generally used to identify the

21  online location of a company's products or services. *Specht v. Google*, 785 F. Supp.

22  2d 570, 591 (N.D. Ill. 2010); *In re Eilberg*, 49 U.S.P.Q. 2d (BNA) 1955, 1956

23  (T.T.A.B. 1998).  But Marketquest does not contend that its website domain name

24  qualifies as a use in commerce of the All in One line mark, nor does the '417

25  registration identify Marketquest's domain name.  (ECF No. 205-3 RFJN Ex. A; ECF

26  No. 259 at 11.)  Defendants raise a point to an issue that simply does not exist here.

27     More fundamentally, Defendants' challenge to the '417 registration disregards

28  Marketquest's continuous use of the most salient feature of the mark in every All in

One mark at issue in this case. Defendants emphasize the word "line" in the '417 registration and assert that it creates a commercial impression different from the impressions created by the other All in One marks. (ECF No. 279 at 9.). The Court recognizes that "a change of format which alters the overall commercial impression of a mark" may provide the basis for an abandonment challenge. *See Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 923 (N.D. Iowa 2001) ("'[I]improper tacking' can be, but is not necessarily, a species of 'abandonment' that could result in cancellation of a [registration of a] mark . . . if the 'improper tacking' also is shown to satisfy the elements of 'abandonment'. . . "); 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §17:26 (5th ed. 2018). The Court also recognizes that modifications to a mark are more likely to create a different commercial impression when the modification pertains to a *different* type of good or service. *See, e.g. Am. Paging, Inc. v. Am. Mobilephone, Inc.*, 13 U.S.P.Q. 2d (BNA) 2036 (T.T.A.B. 1989), *aff'd by*, 17 U.S.P.Q. 2d (BNA) 1726 (Fed. Cir. 1990) ("Customers who simply saw the mark AMERICAN MOBILPHONE and design and who simply utilized registrant's mobile phone services, would not know they were dealing with a company that also rendered paging services . . . [T]he mark AMERICAN MOBILPHONE PAGING and design conveys more information to potential customers than does the mark AMERICAN MOBILPHONE and design.").

But trademark law also recognizes that "[a] mark can be modified or changed without abandonment . . . if done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression." *Id*. Courts do not construe a mark modified in such a manner to have been abandoned, particularly when it is applied to the *same* goods or services. *See, e.g., Sands, Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947, 955 (7th Cir. 1992) (rejecting argument that plaintiff had abandoned right to use of "THIRST AID" by not using the full phrase originally registered because "the owner continue[d] use of

the 'key element' of the registered mark"); *Puritan Sportswear Corp. v. Shure*, 307 F. Supp. 377 (W.D. Pa. 1969) (change from PURITAN SPORTSWEAR, THE CHOICE OF ALL AMERICANS to PURITAN was not abandonment); *Am. Sec. Bank v. Am. Sec. & Tr. Co*., 571 F.2d 564 (C.C.P.A. 1978) (determining that when used for banking services, the marks AMERICAN SECURITY and AMERICAN SECURITY BANK are legal equivalents because "customers using the services would know they were dealing with a bank."). In determining whether there is a continuing commercial impression, a court may consider the design of the marks. *See Pro-Cuts v. Schilz-Price Enters., Inc*., 27 U.S.P.Q. 2d (BNA) 1224, 1227 (T.T.A.B. 1993) (considering design features of "confusingly similar" marks to assess whether they were "legal equivalents").

Here, the '417 registration contains the same salient feature as the later in time '089 registrations, specifically the "All in One" phrase. The record shows that between 1999 and 2001 Marketquest used "All in One Line" with the stylization applicable to the mark appearing in the later '089 registration. The only difference is that the word "the" precedes "All in One" and the word "line" appears thereafter, both in smaller lettering and set off from "All in One." (*Compare* ECF No. 216-4 Ex. 2 at 1 (1999 catalog), *id*. at 4 (2000 catalog), *id*. at 6 (2001 catalog) *with* ECF No. 205-5 Ex. C ('089 registration certificate).) In 2002, Marketquest dropped "the" and "line," but retained the same stylization. The change appears as follows:



(ECF No. 216-4 Ex. 2 at 1 (excerpt from 1999 Catalog).)

(ECF No. 216-4 Ex. 2 at 8 (excerpt from 2002 Catalog).)

Nearly each iteration of the "All in One" mark on the front cover of the catalogs in 2002 and thereafter contains the salient feature of the '417 registration and its stylization. (*See generally* ECF No. 216-4 Ex. 2.) The record also shows that the goods classes in the '417 registration appear in the '089 registration, which was registered on October 10, 2006. (*Compare* ECF No. 205-3 RFJN Ex. A ('417 registration) *with* ECF No. 205-5 RFJN Ex. C ('089 registration).) This confirms to the Court that, at a minimum, the '089 registration is a continuing commercial impression of the salient feature of the '417 registration, as applied to goods. Because Marketquest has continuously used the most salient feature of the '417 registration, the Court rejects Defendants' abandonment challenge to that registration.

### b. All in One '333 Registration

Defendants argue that the All in One mark '333 registration has been abandoned for lack of use in the three years preceding their motion by relying on (1) their rejected arguments regarding the sufficiency of Marketquest's uses and (2) May 3, 2012 testimony from Marketquest's Rule 30(b)(6) deponent, Stephanie Mills, that Marketquest no longer intended to use the logo. (ECF No. 216-1 at 6; ECF No. 226-5 Ex. 3 at 188:18–189:17).) This argument has no merit now that the Court has rejected the first premise. As Defendants have failed to show non-use, Defendants' reliance on Mills' testimony as proof that Marketquest intended not to resume use of the '333 mark is irrelevant because intent never comes into play if non-use has not been shown. *See Electro Source, LLC*, 458 F.3d at 937–38 ("[U]nless the trademark use is actually terminated, the intent not to resume use prong of abandonment does not come into play."); *KeyCorp. v. Key Bank Tr.*, 99 F. Supp. 2d 814, 827 (N.D. Ohio

2000) ("When an owner of a mark announces an intention to cease using the mark, but fails to actually do so, there is no abandonment . . ."). Accordingly, the Court rejects Defendants' particularized challenge to the '333 registration.

### 3. Void *Ab Initio* Challenges

Having determined that Defendants' abandonment counterclaims cannot survive summary judgment, the Court turns to Defendants' void *ab initio* challenge. This challenge is premised on the erroneous notion that Marketquest's uses of the marks, as shown in the specimens with the applications for registration and renewal of the marks, did not qualify as uses in commerce.

A court may cancel a registration under Section 1119 of the Lanham Act as void *ab initio* and a third party may seek to cancel a registration on that basis under Section 1064. 15 U.S.C. §§1064; 1119. Such a challenge is based on the notion that the application for the registration of the mark did not comply with the statutory requirements to register a mark. *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350 (Fed. Cir. 2009). Among the requirements the Lanham Act imposes to register a mark are its "use in commerce." 15 U.S.C. §§1051 (trademark), 1053 (service mark).[31] Because use is a predicate to the acquisition of trademark rights, "[t]he registration of a mark that does not meet the use requirement is void *ab initio*." *Aycock Eng'g, Inc.*, 560 F.3d at 1357; *Quia Corp.*, 2011 WL 2749576, at *10; *Adidas Am., Inc. v. Calmese*, No. 08-CV-91-BR, 2010 WL 4861444, at *2 (D. Or. Nov. 19, 2010). A void *ab initio* challenge functions as a means of cancelling a registration in whole or in part even when there has been no showing of fraudulent conduct. *See Quia Corp. v. Mattel, Inc.*, No. C 10-1902-JF-HRL, 2011 WL 2749576, at *10 (N.D. Cal Jul. 14, 2011) (citing *Grand Canyon West Ranch LLC v. Hualapi Tribe*, 78

---

[31] Alternatively, an applicant may seek registration of a trademark based on a "bona fide intention to use" the trademark. *See* 15 U.S.C. §1051(b); *Aycock Eng'g, Inc.*, 560 F.3d at 1357–58. None of Marketquest's marks were registered in that manner and Defendants do not challenge the registrations on this basis.

1  U.S.P.Q. 2d (BNA) 1696 (T.T.A.B. 1985)).

2       Marketquest contends that BIC Corp.'s abandonment challenges, which
3  incorporate void *ab initio* challenges, are "novel"—perhaps suggesting that this
4  purported novelty should deter the Court from entertaining the challenges.  The Court
5  acknowledges that the void *ab initio* challenges are uneasily stitched into the
6  abandonment counterclaims given that abandonment presupposes that a mark was
7  valid at some prior point.  Yet, the Court also recognizes that both sets of challenges,
8  as presented by Defendants here, are based on the same thread of legal reasoning, *i.e.*
9  a lack of "proper" use in commerce.  Thus, setting aside the fact that Defendants
10 failed to plead void *ab initio* grounds for cancellation of the registrations anywhere
11 in the Answer, the Court will consider the challenges.

12      Defendants' void *ab initio* challenges necessarily fail given that the Court has
13 rejected the severely restrictive view of use in commerce on which they are premised.
14 Furthermore, Defendants' void *ab initio* challenges to the All in One '967 and '417
15 registrations fail for the independent reason that they are barred.  Because these
16 registrations are incontestable, they are statutorily subject to a limited set of
17 challenges.  *See* 15 U.S.C. §§1065; 1115(b).  Void *ab initio* challenges are
18 conspicuously absent from the list of statutory defenses to an incontestable
19 registration under Section 1115(b).  They are also absent from Section 1064, which
20 means courts lack jurisdiction to cancel a registration under Section 1119 based on a
21 void *ab initio* challenge.  *See NetJets Inc. v. IntelliJet Grp., LLC*, 678 Fed. App'x
22 343, 350 (6th Cir. 2017) ("Section 1064 bars [a defendant] from bringing a claim that
23 [a plaintiff's] mark is void *ab initio*" for lack of use with respect to an incontestable
24 registration).  Thus, Defendants' void *ab initio* challenges to the All in One '967 and
25 '417 registrations fail for this additional reason.

26      Based on the record, Marketquest has shown by a totality of the circumstances
27 its use of the marks in commerce and Defendants cannot meet their burden at trial to
28 strictly prove abandonment.  Accordingly, the Court grants summary judgment to

1   Plaintiff on all of Defendants' abandonment counterclaims and related affirmative
2   defense.

3       **E.      Statute of Limitations and Laches**

4       Defendants' tenth affirmative defense contends that all of Plaintiff's claims are
5   barred due to the statute of limitations.  (ECF No. 17 at. 8.)  Relatedly, Defendants'
6   sixth affirmative defense contends that all of Plaintiff's claims are barred based on
7   the doctrine of laches.  (*Id.* at 7.)  Marketquest moves for summary judgment against
8   both defenses on the ground that it filed the instant action within the applicable statute
9   of limitations.  Because these two defenses are related, the Court addresses them
10  together and agrees that Marketquest is entitled to summary judgment.

11      The Lanham Act contains no statute of limitations and so federal courts borrow
12  statute of limitations from analogous state law.  *See Au-Tomotive Gold Inc. v.*
13  *Volkswagen of Am., Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2010); *Jarrow Formulas,*
14  *Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).  The Ninth Circuit has
15  applied California's three-year statute of limitations in California Civil Procedure
16  Code Section 338(d) applicable to fraud claims or the four-year statute of limitations
17  in California Business and Professions Code Section 17208 applicable to state law
18  trademark infringement actions.  *See Derek & Constance Lee Corp. v. Kim Seng Co.*,
19  391 Fed. App'x 627, 628 n.1 (9th Cir. 2010) (referring to both statutes of limitations
20  as analogous); *Internet Specialties W., Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985,
21  990 & n.1 (9th Cir. 2009) (agreeing the four-year limitations period from California
22  trademark infringement law is appropriate); *DC Comics v. Towle*, 989 F. Supp. 2d
23  948, 971–72 (C.D. Cal. 2013) (applying four-year statute of limitations).

24      In this case, the Court finds that California's four-year statute of limitations
25  for trademark infringement governs.  Marketquest timely filed suit within that period.
26  Whereas Defendants' alleged infringement began to occur in December 2010,
27  Plaintiff brought suit in March 2011.  (*Compare* ECF No. 33-1 at 3, 33-3 *and* 33-4
28  *with* ECF No. 1.)  Based on this undisputed evidence, the Court grants Plaintiff's

1  motion for summary judgment on Defendants' affirmative defense of statute of
2  limitations.

3  Marketquest is similarly entitled to summary judgment on laches for this
4  reason. "Laches is an equitable defense to Lanham Act claims," "which can defeat
5  an otherwise valid claim under the Lanham Act." *Internet Specialties W., Inc.*, 559
6  F.3d at 989; *Jarrow Formulas, Inc.*, 304 F.3d at 835. The defense, however, is not a
7  favored one in trademark cases because "the overriding interest at stake is that of
8  avoiding public confusion." *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 905
9  F. Supp. 1403, 1414 (E.D. Cal. 1994); *E. & J. Gallo Winery v. Gallo Cattle Co*, 12
10  U.S.P.Q. 2d (BNA) 1657, 1676 (E.D. Cal. 1989). The test for laches involves two
11  factors: (1) whether the plaintiff unreasonably delayed in bringing suit and (2)
12  whether the defendant was prejudiced by that delay. *Internet Specialties W., Inc.*,
13  559 F.3d at 990. The relevant delay starts when the plaintiff knew or should have
14  known of the alleged infringing conduct. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942,
15  955 (9th Cir. 2001). In assessing delay, a court "must first decide whether [the
16  plaintiff] filed suit within the applicable" statute of limitations period. *Internet
17  Specialties W., Inc.*, 559 F.3d at 990 (citing *Tillamook Country Smoker, Inc.*, 465
18  F.3d at 1108); *Jarrow Formulas, Inc.*, 304 F.3d at 838. When a plaintiff has filed
19  suit within that time period, "the strong presumption is that laches is inapplicable."
20  *Au-Tomotive Gold Inc.*, 603 F.3d at 1140; *Internet Specialties W., Inc.*, 559 F.3d at
21  990; *Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1216 (S.D. Cal. 2016).

22  Here, because Marketquest filed its suit within the applicable statute of
23  limitations, its suit against Defendants is not barred by laches. *Bauer Bros., LLC*,
24  159 F. Supp. 3d at 1216–17 (granting summary judgment on laches defense when
25  case was filed within applicable statute of limitations). Accordingly, the Court grants
26  summary judgment to Plaintiff on Defendants' laches defense.

27  **F. Acquiescence**
28  Defendants' second affirmative defense contends that all of Plaintiff's claims

– 77 –

are barred based on the doctrine of acquiescence.  (ECF No. 17 at 7.)  Marketquest moves for summary judgment on the ground that Defendants have no evidence to support this defense.  The Court agrees.

It is in the trial court's discretion to determine whether acquiescence applies in a given case.  *Wallack v. IDEXX Laboratories, Inc.*, No. 11-cv-2996-GPC-KSC, 2015 WL 5943844, at *14 (S.D. Cal. Oct. 13, 2015) (citing *Seller Agency Council*, 621 F.3d at 986).  The elements of an acquiescence defense are that: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.  *Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002); *Eliminator Custom Boats v. Am. Marine Holdings, Inc.*, No. ED CV 06-15-VBP (Ex), 2007 WL 4978243, at *6 (C.D. Cal. Nov. 5, 2007).  Acquiescence is "closely related" to laches because "[f]indings of delay and prejudice are central to both . . ."  *Profitness Physical Therapy Ctr.*, 314 F at 67; *see also Seller Agency Council v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010).  However, "[t]he distinguishing feature of the acquiescence defense is the element of *active* or *explicit* consent to the use of an allegedly infringing mark."  *SunAmerica Corp. v. Sun Life. Assurance Co.*, 77 F.3d 1325, 1344 (11th Cir. 1996) (emphasis in original); *see also Seller Agency Council*, 621 F.3d at 989 (same).  Thus, the defense "may be employed 'only in those cases where the trademark owner, by affirmative word or deed' conveys its consent to another with respect to use of the trademark."  *Express Diagnostics Int'l, Inc. v. Tydings*, No. C 06-01346 JW, 2009 WL 111736, at *6 (N.D. Cal. Jan. 15, 2009) (quoting *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 276 (S.D.N.Y. 2002)).

Marketquest asserts that Defendants' acquiescence defense fails to the same extent as the laches defense and because Defendants cannot show that Marketquest affirmatively acted to induce the belief that it had abandoned its infringement claims

or consented to Defendants' uses of the marks. (ECF No. 205-1 at 24.) On this last point, Marketquest reiterates that because it brought suit "only a few months after [Defendants] first began using AIO's Marks to compete with AIO," Defendants can neither show affirmative conduct, nor reliance. (*Id.*) Defendants allege no basis for an acquiescence defense in their Answer, nor do they identify any affirmative conduct by Marketquest that could provide a foundation for an acquiescence defense. (ECF No. 254 at 24–25.) Moreover, to the extent acquiescence focuses on delay by the plaintiff, Defendants' failure on the laches defense dooms their acquiescence defense. *E. & J. Gallo Winery*, 905 F. Supp. at 1414. Marketquest is entitled to summary judgment.

### G. Waiver

Defendants' seventh affirmative defense contends that all of Plaintiff's claims are respectively barred by waiver. (ECF No. 17 at 7.) Marketquest moves for summary judgment on the ground that Defendants have no evidence to support this defense. The Court agrees.

Waiver is a defense to trademark infringement, which "emphasizes the mental state of the actor." *See Yoshida v. Liberty Mut. Ins. Co*., 240 F.3d 824, 829 (9th Cir. 1957); *Kelley Blue Book v. Car-Smarts, Inc*., 802 F. Supp. 278, 291 (C.D. Cal. 1992). It is the "intentional relinquishment of a known right with knowledge and the intent to relinquish it." *United States v. King Features Entm't*, 843 F.2d 394 (9th Cir. 1988); *Adidas Am., Inc*., 546 F. Supp. 2d at 1074. Waiver may be found when a party either expressly relinquishes the right or engages in "conduct inconsistent with an intent to enforce that right." *Saverslak v. Davis-Cleaver Produce, Co*., 606 F.2d 208, 213 (7th Cir. 1979). To apply in a given case, "waiver must be manifested in an unequivocal manner." *Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or. 1997); *see also Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970). Here, Defendants have proffered no evidence of a "clear, decisive, and unequivocal" intent by Marketquest to relinquish its right to claim infringement of the All in One marks or THE WRITE

CHOICE.  Because Marketquest sought to enforce its rights shortly after Defendants began their alleged infringement, the Court finds that it is undisputed that Marketquest in fact did not waive its right to claim infringement.  The Court grants summary judgment to Plaintiff on the waiver defense.

## H.    Estoppel

Defendants' eighth affirmative defense contends that all of Plaintiff's claims are barred by estoppel.  (ECF No. 17 at 7.)  Marketquest moves for summary judgment on the ground that Defendants have no evidence to support this defense.  The Court agrees.

"[E]stoppel is any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law.  It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct." *Yoshida*, 240 F.3d at 829; *see also Adidas Am., Inc.*, 546 F. Supp. 2d 1029 at 1075.  To prevail on a defense of estoppel, Defendants must show that: (1) Marketquest knew Defendants were potentially infringing the All in One and THE WRITE CHOICE marks; (2) Marketquest's actions or failure to act led Defendants to reasonably believe that Marketquest did not intend to enforce its trademark rights against Defendants; (3) Defendants did not know that Marketquest actually objected to its potential infringement of the marks; and (4) due to their reliance on the Marketquest's conduct, Defendants will be materially prejudiced if Marketquest is allowed to proceed with its claims.  *See Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998); *see also 3M Co. v. Rollit, LLC*, No. C 06-01225-JW, 2008 WL 8820473, at *5 (N.D. Cal. May 14, 2008).  "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Am. Cas. Co. v. Baker*, 22 F.3d 880, 892 (9th Cir. 1994).

Here, Defendants identify no conduct of Marketquest that could support an estoppel defense, nor can the Court identify any conduct in the record.  At a minimum, the Court finds that the defense is defeated by the fact that Marketquest

brought suit shortly after Defendants began the conduct allegedly infringing Marketquest's marks. The Court grants summary judgment to Plaintiff.

### I. Unclean Hands

Defendants' ninth affirmative defense asserts that all of Plaintiff's claims are barred based on the doctrine of unclean hands. (ECF No. 17 at 7.) Marketquest moves for summary judgment on the ground that Defendants have no evidence to support this defense. The Court agrees.

Unclean hands is an equitable doctrine that "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). To prevail on a defense of unclean hands, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003). "[C]ourts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 129 (3d Cir. 2004); *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 833 (9th Cir. 2011) (approving of clear and convincing evidence standard). The defense is unavailable when the defendant has failed to identify any evidence showing inequitable conduct. Here, Defendants' unclean hands defense fails because the Court has granted summary judgment to Plaintiff on the only allegedly inequitable conduct identified by Defendants, *i.e.*, the alleged fraudulent procurement of certain registrations. Accordingly, the Court grants summary judgment to Plaintiff on this defense.

### J. Trademark Misuse

Defendants' seventeenth affirmative defense asserts that Plaintiff's claims are barred by trademark misuse. (ECF No. 17 at 9.) Marketquest seeks summary judgment on the ground that trademark misuse is not a recognized legal basis for

cancellation of registration.  (ECF No. 205-1 at 20–21.)  Defendants oppose summary judgment on the ground that trademark misuse is a recognized defense.  (ECF No. 310 at 24.)

Marketquest's argument that trademark misuse is not a recognized legal basis for cancellation of a mark is premised on *eCash Techs., Inc. v. Guagliardo*, 35 Fed. App'x 498 (9th Cir. 2002).  In that case, the appellant challenged dismissal of his counterclaim for cancellation of the appellee's federal trademark registration on the ground that appellee had misused its trademark by seeking to enforce it beyond the scope of the rights granted.  *Id.* at 500.  The Ninth Circuit rejected this challenge on the ground that "[a]ppellant does not challenge the trademark's appropriateness for registration and does not provide any legal authority showing that its 'trademark misuse' theory is a recognized basis for trademark cancellation."  A close reading of the case reveals that the Ninth Circuit did not foreclose trademark misuse as a *defense*, but rather challenged the particular assertion of trademark misuse raised in the case as an *affirmative claim* for relief.  *See id.* (citing *Helene Curtis Indus., Inc. v. Milo Corp. & Micro Beauty Products Co.*, No. 84 C 5217, 1985 WL 1282, at *3 (N.D. Ill. May 2, 1985) (rejecting trademark misuse theory based on overextending trademark rights as a ground for trademark cancellation)).

Defendants observe that they raise a defense of trademark misuse, not an affirmative counterclaim.  Trademark misuse can be a proper *defense* to trademark infringement claims.  *See James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC(ANx), 2013 WL 655314, at *11 (C.D. Cal. Feb. 21, 2013); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 830 (E.D. Va. 2001) ("Trademark misuse is not an independent cause of action, but is, instead, only an affirmative defense to a trademark infringement claim."); *Juno Online Servs. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 687–88 (N.D. Ill. 1997); *see also* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §31:44 (5th ed. 2018) ("Unclean hands, or trademark misuse, is purely an affirmative defense

and does not form the basis for an affirmative claim for recovery."). As a defense, courts have recognized trademark misuse in (1) situations in which the mark is being used to violate the antitrust laws and (2) as a variation of the unclean hands doctrine even when no antitrust violation has been alleged. *Juno Online Servs.*, 979 F. Supp. at 688; *see also Adidas Am., Inc*. 546 F. Supp. 2d at 1078–79.

Although Defendants' trademark misuse defense is proper as a procedural matter, courts have found that a trademark misuse defense is superfluous when the defendant has asserted unclean hands. *See Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc*., EDCV 11-197 RSWL (DTBx), 2011 WL 3809933, at *8 & n.1 (C.D. Cal. Aug. 25, 2011) (striking trademark misuse as an affirmative defense when defendant had already pleaded unclean hands given that "trademark misuse concerns the alleged misconduct of the plaintiff with regard to its trademark, and as such, like the defense of unclean hands, this defense is based on Plaintiff's alleged past misconduct"); *1-800 Contacts, Inc. v. Mem'l Eye, P.A*., No. 2:08-cv-983 TS, 2010 WL 5149269, at *4 (D. Utah Dec. 13, 2010) ("[T]rademark misuse is generally viewed as another term for uncle[a]n hands.*"); cf. Nw. Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1998 WL 525431, at *7 (N.D. Ill. Aug. 19, 1998) (observing that "the trademark misuse defense will permit the court to exercise its equitable powers any deny enforcement of [a] trademark"). Because the Court has granted summary judgment to Marketquest on Defendants' unclean hands defense and Defendants identify no other inequitable conduct related to the marks at issue in this case, Marketquest is entitled to summary judgment on this defense.

### K.    Nominative Fair Use

Defendants' twentieth affirmative defense asserts that Plaintiff's claim are barred because any use was a nominative fair use. (ECF No. 17 at 9.) Marketquest moves for summary judgment on the ground that Defendants have no evidence they used Marketquest's marks for comparison purposes and Defendants' fair use defense is incompatible with nominative fair use. (ECF No. 205-1 at 20.) The Court finds

that Marketquest is entitled to summary judgment.

To establish a nominative fair use defense, the defendant must prove three elements: (1) the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.3d 302, 308 (9th Cir. 1992)). In contrast to nominative fair use, the classic fair use defense applies when "a defendant has used the plaintiff's mark only to describe his own product, and not at all to describe the plaintiff's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis omitted). Nominative fair use is different from classic fair use because "[a] court may find classic fair use despite 'proof of infringement,'" whereas "nominative fair use . . . represents a finding of no liability" for trademark infringement. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 n.11 (9th Cir. 2010). Whereas a classic fair use analysis complements the likelihood of customer confusion analysis set forth in *Sleekcraft*, a nominative fair use analysis replaces the *Sleekcraft* analysis entirely. *Cairns*, 292 F.3d at 1150.

Marketquest asserts that Defendants have no evidence that they used Marketquest's marks for the purposes of comparison under nominative fair use, but rather submit evidence to show classic fair use. Indeed, as part of the fair use defense, Defendants' employees have testified that they used the phrases, which Marketquest contends were its marks, to describe their own offerings. (ECF No. 205-22 Lane Decl. ¶¶89–91, Exs. P.4, BR.2, BS.) Moreover, the entire premise of two summary judgment motions filed by BIC USA and Norwood is that Defendants' uses were fair under the classic fair use doctrine, not that they were nominative uses. (ECF Nos. 214, 215.) At this stage of the proceedings, the Court finds that the normative fair use defense pleaded in the Answer is incompatible with the class fair use defense on

which Defendants evidently intend to rely at trial and for which they have amassed evidence. Accordingly, the Court grants summary judgment to Marketquest on this defense.

**L.    Damages**

In the FAC, Marketquest generally seeks to recover all damages sustained based on Defendants' conduct and specifically seeks an accounting of Defendants' profits and recovery of profits under an unjust enrichment theory. (FAC at 10.) In opposing summary judgment on damages, Marketquest clarifies that it further seeks (1) a reasonable licensing or royalty fee, or (2) compensation for injury to its good will and reputation, including recovery of its lost profits from defendants' infringement along with corrective advertising. (ECF No. 258 at 31–34.)

Marketquest presents the evidence of its damages expert David Drews to support its request for damages.[32]    (ECF No. 232-1.)    Drews first calculates Defendants' profits obtained from using the marks during the alleged period of infringement. Specifically, Drews attempts to isolate Defendants' profits from any sales made from the 2011 All in One catalogue and any sales of the Bic Round Stic pen associated with its 30th anniversary. Next, Drews attempts to calculate Marketquest's lost profits caused by Defendants' infringement by comparing Marketquest's historical sales and profits before and after the period of infringement. Drews then attempts to calculate reasonable royalties from a hypothetical negotiation between Marketquest and Defendants and tries to duplicate an arms' length agreement between a willing licensor and willing licensee. Drews is hampered in this effort by his admission that Marketquest does not have any outbound licensing program by which it licenses any of its marks to outside businesses. Nor does he find

---

[32] Drews' qualifications are detailed in greater length in this Court's order denying Defendants' *Daubert* motion to exclude Drews' opinions. *See Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-618-BAS-JLB, 2018 WL 1756117 (S.D. Cal. April 20, 2018). Accordingly, the Court does not recount them here.

any evidence that indicates Defendants have ever licensed any marks for their corporate use. Finally, Drews determines the cost of corrective advertising to alleviate any market confusion caused by Defendants' use of the marks.

Defendants BIC USA and Norwood move for summary judgment on the issue of the damages for which Marketquest may seek recovery if Marketquest proves unlawful infringement of its mark. (ECF Nos. 214, 215.) These Defendants contend that Marketquest is not entitled to any form of damages sought in the FAC.

### 1. Accounting/ Unjust Enrichment

Under the Lanham Act, a plaintiff is "entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a). Under Section 1117(a), a plaintiff may recover an infringing defendant's profits in two situations: (1) as a measure of the plaintiff's own damages, or (2) on a theory of disgorgement of the defendant's unjustly obtained profits. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). A plaintiff must prove both the fact and the amount of damage. 2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION §30:27 (5th ed. 2018). An award of damages under Section 1117 is subject to equitable limitations. *See* 15 U.S.C. §1117(a); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir. 1968). Given that "[t]he goal of Section 1117 is to achieve equity" between the parties, a "[d]efendant may not retain the fruits, if any, of unauthorized trademark use or continue that use; plaintiff is not, on the other hand, entitled to a windfall." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 918 (Fed. Cir. 1984).

An accounting of profits is the proper remedy to secure the return of profits when the parties are in direct competition and is justified in indirect competition cases to prevent unjust enrichment of the infringing party. *See Playboy Enters., Inc. v. Baccarat Clothing Co.,* 692 F.2d 1272, 1274 (9th Cir. 1982). "To establish damages under the lost profits method, a plaintiff must make a prima facie showing of

reasonably forecast profits." *Lindy Pen Co.*, 982 F.2d at 1408. (quotation omitted). "Plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Id.* (citing *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942)); *Spin Master, Ltd.*, 944 F. Supp. 2d at 839. "The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and additionally any permissible deductions for overhead." *Lindy Pen Co.*, 982 F.2d at 1408 (citing 15 U.S.C. §1117(a)).

In view of the equitable considerations that guide an award of damages under Section 1117(a), an accounting is appropriate when the trademark infringement is "'willfully calculated to exploit the advantage of an established mark.'" *Id.* (quoting *Playboy Enters, Inc.*, 692 F.2d at 1274).[33] Generally, "a knowing use in the belief that there is no confusion is not bad faith." *Lindy Pen Co.*, 982 F.2d at 1405–06; *see also Highway Cruisers of Cal, Inc. v. Sec. Indus.*, *Inc.*, 374 F.2d 875 (9th Cir. 1967) (where infringement was deliberate but not willful, in that defendant erroneously believed it had the right to use the name, an accounting was not appropriate. However, "in the context of reverse confusion, the junior user's knowledge of the senior user's mark at the time of infringement may establish willfulness." *Quia Corp.*, 2011 WL 2749576, at *8 (citing *Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.,* No. cv 06-6672, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008)). This is because "an infringer's intent to trade off the established goodwill of the smaller, less established plaintiff is necessarily absent." *Spin Master, Ltd.*, 944 F. Supp. 2d at 848 (*citing Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir.

---

[33] The parties disagree as to whether the willfulness requirement in *Lindy Pen* has now been vitiated by Congress in a 1999 Amendment to the Lanham Act. The Court need not reach that issue at this stage because there are sufficient facts from which a jury could find Defendants' conduct was willful.

– 87 –

1  1992); *Quia Corp.*, 2011 WL 2749576, at *8)).

2  Here, Marketquest presents evidence that Defendants knew Marketquest

3  owned federally registered trademarks for the All in One and THE WRITE CHOICE

4  marks. (ECF No. 205-22 Lane Dec. ¶¶20–23, Exs. N, O, P, Q.) Furthermore,

5  Plaintiff presents evidence that Norwood had acquired and aggregated smaller sellers

6  like Plaintiff in the past. (*Id.* ¶¶ 14-15, Exs. F.2, I.2.) Plaintiff also shows that in the

7  2011 catalogue, Defendants placed the All in One mark on the cover of its catalog in

8  the same location where Norwood placed its "sub brands" on the cover of its 2010

9  Catalogue (presumably implying it had acquired Plaintiff). (*Id.* ¶¶20–23, Exs. S, N,

10  O, P, Q.) Finally, at the same time that Defendants were presenting All in One on its

11  catalogue (and presumably in its drinkware advertisement), it used Plaintiff's second

12  mark THE WRITE CHOICE to advertise its pens. (*Id.* ¶43, Ex. K.3.) A jury could

13  find from these facts that Defendants were willfully using Plaintiff's marks to suggest

14  that it had acquired Plaintiff and to cause confusion in the promotional products

15  market. Although Defendants may certainly argue to the jury that this evidence does

16  not support this conclusion, it is not appropriate for the Court to make a determination

17  at the summary judgment stage regarding willfulness.

18  Defendants argue that there is no evidence they profited from the use of the

19  marks since they never sold articles bearing the infringing mark. (ECF No. 214 at

20  22; ECF No. 215 at 18.) Furthermore, Defendants claim they sold many items from

21  multiple sources and it is impossible to determine if a buyer bought an item

22  specifically from the 2011 catalogue or from some other source that had the

23  infringing mark. (ECF No. 214 at 22; ECF No. 215 at 18.) These are appropriate

24  and valid arguments the Court expects Defendants to make to the jury. At trial,

25  Defendants must bear the burden of showing which sales are not attributable to the

26  infringing activity. At this stage, however, Defendants have failed to establish the

27  absence of a genuine issue of material fact.

28

## 2.    Reasonable Licensing or Royalty Fee

The Lanham Act permits the recovery of damages but, unlike patent law, it does not specify reasonable royalty damages.  *Contrast* 15 U.S.C. §1117(a) *with* 35 U.S.C. §284.  Reasonable royalties are a calculation of the hypothetical licensing royalties that an infringer would have paid to the senior owner of a mark and can be recovered as a measure of damages in trademark infringement cases.  *See QS Wholesale, Inc. v. World Mktg*., No. SA 12-cv-0451-RNBx, 2013 WL 1953719, at *3 (C.D. Cal. May 9, 2013).

Reasonable royalty damages "must be established with reasonable certainty" and thus damages that are remote or speculative should be denied.  *Lindy Pen Co*., 982 F.2d at 1407–08; *QS Wholesale, Inc.*, 2013 WL 1953719, at *4.  "Usually, when the courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license ended and damages were measured by the royalty rate the parties had agreed on."  5 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION §30:85 (5th ed. 2018); *see also A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc*., 166 F.3d 197 (3d Cir. 1999) ("Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated.").  A prior "trademark licensing relationship . . .  facilitates computation of the reasonable royalty," and thus will satisfy this requirement.  *Juicy Couture, Inc. v. L'Oreal USA, Inc*., No. 04 CIV. 7203(DLC), 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006); *see also QS Wholesale, Inc*., 2013 WL 1953719, at *5 (negotiations to purchase mark can suffice).

In the absence of a prior licensing agreement between the parties, courts will permit reasonable royalty damages only if the evidence provides a sufficiently reliable basis to calculate such damages.  *See Adidas Am., Inc. v. Skechers United States*, No. 3:15-cv-1741-HZ, 2017 WL 3319190, at *25 (D. Or. Aug. 3, 2017).  However, "[t]he mere possibility of a future license cannot create an issue of fact as

to the availability of lost royalties, any more than speculation about the possibility of lost sales can create an issue of fact as to lost profits." *Quia Corp.*, 2011 WL 2749576, at *7; *Trovan Ltd. v. Pfizer, Inc.,* No. cv 98-94 LGB (MCX), 2000 WL 709149, at *16 (C.D. Cal. May 24, 2000) (royalties generally require that the parties have shown a willingness to license the mark). "Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis necessarily is speculative," and there is an insufficient basis on which to calculate reasonable royalty damages. *Quia Corp.*, 2011 WL 2749576, at *6; *Trovan Ltd.*, 2000 WL 709149, at *15–16.

Here, Marketquest presents no evidence that it has ever licensed any of its marks for use by third parties or intends to do so. Marketquest's own damages expert states that he is not aware of Marketquest doing so either. (ECF No. 232 Ex. A. at ¶63.) Nor is there evidence that Defendants have ever licensed their marks. Relatedly, there is no evidence sufficient to establish what a reasonable royalty rate would be, and any attempt to discern one is completely speculative.[34] Because no evidence supports this theory of damages, summary judgment in favor of Defendants is appropriate on this theory of damages.

### 3.    Injury to Good Will and Reputation

"[B]ecause proof of actual damages often is difficult, a plaintiff may seek

---

[34] To argue that an assessment of a reasonable royalty is not speculative, Plaintiff presents cases concerning the calculation of reasonably royalties for infringement of patents even when the parties have not negotiated a royalty. The calculation of a reasonable royalty in patent litigation is typically measured based on the fifteen factors in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Drews expressly relied on the *Georgia-Pacific* test to calculate a reasonable royalty here. (ECF No. 232 Ex. A. at ¶¶60–87.) While the *Georgia-Pacific* test may be appropriate in patent cases for statutorily-sanctioned reasonable royalty damages, the Court finds its application impermissibly speculative in this case given the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license.

compensation based on other measures, such as the cost of advertising needed to correct public confusion caused by the infringement." *Quia Corp.*, 2011 WL 2749576, at *5 (citing *Adray v. Adray-Mart, Inc.,* 76 F.3d 954, 988 (9th Cir. 1995)). Such "compensatory damages are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way." *Id.*; *see also Trovan Ltd.*, 2000 WL 709149, at *8 (although corrective advertising may be the proper basis for calculating a damages award, there must first be a preliminary showing that plaintiff was actually damaged by the infringement). Uncertainty about the amount of damages is not fatal, but a plaintiff must present evidence as to the fact that the mark lost value at all. *Id.*

Marketquest presents evidence of individuals who claim they were confused by Defendants' use of the marks. (ECF No. 205-22 Lane Dec. ¶¶44–50, Exs B.2, D.2, E.2, AM, AN, AO, AP.) Additionally, Drews compares Marketquest's historical sales and profits before and after the infringement and calculates lost profits that could be attributable to this confusion. (ECF No. 232-1, Ex. A.) Although certainly there could be other explanations for this loss, and De fendants are free to argue at trial that Marketquest's revenues were already trending downward, this is sufficient information to put the theory in front of the jury for determination.

## V.    CONCLUSION & ORDER

For the foregoing reasons, the Court **HEREBY ORDERS** that:

1.    Plaintiff Marketquest's motion for partial summary judgment (ECF No. 205) is **GRANTED IN PART** as to:

    a.    Partially as to Count 1 of trademark infringement of the All in One marks, *only insofar* as it concerns whether Plaintiff has valid and protectable All in One trademarks *for goods classes* in the '967, '417, and '089 registrations;

    b.    Partially as to Defendants' counterclaim that the All in One mark

1 ('089 registration) is descriptive *as to goods classes*
2 (Counterclaim 5)

3 c. Fully as to Defendants' counterclaim that the All in One mark
4 ('089 registration) is merely ornamental as to goods classes
5 (Counterclaim 6);

6 d. Defendants' counterclaims for fraudulent procurement of the
7 registrations for the marks (Counterclaims 4, 8, 10, and 12);

8 e. Defendants' counterclaims for abandonment (Counterclaims 3, 7,
9 9, and 11); and

10 f. Defendants' affirmative defenses of abandonment, acquiescence,
11 estoppel, fraud, laches, nominative fair use, statute of limitations,
12 trade mark misuse, unclean hands, and waiver (Affirmative
13 Defenses 2, 6, 7, 8, 9, 10, 15, 16, 17, and 20).

14 2. Marketquest's motion for partial summary judgment (ECF No. 205) is
15 **DENIED IN PART** as to:

16 a. Partially as to Count 1 of trademark infringement of the All in
17 One marks, *only insofar* as concerns whether Plaintiff has valid,
18 protectable All in One mark registrations ('089 and '333
19 registrations) *for services*;

20 b. Partially as to Defendants' counterclaim that the All in One mark
21 ('089 registration) is descriptive *as to services classes*
22 (Counterclaim 5);

23 c. The issue of whether Plaintiff has a valid and protectable THE
24 WRITE CHOICE mark ('707 registration) for Count 3 of the
25 FAC;

26 d. Defendants' counterclaims regarding whether THE WRITE
27 CHOICE is merely descriptive and merely ornamental
28 (Counterclaims 1 and 2);

e.   Defendants' affirmative defense that THE WRITE CHOICE lacks distinctiveness (Affirmative Defense 21); and

f.   Defendants' general affirmative defense of mark invalidity *only as to invalidity counterclaims for which summary judgment has been denied* (Affirmative Defense 11).

3.   Defendant BIC Corp.'s motion for summary judgment (ECF No. 216) is **DENIED IN FULL**.

4.   Defendants BIC USA and Norwood's motions for summary judgment (ECF Nos. 214, 215), as to the issue of damages, is:

a.   **GRANTED IN PART**, as to Plaintiff's request for recovery of reasonable royalties from Defendants' alleged infringement of the marks; and

b.   **DENIED IN PART**, as to Plaintiff's requested recovery of lost profits and unjust enrichment and/or the costs of corrective advertising.

5.   Based on the foregoing, Defendants' counterclaims for fraud and abandonment are **DISMISSED WITH PREJUDICE**.  Furthermore, Defendants' affirmative defenses of abandonment, acquiescence, estoppel, fraud, laches, nominative fair use, statute of limitations, trade mark misuse, unclean hands, and waiver are **STRICKEN** from the Answer.  Defendants are barred from raising these affirmative defenses at trial.  Further, Defendants are **BARRED** from raising at trial Affirmative Defense 11 (general invalidity) as to the '967, '417, and '089 registrations *as to goods classes*.

6.   Based on the Court's likelihood of confusion analysis as to THE WRITE CHOICE mark, Defendants are **HEREBY PERMITTED** to raise the classic fair use defense (Affirmative Defense 19) at trial as to their alleged infringement of that mark.

7.   The parties are **ORDERED** to appear in person before Magistrate Judge Burkhardt to set the remaining deadlines in this case.  The parties shall coordinate

with Judge Burkhardt **no later than fourteen days from entry of this Order** to schedule the date of their appearance for such a hearing.

     **IT IS SO ORDERED.**

**DATED:  June 12, 2018**

**Hon. Cynthia Bashant**
**United States District Judge**

11cv618